

shall not modify said contracts without the prior written approval of the State; said approval shall not be unreasonably withheld. Said contracts shall include a provision requiring the subcontractor to provide the Commissioner with a copy of its previous fiscal year's audited annual financial statements on or before April 1 of each year during the term of this contract. Trousdale County shall not enter into any other subcontract or modification, for operation and management of the prison without obtaining the prior written approval of the State. Trousdale County agrees to place in its subcontracts, a provision allowing the State of Tennessee access to the Facility, Inmates, personnel and records regarding the performance of any contractor or subcontractor for monitoring purposes. Any such provision shall include, but not be limited to, the same access as provided in A.3.b.5. above.

b.    All subcontracts shall contain, at a minimum, sections of this contract below pertaining to "Conflicts of Interest," "Non-discrimination," "Records," "No Violation of Contract Articles of Incorporation or Bylaws," "No Defaults under Agreements," "Change in Owners," Research Projects," and "Financial Termination" as identified by the section headings.

c.    Trousdale County shall provide that its contracts with its prime contractor referenced in subsection (a) and their successors and assigns, and any future contract for the management of the facility, include the following provision:

Hold Harmless. The parties acknowledge and agree that the State of Tennessee is a third-party beneficiary under this Contract because the Contractor will be performing services that will benefit the State of Tennessee and on which the State of Tennessee is relying pursuant to its separate contract with Trousdale County. The Contractor agrees to indemnify and hold harmless the State of Tennessee as well as its officers, agents, and employees from and against any and all claims, liabilities, losses, and causes of action, including reasonable attorney fees, which may arise, accrue, or result to any person, firm, corporation, or other entity which may be injured or damaged as a result of acts, omissions, bad faith, negligence, or willful misconduct on the part of the Contractor, its employees, or any person acting for or on its or their behalf relating to this Contract. The Contractor further agrees it shall be liable for the reasonable cost of attorneys for the State in the event such service is necessitated to enforce the terms of this Contract or otherwise enforce the obligations of the Contractor to the State.

In the event of any such suit or claim, the Contractor shall give Trousdale County and the State immediate notice thereof and shall provide all assistance required by the State in the State's defense. The State shall give the Contractor written notice of any such claim or suit, and the Contractor shall have full right and obligation to conduct the Contractor's own defense thereof. Nothing contained herein shall be deemed to accord to the Contractor, through its attorney(s), the right to represent the State of Tennessee in any legal matter, such rights being governed by Tennessee Code Annotated, Section 8-6-106.

D.6.    Conflicts of Interest. The Contractor warrants that no part of the total Contract Amount shall be paid directly or indirectly to an employee or official of the State of Tennessee as wages, compensation, or gifts in exchange for acting as an officer, agent, employee, subcontractor, or consultant to the Contractor in connection with any work contemplated or performed relative to this Contract.

D.7.    Nondiscrimination. The Contractor hereby agrees, warrants, and assures that no person shall be excluded from participation in, be denied benefits of or be otherwise subjected to discrimination in the performance of this Contract or in the employment practices of the Contractor on the grounds of handicap or disability, age, race, color, religion, sex, national origin, or any other classification protected by Federal, Tennessee State constitutional, or statutory law. The Contractor shall, upon request, show proof of such nondiscrimination and shall post in conspicuous places, available to all employees and applicants, notices of nondiscrimination.

36



D.8. <u>Prohibition of Illegal Immigrants</u>. The requirements of *Tennessee Code Annotated,* Section 12-3-309, *et seq.,* addressing the use of illegal immigrants in the performance of any Contract to supply goods or services to the state of Tennessee, shall be a material provision of this Contract, a breach of which shall be grounds for monetary and other penalties, up to and including termination of this Contract.

    a. The Contractor hereby attests, certifies, warrants, and assures that the Contractor shall not knowingly utilize the services of an illegal immigrant in the performance of this Contract and shall not knowingly utilize the services of any subcontractor who will utilize the services of an illegal immigrant in the performance of this Contract. The Contractor shall reaffirm this attestation, in writing, by submitting to the State a completed and signed copy of the document at Appendix **F,** hereto, semi-annually during the period of this Contract. Such attestations shall be maintained by the Contractor and made available to state officials upon request.

    b. Prior to the use of any subcontractor in the performance of this Contract, and semi-annually thereafter, during the period of this Contract, the Contractor shall obtain and retain a current, written attestation that the subcontractor shall not knowingly utilize the services of an illegal immigrant to perform work relative to this Contract and shall not knowingly utilize the services of any subcontractor who will utilize the services of an illegal immigrant to perform work relative to this Contract. Attestations obtained from such subcontractors shall be maintained by the Contractor and made available to state officials upon request.

    c. The Contractor shall maintain records for all personnel used in the performance of this Contract. Said records shall be subject to review and random inspection at any reasonable time upon reasonable notice by the State.

    d. The Contractor understands and agrees that failure to comply with this section will be subject to the sanctions of *Tennessee Code Annotated,* Section 12-3-309, *et seq.* for acts or omissions occurring after its effective date. This law requires the Chief Procurement Officer to prohibit a contractor from contracting with, or submitting an offer, proposal, or bid to contract with the State of Tennessee to supply goods or services for a period of one year after a contractor is discovered to have knowingly used the services of illegal immigrants during the performance of this Contract.

    e. For purposes of this Contract, "illegal immigrant" shall be defined as any person who is not either a United States citizen, a Lawful Permanent Resident, or a person whose physical presence in the United States is authorized or allowed by the federal Department of Homeland Security and who, under federal immigration laws and/or regulations, is authorized to be employed in the U.S. or is otherwise authorized to provide services under the Contract.

D.9. <u>Records</u>. The Contractor shall maintain documentation for all charges under this Contract. The books, records, and documents of the Contractor, insofar as they relate to work performed or money received under this Contract, shall be maintained for a period of three (3) full years from the date of the final payment and shall be subject to audit at any reasonable time and upon reasonable notice by the State, the Comptroller of the Treasury, or their duly appointed representatives. The financial statements shall be prepared in accordance with generally accepted accounting principles.

D.10. <u>Prevailing Wage Rates</u>. All contracts for construction, erection, or demolition or to install goods or materials that involve the expenditure of any funds derived from the State require compliance with the prevailing wage laws as provided in *Tennessee Code Annotated,* Section 12-4-401, *et seq.*

D.11. <u>Monitoring</u>. The Contractor's activities conducted and records maintained pursuant to this Contract shall be subject to monitoring and evaluation by the State, the Comptroller of the Treasury, or their duly appointed representatives.

Case 3:22-cv-00093   Document 33-22   Filed 05/04/22   Page 2 of 30 PageID #: 2950   GCID 000570



D.12.  Progress Reports. The Contractor shall submit brief, periodic, progress reports to the State as requested.

D.13.  Strict Performance. Failure by any party to this Contract to insist in any one or more cases upon the strict performance of any of the terms, covenants, conditions, or provisions of this Contract shall not be construed as a waiver or relinquishment of any such term, covenant, condition, or provision. No term or condition of this Contract shall be held to be waived, modified, or deleted except by a written amendment signed by the parties hereto.

D.14.  Independent Contractor. The parties hereto, in the performance of this Contract, shall not act as employees, partners, joint ventures, or associates of one another. It is expressly acknowledged by the parties hereto that such parties are independent contracting entitles and that nothing In this Contract shall be construed to create an employer/employee relationship or to allow either to exercise control or direction over the manner or method by which the other transacts its business affairs or provides its usual services. The employees or agents of one party shall not be deemed or construed to be the employees or agents of the other party for any purpose whatsoever.

The Contractor, being a Tennessee governmental entity, is governed by the provisions of the Tennessee Government Tort Liability Act, Tennessee Code Annotated, Sections 29-20-101 et seq., for cause of action sounding in tort. Further no contract provision requiring a Tennessee political entity to indemnify or hold harmless the State beyond the liability imposed by law is unenforceable because it appropriates public money and nullifies governmental immunity without the authorization of the General Assembly.

D.15.  State Liability. The State shall have no liability except as specifically provided in this Contract.

D.16.  Force Majeure. The obligations of the parties to this Contract are subject to prevention by causes beyond the parties' control that could not be avoided by the exercise of due care including, but not limited to, natural disasters, riots, wars, epidemics, or any other similar cause.

D.17.  State and Federal Compliance. The Contractor shall comply with all applicable State and Federal laws and regulations in the performance of this Contract.

D.18.  Governing Law. This Contract shall be governed by and construed in accordance with the laws of the State of Tennessee. The Contractor agrees that it will be subject to the exclusive jurisdiction of the courts of the State of Tennessee in actions that may arise under this Contract. The Contractor acknowledges and agrees that any rights or claims against the State of Tennessee or its employees hereunder, and any remedies arising therefrom, shall be subject to and limited to those rights and remedies, if any, available under *Tennessee Code Annotated,* Sections 9-8-101 through 9-8-407.

D.19.  Completeness. This Contract is complete and contains the entire understanding between the parties relating to the subject matter contained herein, including all the terms and conditions of the parties' agreement. This Contract supersedes any and all prior understandings, representations, negotiations, and agreements between the parties relating hereto, whether written or oral.

D.20.  Severability. If any terms and conditions of this Contract are held to be invalid or unenforceable as a matter of law, the other terms and conditions hereof shall not be affected thereby and shall remain in full force and effect. To this end, the terms and conditions of this Contract are declared severable.

D.21.  Headings. Section headings of this Contract are for reference purposes only and shall not be construed as part of this Contract.

E.  SPECIAL TERMS AND CONDITIONS:

38



E.1.   Conflicting Terms and Conditions. Should any of these special terms and conditions conflict with any other terms and conditions of this Contract, these special terms and conditions shall control.

E.2.   Communications and Contacts. All instructions, notices, consents, demands, or other communications required or contemplated by this Contract shall be in writing and shall be made by certified, first class mail, return receipt requested and postage prepaid, by overnight courier service with an asset tracking system, or by EMAIL or facsimile transmission with recipient confirmation. Any such communications, regardless of method of transmission, shall be addressed to the respective party at the appropriate mailing address, facsimile number, or EMAIL address as set forth below or to that of such other party or address, as may be hereafter specified by written notice.

The State:

DERRICK D. SCHOFIELD, COMMISSIONER
TENNESSEE DEPARTMENT OF CORRECTION
6TH FLOOR RACHEL JACKSON BUILDING
Derrick.Schofield@tn.gov
Telephone # 615.741.1000 Ext. 8139
FAX # 615.532.8281

The Contractor:

TROUSDALE COUNTY:

BETTY LOU TAYLOR
TAYLOR, DONOHO, TAYLOR & TAYLOR
204 Court Street
P.O. Box 179
Hartsville, TN 37074
paula@dttlawfirm.com
Telephone # 615-374-3004
FAX # 615-374-2267

All instructions, notices, consents, demands, or other communications shall be considered effectively given upon receipt or recipient confirmation as may be required.

E.3.   Subject to Funds Availability. The Contract is subject to the appropriation and availability of State and/or Federal funds. The State will include in its budget request to the Legislature for each Fiscal year the payments to become due thereunder in such Fiscal Year and will use all reasonable and lawful means at its disposal to secure the appropriation of money for such Fiscal Year sufficient to pay the payments thereunder coming due therein. The Department reasonably believes that monies in an amount sufficient to make all payments due thereunder can and will lawfully be appropriated and made available for this purpose. In the event that the funds are not appropriated or are otherwise unavailable, the State reserves the right to terminate the Contract upon written notice to the Contractor. Said termination shall not be deemed a breach of Contract by the State. Upon receipt of the written notice, the Contractor shall cease all work associated with the Contract. Should such an event occur, the Contractor shall be entitled to compensation for all satisfactory and authorized services completed as of the termination date. Upon such termination, the Contractor shall have no right to recover from the State any actual, general, special, incidental, consequential, or any other damages whatsoever of any description or amount.

E.4.   Confidentiality of Records. Strict standards of confidentiality of records and information shall be maintained in accordance with applicable state and federal law. All material and information, regardless of form, medium or method of communication, provided to the Contractor by the State or acquired by the Contractor on behalf of the State shall be regarded as confidential information in accordance with the provisions of applicable state and federal law, state and federal rules and regulations, departmental policy, and ethical standards. Such confidential

39



information shall not be disclosed, and all necessary steps shall be taken by the Contractor to safeguard the confidentiality of such material or information in conformance with applicable state and federal law, state and federal rules and regulations, departmental policy, and ethical standards.

The Contractor's obligations under this section do not apply to information in the public domain; entering the public domain but not from a breach by the Contractor of this Contract; previously possessed by the Contractor without written obligations to the State to protect it; acquired by the Contractor without written restrictions against disclosure from a third party which, to the Contractor's knowledge, is free to disclose the information; independently developed by the Contractor without the use of the State's information; or, disclosed by the State to others without restrictions against disclosure. Nothing in this paragraph shall permit Contractor to disclose any information that is confidential under federal or state law or regulations, regardless of whether it has been disclosed or made available to the Contractor due to intentional or negligent actions or inactions of agents of the State or third parties.

It is expressly understood and agreed the obligations set forth in this section shall survive the termination of this Contract.

E.5.    Printing Authorization. The Contractor agrees that no publication coming within the jurisdiction of *Tennessee Code Annotated,* Section 12-7-101, *et.* seq., shall be printed pursuant to this contract unless a printing authorization number has been obtained and affixed as required by *Tennessee Code Annotated,* Section 12-7-103 (d).

E.6.    State Ownership of Work Products. The State shall have ownership, right, title, and interest, including ownership of copyright, in all work products, including computer source code, created, designed, developed, derived, documented, installed, or delivered under this Contract subject to the next subsection and full and final payment for each "Work Product." The State shall have royalty-free and unlimited rights and license to use, disclose, reproduce, publish, distribute, modify, maintain, or create derivative works from, for any purpose whatsoever, all said Work Products.

a.    To the extent that the Contractor uses any of its pre-existing, proprietary or independently developed tools, materials or Information ("Contractor Materials"), the Contractor shall retain all right, title and interest in and to such Contractor Materials, and the State shall acquire no right, title or interest in or to such Contractor Materials EXCEPT the Contractor grants to the State an unlimited, non-transferable license to use, copy and distribute internally, solely for the State's internal purposes, any Contractor Materials reasonably associated with any Work Product provided under the Contract.

b.    The Contractor shall furnish such information and data as the State may request, including but not limited to computer code, that is applicable, essential, fundamental, or intrinsic to any Work Product and Contractor Materials reasonably associated with any Work Product, in accordance with this Contract and applicable state law.

c.    Nothing in this Contract shall prohibit the Contractor's use for its own purposes of the general knowledge, skills, experience, ideas, concepts, know-how, and techniques obtained and used during the course of providing the services requested under this Contract.

d.    Nothing in the Contract shall prohibit the Contractor from developing for itself, or for others, materials which are similar to and/or competitive with those that are produced under this Contract.

40



E.7.  State Furnished Property. The Contractor shall be responsible for the correct use, maintenance, and protection of all articles of nonexpendable, tangible, personal property furnished by the State for the Contractor's temporary use under this Contract. Upon termination of this Contract, all property furnished shall be returned to the State in good order and condition as when received, reasonable use and wear thereof excepted. Should the property be destroyed, lost, or stolen, the Contractor shall be responsible to the State for the residual value of the property at the time of loss.

E.8.  Prohibited Advertising. The Contractor shall not refer to this Contract or the Contractor's relationship with the State hereunder in commercial advertising in such a manner as to state or imply that the Contractor or the Contractor's services are endorsed. It is expressly understood and agreed that the obligations set forth in this section shall survive the termination of this Contract in perpetuity.

E.9.  Public Accountability. If the Contractor Is subject to *Tennessee Code Annotated,* Title 8, Chapter 4, Part 4 or If this Contract Involves the provision of services to citizens by the Contractor on behalf of the State, the Contractor agrees to establish a system through which recipients of services may present grievances about the operation of the service program, and the Contractor shall display in a prominent place, located near the passageway through which the public enters in order to receive services pursuant to this Contract, a sign at least twelve inches (12") in height and eighteen Inches (18") in width stating:

NOTICE: THIS AGENCY IS A RECIPIENT OF TAXPAYER FUNDING. IF YOU OBSERVE AN AGENCY DIRECTOR OR EMPLOYEE ENGAGING IN ANY ACTIVITY WHICH YOU CONSIDER TO BE ILLEGAL, IMPROPER, OR WASTEFUL, PLEASE CALL THE STATE COMPTROLLER'S TOLL-FREE HOTLINE: 1-800-232-5454

E.10.  Environmental Tobacco Smoke. Pursuant to the provisions of the federal "Pro-Children Act of 1994" and the Tennessee "Children's Act for Clean Indoor Air of 1995," the Contractor shall prohibit smoking of tobacco products within any indoor premises in which services are provided pursuant to this Contract to individuals under the age of eighteen (18) years. The Contractor shall post "no smoking" signs in appropriate, permanent sites within such premises. This prohibition shall be applicable during all hours, not just the hours in which children are present. Violators of the prohibition may be subject to civil penalties and fines. This prohibition shall apply to and be made part of any subcontract related to this Contract.

E.11.  Lobbying. The Contractor certifies, to the best of its knowledge and belief, that:

a.  No federally appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for Influencing or attempting to Influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant. the making of any federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any federal contract, grant, loan, or cooperative agreement.

b.  If any funds other than federally appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this contract, grant, loan, or cooperative agreement, the Contractor shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

c.  The Contractor shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, sub-grants, and contracts under grants, loans, and cooperative agreements) and that all sub-recipients shall certify and disclose accordingly.

41



This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into and is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, *U.S. Code*.

E.12.   Debarment and Suspension. The Contractor certifies, to the best of its knowledge and belief, that it, its current and future principals, its current and future subcontractors and their principals:

a.   are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any federal or state department or agency;

b.   have not within a three (3) year period preceding this Contract been convicted of, or had a civil judgment rendered against them from commission of fraud, or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (federal, state, or local) transaction or grant under a public transaction; violation of federal or state antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification, or destruction of records, making false statements, or receiving stolen property;

c.   are not presently indicted or otherwise criminally or civilly charged by a government entity (federal, state, or local) with commission of any of the offenses detailed in section b. of this certification; and

d.   have not within a three (3) year period preceding this Contract had one or more public transactions (federal, state, or local) terminated for cause or default.

The Contractor shall provide immediate written notice to the State if at any time it learns that there was an earlier failure to disclose information or that due to changed circumstances, its principals or the principals of its subcontractors are excluded or disqualified.

E.13.   Copyrights and Patents. The Contractor agrees to indemnify and hold harmless the State of Tennessee as well as its officers, agents, and employees from and against any and all claims or suits which may be brought against the State for infringement of any laws regarding patents or copyrights which may arise from the Contractor's performance of this Contract. In any such action brought against the State, the Contractor shall satisfy and indemnify the State for the amount of any final judgment for infringement. The Contractor further agrees it shall be liable for the reasonable fees of attorneys for the State In the event such service is necessitated to enforce the terms of this Contract or otherwise enforce the obligations of the Contractor to the State. The State shall give the Contractor written notice of any such claim or suit and full right and opportunity to conduct the Contractor's own defense thereof.

E.14.   Breach. A party shall be deemed to have breached the Contract if any of the following occurs:

– failure to perform in accordance with any term or provision of the Contract;
– partial performance of any term or provision of the Contract;
– any act prohibited or restricted by the Contract, or
– violation of any warranty.

For purposes of this Contract, these items shall hereinafter be referred to as a "Breach."

a.   Contractor Breach – The State shall notify Contractor in writing of a Breach.

(1)   In event of a Breach by Contractor, the State shall have available the remedy of Actual Damages and any other remedy available at law or equity.

(2)   Liquidated Damages – In the event of a Breach, the State may assess Liquidated Damages. The State shall notify the Contractor of amounts to be

42



assessed as Liquidated Damages. The parties agree that due to the complicated nature of the Contractor's obligations under this Contract it would be difficult to specifically designate a monetary amount for a Breach by Contractor as said amounts are likely to be uncertain and not easily proven. Contractor hereby represents and covenants it has carefully reviewed the Liquidated Damages contained In above referenced, Appendix D and agree that said amounts represent a reasonable relationship between the amount and what might reasonably be expected in the event of Breach, and are a reasonable estimate of the damages that would occur from a Breach. It is hereby agreed between the parties that the Liquidated Damages represent solely the damages and injuries sustained by the State in losing the benefit of the bargain with Contractor and do not include any injury or damage sustained by a third party. The Contractor agrees that the liquidated damage amount is In addition to any amounts Contractor may owe the State pursuant to the indemnity provision or other section of this Contract.

For services to be performance on a daily basis, the liquidated damages may be assessed for each day the service was not fully performed. For services to be performed on a less regular basis (e.g. a monthly report), the liquidated damages may be assessed for each time the service was not fully performed. The State may continue to withhold the Liquidated Damages or a portion thereof until the Contractor cures the Breach, the State exercises its option to declare a Partial Default, or the State terminates the Contract. The State is not obligated to assess Liquidated Damages before availing itself of any other remedy. The State may choose to discontinue Liquidated Damages and avail itself of any other remedy available under this Contract or at law or equity; provided, however, Contractor shall receive a credit for said Liquidated Damages previously withheld except In the event of a Partial Default.

(3)     Partial Default – In the event of a Breach, the State may declare a Partial Default. In which case, the State shall provide the Contractor written notice of: (1) the date which Contractor shall terminate providing the service associated with the Breach; and (2) the date the State will begin to provide the service associated with the Breach. Notwithstanding the foregoing, the State may revise the time periods contained in the notice written to the Contractor.

In the event the State declares a Partial Default, the State may withhold, together with any other damages associated with the Breach, from the amounts due the Contractor the greater of: (1) amounts which would be paid the Contractor to provide the defaulted service: or (2) the cost to the State of providing the defaulted service, whether said service is provided by the State or a third party. To determine the amount the Contractor is being paid for any particular service, the Department shall be entitled to receive within five (5) days any requested material from Contractor. The State shall make the final and binding determination of said amount.

The State may assess Liquidated Damages against the Contractor for any failure to perform which ultimately results in a Partial Default with said Liquidated Damages to cease when said Partial Default is effective. Upon Partial Default, the Contractor shall have no right to recover from the State any actual, general, special, incidental, consequential, or any other damages whatsoever of any description or amount. Contractor agrees to cooperate fully with the State in the event a Partial Default is taken.

(4)     Contract Termination – In the event of a Breach, the State may terminate the Contract immediately or in stages. The Contractor shall be notified of the termination in writing by the State. Said notice shall hereinafter be referred to as Termination Notice. The Termination Notice may specify either that the termination is to be effective immediately, on a date certain in the future, or that

43



the Contractor shall cease operations under this Contract In stages. In the event of a termination; the State may withhold any amounts which may be due Contractor without waiver of any other remedy or damages available to the State at law or at equity. The Contractor shall be liable to the State for any and all damages incurred by the State and any and all expenses incurred by the State which exceed the amount the State would have paid Contractor under this Contract. Contractor agrees to cooperate with the State in the event of a Contract Termination or Partial Takeover.

b.    State Breach – In the event of a Breach of Contract by the State, the Contractor shall notify the State in writing within 30 days of any Breach of Contract by the State. Said notice shall contain a description of the Breach. Failure by the Contractor to provide said written notice shall operate as an absolute waiver by the Contractor of the State's Breach. In no event shall any Breach on the part of the State excuse the Contractor from full performance under this Contract. In the event of Breach by the State, the Contractor may avail itself of any remedy at law in the forum with appropriate jurisdiction; provided, however, failure by the Contractor to give the State written notice and opportunity to cure as described herein operates as a waiver of the State's Breach. Failure by the Contractor to file a claim before the appropriate forum in Tennessee with jurisdiction to hear such claim within one (1) year of the written notice of Breach shall operate as a waiver of said claim in its entirety. It is agreed by the parties this provision establishes a contractual period of limitations for any claim brought by the Contractor.

E.15.   <u>Partial Takeover</u>. The State may, at its convenience and without cause, exercise a partial takeover of any service which the Contractor is obligated to perform under this Contract, including but not limited to any service which is the subject of a subcontract between Contractor and a third party, although the Contractor is not in breach (hereinafter referred to as "Partial Takeover"). Said Partial Takeover shall not be deemed a Breach of Contract by the State. Contractor shall be given at least 30 days prior written notice of said Partial Takeover with said notice to specify the area(s) of service the State will assume and the date of said assumption. Any Partial Takeover by the State shall not alter in any way Contractor's other obligations under this Contract. The State may withhold from amounts due the Contractor the amount the Contractor would have been paid to deliver the service as determined by the State. The amounts shall be withheld effective as of the date the State assumes the service. Upon Partial Takeover, the Contractor shall have no right to recover from the State any actual, general, special, incidental, consequential, or any other damages whatsoever of any description or amount.

E.16.   <u>Unencumbered Personnel</u>. All persons assigned by the Contractor to perform services for the State under this Contract, whether they are employees, agents, subcontractors, or principals of the Contractor, shall not be subject to any employment contract or restrictive covenant provisions which would preclude those persons from performing the same or similar services for the State after the termination of this Contract, either as a State employee, an independent contractor, or an employee, agent, subcontractor or principal of another contractor with the State. If the Contractor provides the State with the services of any person subject to a restrictive covenant or contractual provision in violation of this provision, any such restrictive covenant or contractual provision will be void and unenforceable, and the Contractor will pay the State and any person involved all of Its expenses, including attorney fees, caused by attempts to enforce such provisions.

E.17   <u>Types of Insurance</u>. The Contractor and/or its management subcontractor shall maintain and pay for insurance substantially as described in ATTACHMENT E. The State shall be listed as an additional insured. Contractor shall revise or supplement the Insurance listed on Appendix E and may seek a compensation adjustment pursuant to Section C.11.

E.18.   <u>Defense/Immunity</u>. Notwithstanding any provision contained herein to the contrary, the State does not waive any immunity defenses which may exist by operation of law, including, but not limited to, limitations on the amount of damages which may be awarded or paid.

44



E.19.  <u>Prohibitions.</u>  Notwithstanding any other provision of this Contract to the contrary, nothing contained herein shall be interpreted to authorize, allow or imply authority of the Contractor to do the following:

a.  develop or implement procedures for calculating Inmate release and parole eligibility dates;

b.  develop and implement procedures for calculating and awarding sentence credits;

c.  approve Inmates for furlough and work release;

d.  approve the type of work an Inmate may perform, and the wages or sentence credits which may be given to Inmates engaged in such work; and

e.  grant, deny or revoke sentence credits; place an Inmate under less restrictive custody or more restrictive custody; or take any disciplinary actions; provided, however, that this Section shall not prevent Contractor from making recommendations to the State with respect to any of the above in conformance with Departmental policy. The Commissioner shall determine whether any action or proposed action violates the provisions of this Section.

E.20.  <u>Contractor's Representations and Warranties.</u>  Contractor represents and warrants to and for the benefit of State, with the Intent that State will rely thereon for purposes of entering into this Contract, as follows:

a.  <u>Authorization.</u> This Contract has been duly authorized, executed, and delivered by Contractor and, assuming due execution by the appropriate State officials as indicated on the signature page of this Contract and delivery by State, constitutes a legal, valid, and binding agreement enforceable against Contractor in accordance with its terms.

b.  <u>No Violation of Contract, Articles of Incorporation or Bylaws.</u> The consummation of the transactions contemplated by this Contract and its fulfillment of the terms hereof will not conflict with, or result in a breach of any of the terms and provisions of, or constitute a default under any indenture, mortgage, deed of trust, lease, loan agreement, license, security agreement, Contract, governmental license or permit, or other agreement or instrument to which Contractor is a party or by which its properties are bound, or any order, rule, or regulation of any court or any regulatory body, administrative agency, or their governmental body applicable to Contractor or any of its properties, except any such conflict, breach, or default which would not materially and adversely affect Contractor's ability to perform its obligations under this Contract, and will not conflict with, or result in a breach of any of the terms and provisions of, or constitute a default under, the Articles of Incorporation (or other corresponding charter document) or Bylaws of Contractor.

c.  <u>No Defaults under Agreements.</u> Contractor is not in default nor is there any event in existence which, with notice or the passage of time or both, would constitute a default by Contractor, under any indenture, mortgage, deed of trust, lease, loan agreement, license, security agreement, Contract, governmental license or permit, or other agreement or instrument to which it is a party or by which any of its properties are bound and which default would materially and adversely affect Contractor's ability to perform its obligations under this Contract.

d.  <u>Compliance with Laws.</u> Contractor, Its officers and directors purporting to act on behalf of Contractor or such officers and directors have been conducting business in compliance with all applicable laws, rules, and regulations of the jurisdictions in which Contractor is conducting business including all safety laws and laws with respect to worker's compensation, discrimination in hiring, promotion or pay of employees. Contractor warrants that Contractor, and its current and former officers and directors have no convictions regarding criminal activity;

45

COII 000978



       (1)     no pending charges regarding criminal activity; or

       (2)     to their knowledge, no investigations on-going by any state, local or federal authorities regarding any possible criminal activity, except as provided in writing.

e.    <u>No Litigation.</u> There is not now pending or, to the knowledge of Contractor, threatened, any action, suit, or proceeding to which Contractor is or may be a party, before or by any court or governmental agency or body, which might result in any material adverse change in Contractor's ability to perform its obligations under this Contract, or any such action, suit, or proceeding related to environmental or civil rights matters; and no labor disturbance by the employees of Contractor exists or is imminent which might materially and adversely affect Contractor's ability to perform its obligations under this Contract.

f.    <u>Disclosure.</u> There is no material fact which materially and adversely affects or in the future will (so far as Contractor can now reasonably foresee) materially and adversely affect Contractor's ability to perform its obligations under this Contract which has not been accurately set forth in this Contract or otherwise accurately disclosed in writing to State by Contractor prior to the date hereof.

g.    <u>Opinion of Contractor's Counsel.</u> Contractor shall furnish to State an opinion of counsel in connection with this Contract dated as of the date of the Contract. Such opinion shall address the Contractor's compliance with applicable law, affirm its authority to enter into this Contract, indicate that the Contractor is not currently in litigation or have notice of litigation that could cause the Contractor not to perform the terms of this Contract, and affirm the enforceability of this Contract in accordance with its terms.

E.21.   <u>Binding Nature.</u> This Contract shall not be binding until the State has received evidence of insurance required by Section E.17.

E.22.   <u>Terminology and Definitions.</u> All personal pronouns used in this Contract, whether used in the masculine, feminine, or neutral gender, shall include all other genders; the singular shall include the plural and the plural shall include the singular.

E.23.   <u>Change In Owners.</u> Contractor shall notify the State in writing of any change of ownership of the Contractor, through sale or merger, which occurs during the term of the Contract. Contractor shall inform the State fully of the financial ability of the new ownership to fully comply with the terms and conditions of the Contract. The State reserves the right to terminate the Contract in the event of a change in ownership without penalty to the State or to consider the failure to comply with the notification or financial reporting provisions as a Breach by the Contractor.

E.24.   <u>Release.</u> Contractor, upon final payment of the amount due under this Contract, releases the State, its officers and employees, from all liabilities, claims and obligations whatsoever arising from or under this Contract. Contractor agrees not to purport to bind the State to any obligation not expressly assumed herein by the State.

E.25.   <u>Subcontracting and Assignment.</u>

The Contractor shall provide that all subcontracts may be assignable to the State at the State's sole discretion. Any subcontract shall also provide that the State shall not be responsible for any outstanding liability to the subcontractors incurred by the Contractor and that the State may terminate such subcontracts upon giving thirty days prior written notice with or without cause.

Notwithstanding any use of approved subcontractors, the Contractor shall be the State's prime contractor and shall be responsible for all work performed.

E.26.   <u>Research Projects.</u> Contractor shall not publish or disseminate any findings based on data obtained from the operation of the Contract or engage in any research projects without the prior written consent of the Department.

46



E.27. <u>Waiver</u>. No consent, waiver or excuse of any Breach of any of the terms or conditions of this Contract shall be held to be a consent, waiver, or excuse of any other or subsequent Breach; nor shall any such waiver or excuse be valid or binding unless the same shall be in writing and approved and executed by the party alleged to have granted the waiver as indicated on the signature page of the Contract.

E.28. <u>Third Party Beneficiary</u>. Neither the Contractor nor the State intends to create rights for any third party by the Contract and no third party beneficiary rights are created hereby. Third parties shall mean all persons except the State and the Contractor, including but not limited to employees of Contractor, subcontractors of Contractor and Inmates located at the Facility.

E.29. <u>Laws</u>. The Contractor shall comply with all applicable federal, state, and local constitutions, laws, and regulations, court decisions, Court Orders, and any applicable state and federal orders in the performance of the Contract, which may be in effect during the term of this Contract.

E.30. <u>Attorney Fees</u>. The Contractor agrees that in the event either party deems it necessary to take legal action to enforce any provision of the Contract and in the event the State prevails, the Contractor shall pay all expenses of such action, including but not limited to the State's attorney fees and costs of all stages of the litigation.

E.31. <u>Approvals</u>. Any policies, procedures or other documents contained or referenced in this Contract subject to the State's approval under the terms this Contract shall remain subject to State prior written approval whenever they are revised, amended, replaced or supplemented. Contractor agrees to accept and implement any revisions, alterations or supplements suggested by the State to any document, plan, policy or procedure which requires State approval.

E.32. <u>Fraud/Misrepresentation</u>. If, in the course of any stage under the term of the Contract, the Contractor commits fraud, misrepresentation or conspiracy to defraud the State, the State shall have the right to pursue any remedies described in Section E.14, and/or pursue any criminal sanctions allowed by law.

E.33. <u>Financial Termination</u>. The State may terminate the Contract without penalty to the State in the event the Contractor:

    a.    admits in writing its inability to pay its debts;

    b.    makes a general assignment for the benefit of creditors;

    c.    suffers a decree or order appointing a receiver or trustee for it or substantially all of its property to be entered and, if entered without its consent, not to be stayed or discharged within 60 days;

    d.    suffers proceedings under any law relating to bankruptcy, insolvency, or the reorganization or relief of debtors to be instituted by or against it and, if contested by Contractor, not to be dismissed or stayed within 60 days; or

    e.    suffers any judgment, unit of attachment or execution, or any similar process to be issued or levied against a substantial part of its property which is not released, stayed, bonded, or vacated within 60 days after issue or levy.

E.34. <u>Set-Off</u>. The State reserves the right to deduct from amounts which are or shall become due and payable to the Contractor under this or any Contract between the parties any amounts which are or shall become due and payable to the State by the Contractor. The State may withhold any amounts which may otherwise be due the Contractor without waiver of any other remedy or damages available to the State under this Contract at law or at equity.

E.35. <u>Construction</u>. The parties agree that should a dispute arise involving the construction or interpretation of this Contract, it shall not be construed or interpreted in favor of either party.

47



E.36.   Written Notices. The necessity of written notices herein shall be strictly construed.

E.37.   Implied Covenants or Agreements. The State shall be bound only by the express, written terms contained herein and shall not be bound by any implied covenants or agreements.

E.38.   Approvals. Contractor agrees to accept and implement any revisions, alterations or supplements suggested by the State to any document, plan, policy or procedure which requires State approval.

E.39.   Notices. Failure of the State to provide any notice to Contractor described in this Contract whether or not the State had knowledge of the appropriateness of said notice shall not relieve the Contractor of Its obligation to perform in accordance with the Contract and shall not be a waiver or excuse of any failure to perform.

E.40.   No Contingent Fees. No person or entity shall be employed or retained or given anything of monetary value on a contingent fee basis to solicit or secure this Contract, except bona fide employees of Contractor (including proposed subcontractors) or bona fide established commercial or professional entities retained by Contractor for the purpose of securing business. For violation of this Section, in addition to the remedies available pursuant to Section E.14., the State shall have the right to deduct from any amount owed Contractor the amount of such commission, percentage, brokerage or contingent fee, and other benefit from the Contractor.

E.41.   Prison Rape Elimination Act (PREA): Contractor will comply with the Prison Rape Elimination Act of 2003, 42. U.S.C. 15601 et seq., [PREA] and with all applicable PREA Standards for preventing, detecting, monitoring, investigating, and eradicating any form of sexual abuse in the performance of the Contract. Contractor acknowledges that, in addition to self-monitoring requirements imposed by such laws and standards, the State will conduct announced or unannounced compliance monitoring to include on-site monitoring. Failure to comply with PREA and PREA Standards may result in termination of the contract.

E.42    Competitive Procurements.  This Contract provides for reimbursement of the cost of goods, materials, supplies, equipment, or contracted services.  Such procurements shall be made on a competitive basis, where practical.  The Contractor shall maintain documentation for the basis of each procurement for which reimbursement is paid pursuant to this Contract.  In each instance where it is determined that use of a competitive procurement method was not practical, said documentation shall include a written justification, approved by the Commissioner, for such decision and non-competitive procurement.

E.43    HIPAA Compliance. The State and Contractor shall comply with obligations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and its accompanying regulations.

    a.      Contractor warrants to the State that it is familiar with the requirements of HIPAA and its accompanying regulations, and will comply with all applicable HIPAA requirements in the course of this Contract.

    b.      Contractor warrants that it will cooperate with the State, including cooperation and coordination with State privacy officials and other compliance officers required by HIPAA and its regulations, in the course of performance of the Contract so that both parties will be in compliance with HIPAA.

    c.      The State and the Contractor will sign documents, including but not limited to business associate agreements, as required by HIPAA and that are reasonably necessary to keep the State and Contractor in compliance with HIPAA.  This provision shall not apply if information received by the State under this Contract is NOT "protected health information" as defined by HIPAA, or if HIPAA permits the State to receive such information without entering into a business associate agreement or signing another such document.

48



IN WITNESS WHEREOF,

CONTRACTOR LEGAL ENTITY NAME:

_Jakie West_                                    July 1, 2014
CONTRACTOR SIGNATURE                                    DATE

_Jakie West_          _County Mayor_
PRINTED NAME AND TITLE OF CONTRACTOR SIGNATORY (above)

ATTEST: _Rita Crowder_                    , COURT CLERK

DEPARTMENT OF CORRECTION:

_[signature]_                                    July 1, 2014

DERRICK D. SCHOFIELD, COMMISSIONER                    DATE

49

CCA 000982



# LIST OF APPENDICES

Appendix A.   Description of Real Property

Appendix B.   Security Addendum

Appendix C.   TDOC Policies

Appendix D.   Liquidated Damages Schedule

Appendix E.   Description of Insurance

Appendix F.   Prohibition of Illegal Immigrants

Appendix G.   Ramp Schedule

CCA 000983


Appendix A.

**Property Description**

A parcel or tract of land lying in the First Civil District of Trousdale County, State of Tennessee, and being more particularly described as follows:

Commencing at the northwest corner of the Four Lake Regional Industrial Development Authority property as of record in Deed Book 72, page 265, Register's Office for Trousdale County, Tennessee, said point being an angle iron found and having Tennessee State Plane Coordinates of N = 738,901.68 feet and E = 1,938,049.05 feet (NAD 83), thence South 51° 23' 44" East, 4751.08 feet to an iron pin set, said point being the TRUE POINT OF BEGINNING and being the northeast corner of the herein described tract, thence South 04°00'47" East, a distance of 794.56 feet; thence North 84°19'10" East, a distance of 808.03 feet; thence South 7°32'23" East, a distance of 1196.99 feet: South 38° 24'28"W 215.61 feet; thence South 84°21'19" West, a distance of 1363.05 feet to the beginning of a curve to the left having an arc length of 296.46 feet, a radius of 825.00 feet and a central angle of 20°35'20" and being subtended by a chord which bears S74°03'39"W 294.87 feet; thence South 63°45'58" West tangent to said curve, a distance of 81.02 feet to the beginning of a curve to the right having an arc length of 399.96 feet, a radius of 875.00 feet and a central angle of 26°11'22" and being subtended by a chord which bears S76°51'39"W 396.48 feet; thence continuing with a curve to the right having an arc length of 151.84 feet, a radius of 150.00 feet and a central angle of 57°59'56" and being subtended by a chord which bears N61°02'42"W 145.44 feet; thence North 32°02'44" West tangent to said curve, a distance of 561.03 feet to the beginning of a curve tangent to said line; thence with a curve to the right having an arc length of 368.26 feet, a radius of 500.00 feet and a central angle of 42°11'57" and being subtended by a chord which bears N10°56'45"W 359.99 feet; thence North 10°09'13" East tangent to said curve, a distance of 1040.72 feet to the beginning of a curve tangent to said line; thence with a curve to the right having an arc length of 500.42 feet, a radius of 775.00 feet and a central angle of 36°59'47" and being subtended by a chord which bears N28°39'07"E 491.78 feet; thence North 47°09'00" East tangent to said curve, a distance of 21.38 feet to the beginning of a curve tangent to said line; thence with a curve to the right having an arc length of 132.84 feet, a radius of 85.00 feet and a central angle of 89°32'40" and being subtended by a chord which bears S88°04'40"E 119.73 feet; thence with a curve to the left having an arc length of 766.44 feet, a radius of 630.00 feet and a central angle of 69°42'15" and being subtended by a chord which bears S78°09'27"E 720.04 feet; thence North 66°59'25" East tangent to said curve, a distance of 488.83 feet to the Point of Beginning and containing 4,683,964 square feet or 107.53 Acres, more or less.

Being a portion of the property acquired by Four Lake Regional Industrial Development Authority from the United States Of America, Tennessee Valley

Case 3:22-cv-00093   Document 33-22   Filed 05/04/22   Page 16 of 30 PageID #: 627

GO1 000984



Authority by Special Warranty and Quit Claim deed of record in Deed Book 72, page 265, Register's Office for Trousdale County, Tennessee

CG1 000985



# FEDERAL BUREAU OF INVESTIGATION
## CRIMINAL JUSTICE INFORMATION SERVICES
### SECURITY ADDENDUM

The goal of this document is to augment the CJIS Security Policy to ensure adequate security is provided for criminal justice systems while (1) under the control or management of a private entity or (2) connectivity to FBI CJIS Systems has been provided to a private entity (contractor). Adequate security is defined in Office of Management and Budget Circular A-130 as "security commensurate with the risk and magnitude of harm resulting from the loss, misuse, or unauthorized access to or modification of information."

The intent of this Security Addendum is to require that the Contractor maintain a security program consistent with federal and state laws, regulations, and standards (including the CJIS Security Policy in effect when the contract is executed), as well as with policies and standards established by the Criminal Justice Information Services (CJIS) Advisory Policy Board (APB).

This Security Addendum identifies the duties and responsibilities with respect to the installation and maintenance of adequate internal controls within the contractual relationship so that the security and integrity of the FBI's information resources are not compromised. The security program shall include consideration of personnel security, site security, system security, and data security, and technical security.

The provisions of this Security Addendum apply to all personnel, systems, networks and support facilities supporting and/or acting on behalf of the government agency.

1.00    Definitions

1.01    Contracting Government Agency (CGA) - the government agency, whether a Criminal Justice Agency or a Noncriminal Justice Agency, which enters into an agreement with a private contractor subject to this Security Addendum.

1.02    Contractor - a private business, organization or individual which has entered into an agreement for the administration of criminal justice with a Criminal Justice Agency or a Noncriminal Justice Agency.

2.00    Responsibilities of the Contracting Government Agency.

2.01    The CGA will ensure that each Contractor employee receives a copy of the Security Addendum and the CJIS Security Policy and executes an acknowledgment of such receipt and the contents of the Security Addendum. The signed acknowledgments shall remain in the possession of the CGA and available for audit purposes. The acknowledgement may be signed by hand or via digital signature (see glossary for definition of digital signature).

3.00    Responsibilities of the Contractor.

3.01    The Contractor will maintain a security program consistent with federal and state laws, regulations, and standards (including the CJIS Security Policy in effect when the contract is executed and all subsequent versions), as well as with policies and standards established by the Criminal Justice Information Services (CJIS) Advisory Policy Board (APB).

4.00    Security Violations.

8/9/2013
CJISD-ITS-DOC-08140-5.2



4.01   The CGA must report security violations to the CJIS Systems Officer (CSO) and the Director, FBI, along with indications of actions taken by the CGA and Contractor.

4.02   Security violations can justify termination of the appended agreement.

4.03   Upon notification, the FBI reserves the right to:

    a.   Investigate or decline to investigate any report of unauthorized use;

    b.   Suspend or terminate access and services, including telecommunications links. The FBI will provide the CSO with timely written notice of the suspension. Access and services will be reinstated only after satisfactory assurances have been provided to the FBI by the CJA and Contractor.   Upon termination, the Contractor's records containing CHRI must be deleted or returned to the CGA.

5.00   Audit

5.01   The FBI is authorized to perform a final audit of the Contractor's systems after termination of the Security Addendum.

6.00   Scope and Authority

6.01   This Security Addendum does not confer, grant, or authorize any rights, privileges, or obligations on any persons other than the Contractor, CGA, CJA (where applicable), CSA, and FBI.

6.02   The following documents are incorporated by reference and made part of this agreement: (1) the Security Addendum; (2) the NCIC 2000 Operating Manual; (3) the CJIS Security Policy; and (4) Title 28, Code of Federal Regulations, Part 20.  The parties are also subject to applicable federal and state laws and regulations.

6.03   The terms set forth in this document do not constitute the sole understanding by and between the parties hereto; rather they augment the provisions of the CJIS Security Policy to provide a minimum basis for the security of the system and contained information and it is understood that there may be terms and conditions of the appended Agreement which impose more stringent requirements upon the Contractor.

6.04   This Security Addendum may only be modified by the FBI, and may not be modified by the parties to the appended Agreement without the consent of the FBI.

6.05   All notices and correspondence shall be forwarded by First Class mail to:


Assistant Director

Criminal Justice Information Services Division, FBI

1000 Custer Hollow Road

Clarksburg, West Virginia  26306



# FEDERAL BUREAU OF INVESTIGATION
## CRIMINAL JUSTICE INFORMATION SERVICES
### SECURITY ADDENDUM

### CERTIFICATION

I hereby certify that I am familiar with the contents of (1) the Security Addendum, including its legal authority and purpose; (2) the NCIC Operating Manual; (3) the CJIS Security Policy; and (4) Title 28, Code of Federal Regulations, Part 20, and agree to be bound by their provisions.

I recognize that criminal history record information and related data, by its very nature, is sensitive and has potential for great harm if misused. I acknowledge that access to criminal history record information and related data is therefore limited to the purpose(s) for which a government agency has entered into the contract incorporating this Security Addendum. I understand that misuse of the system by, among other things: accessing it without authorization; accessing it by exceeding authorization; accessing it for an improper purpose; using, disseminating or re-disseminating information received as a result of this contract for a purpose other than that envisioned by the contract, may subject me to administrative and criminal penalties. I understand that accessing the system for an appropriate purpose and then using, disseminating or re-disseminating the information received for another purpose other than execution of the contract also constitutes misuse. I further understand that the occurrence of misuse does not depend upon whether or not I receive additional compensation for such authorized activity. Such exposure for misuse includes, but is not limited to, suspension or loss of employment and prosecution for state and federal crimes.

_____          _____

Printed Name/Signature of Contractor Employee          Date

_____          _____

Printed Name/Signature of Contractor Representative          Date

_____

Organization and Title of Contractor Representative

8/9/2013
CJISD-ITS-DOC-08140-5.2

H-7

CGL 000988



Appendix C

## CURRENT APPLICABLE TDOC POLICIES
### for
### TROUSDALE COUNTY
April 3, 2014

| Policy Number | Policy Title | Effective Date | CCA Chapter # |
|---|---|---|---|
| 100.00 | PCN 14-13 | 4/1/14 | |
| 101.04.1 | Policies and Procedures Distribution/ Inmate Access | 3/1/14 | 1 |
| 101.06 | Policy and Procedure Exemptions | 3/1/14 | 1 |
| 103.01 | Quarterly Reports | 8/15/11 | 1 |
| 103.02 | Incident Reporting | 1/15/14 | 5 |
| 103.03 | Open Parole Hearings | 2/15/12 | 21 |
| 103.04 | Provision of Information and Access to the Media and Public | 1/1/13 | 1 |
| 103.05 | Inmate Emergency Notification | 5/1/12 | 5 |
| 103.07 | Annual Inspections | 10/1/12 | 1 |
| 103.10 | Title VI-Civil Rights Act of 1964 PCN 13-37 | 10/1/12 9/15/13 | 1 |
| 103.11 | Notification to Victim/Member of the Public and Confidentiality of Information | 9/1/13 | 1 |
| 103.11.1 | Victim-Offender Dialogue Program | 5/15/10 | 1 |
| 103.12 | Documentation of Significant Offender Related Contacts | 3/1/11 | 1 |
| 103.13 | Administration of Victim Services PCN 10-31 | 8/1/10 11/1/10 | 1 |
| 103.14 | Victim Impact Program | 11/1/10 | 1 |
| 103.15 | Central Communication Center | 01/15/14 | |
| 105.03 | Diplomatic Access for Foreign National Inmates | 11/1/10 | 14 |
| 107.01 | Investigations Unit Authority, Responsibility, Personnel – Selection and Training PCN 13-22 | 12/1/12 5/1/13 | 1 |
| 107.02 | Investigations Unit Operational Procedures PCN 13-23 | 12/1/12 5/1/13 | 1 |
| 107.03 | Institutional Internal Affairs Investigators, Selection, and Responsibilities | 12/1/12 | 1 |
| 107.04 | Office of Investigations and Compliance | 12/1/12 | 1 |
| 108.01 | Facility Construction, Renovation, & Physical Plant Maintenance PCN 13-33 | 4/15/13 8/15/13 | 7 |
| 108.02 | Design and Construction of Prison Facilities | 8/15/12 | 7 |
| 108.03 | Building and Safety Codes | 10/1/12 | 7 |
| 109.04 | Restriction of TOMIS and State Network Access by Offenders | 10/15/07 | 1 |
| 109.05 | Acceptable Use Network Resources PCN 11-12 | 12/1/06 5/1/11 | 1 |

CCA 000989



| 110.08 | Level of Service/Case Management Inventory Training | 6/15/10 | 18 |
|---|---|---|---|
| 112.02 | Self Contained and Emergency Response Breathing Apparatus | 5/1/11 | 8 |
| 112.03 | Occupational Health and Safety | 10/1/13 | 8 |
| 112.04 | Fire and Emergency Evacuation Plan<br>PCN 13-55 | 11/1/11<br>3/11/13 | 8 |
| 112.05 | Monitoring and Conducting Fire Prevention and Building Construction Safety Inspections | 11/1/11 | 8 |
| 112.08 | Personal Hygiene Resources for Inmates<br>PCN 13-8 | 3/1/11<br>4/15/13 | 13 |
| 112.09 | Control and Use of Flammable, Toxic, and Caustic Materials | 4/1/14 | 8 |
| 112.11 | Smoke-Free Policy (TDOC Institutions and Academy)<br>PCN 12-3<br>PCN 11-1 | 1/15/10<br>1/1/12<br>2/1/11 | 8 |
| 113.01 | Health Services Administration | 3/1/12 | 13 |
| 113.02 | Health Care Facilities, Equipment, and Supplies | 8/15/11 | 13 |
| 113.03 | Health Services Disaster Procedures Plan | 10/15/11 | 13 |
| 113.04 | Medical Requirements for the Release/Transfer of Inmates | 3/1/12 | 13 |
| 113.05 | Death and Autopsies<br>PCN 13-39 | 6/1/12<br>10/15/13 | 13 |
| 113.08 | Prosthetics and Durable Medical Equipment<br>PCN 11-38 | 11/1/10<br>11/1/11 | 13 |
| 113.09 | Health Services Quality Improvement<br>PCN 13-45 | 8/15/12<br>11/15/13 | 13 |
| 113.10 | Credentials of Health Care Personnel | 11/1/10 | 13 |
| 113.11 | Clinical and Nursing Protocols | 11/1/11 | 13 |
| 113.12 | Specialty Consultant Services<br>PCN 11-39 | 7/15/11<br>11/1/11 | 13 |
| 113.13 | Employee Health Care | 12/15/13 | 13 |
| 113.14 | Inmate Workers in Health Care | 8/15/11 | 13 |
| 113.15 | Inmate Co-payment of Health Services | 6/1/11 | 13 |
| 113.20 | Intake Physical Examination<br>PCN 12-14 | 8/1/10<br>8/15/12 | 13 |
| 113.21 | Health Classification | 4/1/10 | 13 |
| 113.22 | Health Orientation | 1/1/12 | 13 |
| 113.23 | Initial Health Screening and Evaluation | 5/15/11 | 13 |
| 113.24 | Inmates Assigned to Jobs in Food Services | 7/15/11 | 13 |
| 113.30 | Access to Health Care | 6/15/11 | 13 |
| 113.31 | Sick Call/Assessment of Health Complaints | 2/15/14 | 13 |
| 113.32 | Levels of Care | 2/1/11 | 13 |
| 113.34 | Extended Health Services | 9/15/12 | 13 |
| 113.33 | Telehealth | 12/1/12 | 13 |
| 113.35 | Therapeutic Diets<br>PCN 13-28 | 12/1/11<br>6/1/13 | 13 |
| 113.36 | Hunger Strike | 11/1/11 | 13 |
| 113.40 | Health Education | 6/1/13 | 13 |
| 113.41 | Periodic Health Appraisal | 5/1/11 | 13 |

CCA 000990



| 113.42 | Communicable Diseases<br>PCN 11-41 | 11/1/10<br>11/1/11 | 13 |
| 113.43 | Immunizations: Inmate Population | 5/1/13 | 13 |
| 113.44 | Tuberculosis (TB) Control | 6/15/11 | 13 |
| 113.45 | AIDS: Education, Prevention and Case Management | 6/1/12 | 13 |
| 113.50 | Health Records | 2/1/11 | 13 |
| 113.51 | Consent/Refusal of Treatment | 10/1/12 | 13 |
| 113.52 | Release of Protected Health Information | 8/15/11 | 13 |
| 113.53 | Accident/Injury Reporting | 10/15/11 | 13 |
| 113.54 | Health Statistics Collection and Reporting | 6/1/12 | 13 |
| 113.60 | Dental Services Administration | 2/1/12 | 13 |
| 113.62 | Dental Specialties | 1/1/12 | 13 |
| 113.70 | Management of Pharmaceuticals<br>PCN 12-7<br>PCN 11-43 | 8/15/11<br>3/1/12<br>11/1/11 | 13 |
| 113.71 | Administration/Distribution of Medication<br>PCN 11-44 | 8/15/11<br>11/1/11 | 13 |
| 113.72 | Management of Hazardous Medical Devices<br>PCN 14-2 | 6/1/13<br>2/15/14 | 13 |
| 113.78 | Radiology Services | 12/1/11 | 13 |
| 113.80 | Mental Health Services Administration and Delivery | 10/1/12 | 13 |
| 113.81 | Mental Health Documentation | 8/1/10 | 13 |
| 113.81.1 | Mental Health Statistics and Reports | 9/15/12 | 13 |
| 113.82 | Mental Health Referral Triage Process | 9/15/12 | 13 |
| 113.82.1 | Transition for Offenders with Mental Illness<br>PCN 12-12<br>PCN 10-21 | 3/1/09<br>8/15/12<br>7/1/10 | 13 |
| 113.83 | Mental Health Evaluation and Mental Health Treatment Plan<br>PCN 13-47 | 12/1/11<br>1/15/14 | 13 |
| 113.84 | Clinical Assessments, Mental Health Appraisals,<br>and Psychological Testing | 3/15/12 | 13 |
| 113.85 | Mental Health Treatment Team | 6/1/12 | 13 |
| 113.87 | Mental Health Levels of Care | 9/15/12 | |
| 113.88 | Mental Health Seclusion and Suicide Monitoring | 7/15/11 | 13 |
| 113.89 | Psychotropic Medication/Involuntary Treatment | 8/15/11 | 13 |
| 113.92 | DNA Specimen Collection and Documentation<br>PCN 13-46 | 10/15/12<br>12/15/13 | 13 |
| 113.93 | Detoxification | 2/15/14 | 13 |
| 113.94 | Health Care Personnel and Medical Drug Screening | 4/1/14 | 13 |
| 114.02 | Research Projects | 6/1/13 | 5 |
| 115.01 | Standards for Volunteers and Coordination of Community<br>Involvement<br>PCN 13-21 | 6/1/12<br><br>4/15/13 | 22 |
| 117.01 | Administrative Guidelines/Educational Programs | 3/15/13 | 20 |
| 117.02 | Academic Programs | 3/1/14 | 20 |
| 117.03 | Vocational Programs | 6/1/13 | 20 |

CCA 000991



| | | | |
|---|---|---|---|
| 117.04 | Career Management for Success and Release for Success Programs<br>PCN 12-16 | 8/1/11<br>8/15/12 | 21 |
| 117.05 | Title One Programs | 12/15/13 | 20 |
| 117.06 | Inmate Academic/Vocational Education Records<br>PCN 11-47 | 3/1/11<br>11/15/11 | 20 |
| 117.07 | Special Education Programs | 5/1/11 | 20 |
| 118.01 | Religious Programs<br>Religious Property Memo | 2/15/14<br>5/11/11 | 20 |
| 200.00 | PCN 14-14 | 4/1/14 | |
| 202.05 | Notary Commissions | 8/15/12 | 14 |
| 205.02 | Contract Monitoring | 6/15/11 | 1 |
| 206.01 | State Personal Property | 10/15/13 | 2 |
| 208.01 | Trust Fund Accounts | 3/15/14 | 2 |
| 208.03 | Collection of Taxes and Other Amounts Owed by Offenders | 10/1/11 | 2 |
| 208.06 | Money Found on Inmates and/or Institution | 4/1/13 | 2 |
| 208.07 | Reclaiming Confiscated Currency | 1/1/12 | 2 |
| 208.08 | Inmate Telephone Debit System | 12/15/12 | 2 |
| 208.09 | Arts and Crafts Sales | 2/15/14 | 2 |
| 208.10 | Voluntary Participation and Agreement with Wage Deductions – PIE Program | 3/1/14 | 19 |
| 216.01 | Tennessee Public Records Act and Reproduction of Public Records | 11/1/12 | |
| 301.04 | Job Requirements<br>PCN 13-30 | 6/1/13<br>7/1/13 | 3 |
| 305.03 | Employee/Offender Interaction<br>PCN 13-11 | 5/1/11<br>4/15/13 | 3 |
| 401.01 | PCN 14-16 | 4/1/14 | |
| 401.01 | Classification Programs Administration | 4/1/14 | 18 |
| 401.02 | Receiving and Receipting of Inmates | 4/1/14 | 17 |
| 401.03 | Organization of the Classification Committee | 4/1/14 | 18 |
| 401.04 | Initial Classification Process | 4/1/14 | 18 |
| 401.06 | Custody Overrides<br>PCN 11-19 | 11/15/09<br>7/1/11 | 18 |
| 401.08 | Classification Hearing Process | 9/1/10 | 18 |
| 403.01 | Institutional Transfers<br>PCN 12-23 | 6/1/10<br>10/1/12 | 18 |
| 403.01.1 | Transfer of Records | 9/1/10 | 6 |
| 403.02 | Central Transportation System | 7/15/11 | 9 |
| 403.03 | Interstate Transportation | 3/1/12 | 9 |
| 403.05 | Population Reporting<br>PCN 11-18 | 8/15/07<br>7/1/11 | 6 |
| 404.05 | Orientation Program | 9/15/08 | 17 |
| 404.07 | Minimum Custody Placement | 8/15/11 | 18 |
| 404.07.1 | Notification to Committing Jurisdictions | 9/15/08 | 18 |
| 404.09 | Protective Services | 3/15/14 | 10 |

CCA 000992



| 404.10 | Administrative Segregation, Placement and Release | 8/1/10 | 10 |
|---|---|---|---|
| 500.00 | PCN 14-17 | 4/1/14 | |
| 501.01 | Inmate Grievance Procedures<br>PCN 13-38<br>PCN 13-10<br>*INMATE GRIEVANCE HANDBOOK* | 10/1/12<br>9/15/13<br>4/15/13<br>4/2013 | 14 |
| 502.01 | Uniform Disciplinary Procedures<br>PCN 12-9 | 12/1/10<br>6/1/12 | 15 |
| 502.02 | Disciplinary Punishment Guidelines | 6/1/12 | 15 |
| 502.04 | Rule Books for Inmates<br>PCN 11-22 | 5/1/10<br>8/1/11 | 14 |
| 502.05 | Definitions of Disciplinary Offenses | 3/15/14 | 15 |
| 502.06 | Prison Rape Elimination Act (PREA) Implementation and Compliance<br>PCN 14-10 | 4/15/13<br>4/1/14 | 14 |
| 502.06.1 | Prison Rape Elimination Act (PREA) Screening, Classification, Education, and Monitoring<br>PCN 14-7<br>PCN 13-35 | 4/15/13<br>4/1/14<br>8/15/13 | 14 |
| 502.06.2 | Prison Rape Elimination Act (PREA) Allegations, Investigations, and SART Teams<br>PCN 14-8 | 5/1/13<br>4/1/14 | 14 |
| 502.06.3 | Medical, Mental Health, Victim Advocacy, and Community Support Services for PREA Victims<br>PCN 14-9 | 10/1/13<br>4/1/14 | 14 |
| 503.04 | Inmate Councils | 1/1/12 | |
| 503.07 | Inmate Marriages | 2/15/14 | 14 |
| 503.08 | Telephone Privileges | 4/1/14 | 16 |
| 503.11 | Motor Vehicle Operation by Inmates | 11/15/12 | 19 |
| 504.01 | Inmate Personal Property<br>Inmate Personal Property Memo | 12/1/13<br>12/1/13 | 17 |
| 504.02 | Inmate Personal Property Accounting System | 12/1/13 | 17 |
| 504.04 | Inmate Pay | 10/1/13 | 19 |
| 504.05 | Inmate Clothing<br>PCN 13-1 | 1/15/11<br>1/1/13 | 17 |
| 505.01 | Sentence Credits | 6/1/10 | 18 |
| 505.07 | Inmate Programming (Jobs/Classes/Treatment)<br>PCN 12-11<br>PCN 11-32 | 5/1/10<br>7/15/12<br>8/15/11 | 19 |
| 505.08 | Community Service Work Projects | 3/15/12 | 19 |
| 505.09 | Coordination and Cooperation Between TDOC and TRICOR at the Facility Level<br>**(SCCC is required to follow this policy)** | 1/15/11 | 20 |
| 505.10 | Work Release Job Placement | 6/1/11 | 18 |
| 506.01 | Custody and Security Levels | 1/1/12 | 18 |
| 506.06 | Searches | 2/15/14 | 9 |
| 506.07 | Use of Restraint Devices<br>PCN 12-10<br>PCN 11-45 | 7/15/11<br>7/15/12<br>11/1/11 | 9 |
| 506.07.1 | Use of Chemical Agents | 5/15/13 | 9 |
| 506.07.2 | Statewide Tactical Programs | 4/1/14 | 4 |
| 506.07.5 | Use of Specialty Impact Weapons/Munitions | 10/15/09 | 9 |

CCJ-000993



| 506.08 | Use of Force/Use of Weapons for Deadly Force PCN 13-42 | 6/1/13 11/15/13 | 9 |
| 506.10 | Escorted Emergency Visits | 10/1/11 | 9 |
| 506.11 | Population Count PCN 12-25 | 6/1/12 11/1/12 | 9 |
| 506.12 | Escapes | 4/1/10 | 8 |
| 506.13 | Identification of Inmates | 12/15/13 | 17 |
| 506.14 | Housing Assignments PCN 13-12 | 7/15/12 4/15/13 | 17 |
| 506.14.2 | Housing and Programming of Youthful Offenders PCN 13-14 | 10/1/11 4/15/13 | 17 |
| 506.15 | Disposition of Contraband PCN 12-13 | 2/15/12 8/15/12 | 9 |
| 506.16 | Living Conditions for Segregated Inmates PCN 13-15 | 2/15/10 4/15/13 | 10 |
| 506.20 | Emergency Operations Plans | 4/1/14 | 8 |
| 506.21 | Inmate Drug/Alcohol Testing and Sanctions PCN 13-44 | 8/15/12 11/15/13 | 9 |
| 506.25 | Security Threat Group Intelligence | 2/1/11 | 9 |
| 506.26 | Security Threat Group Program Identification, Placement, and Operation | 3/1/08 | 9 |
| 506.26.1 | Security Management Unit Operations | 5/1/13 | 9 |
| 506.27 | Correctional Intelligence Initiative | 7/15/11 | 9 |
| 506.28 | Commissioner Security Alert | 3/1/11 | 5 |
| 507.01 | Visitation | 4/1/14 | 16 |
| 507.01.1 | Non-Contact Visitation | 7/15/11 | 16 |
| 507.02 | Inmate Mail | 6/1/12 | 16 |
| 508.01 | Social Service Programs PCN 11-15 | 11/1/10 6/15/11 | 20 |
| 508.04 | Counseling Services PCN 13-40 | 9/15/13 10/1/13 | 20 |
| 510.01 | Recreation Programs | 6/1/11 | 20 |
| 510.02 | Arts & Crafts Program & the Purchase Of Arts & Crafts Items/Vocational Services | 7/15/11 | 20 |
| 511.01 | Furloughs | 7/15/11 | 21 |
| 511.01.1 | Medical Furloughs | 5/15/13 | 21 |
| 511.03 | Release Procedures | 3/15/14 | 21 |
| 511.04 | Coordination/Cooperation with Board of Probation and Parole | 3/15/14 | 21 |
| 511.05 | Identification for Post Release | 1/1/13 | 21 |
| 512.01 | Inmate Institutional Records PCN 13-9 | 3/1/12 4/15/13 | 6 |
| 512.02 | Sex Offender Registry | 2/15/14 | |
| 513.02 | Transition Center Programming PCN 13-31 | 8/15/12 8/1/13 | 18 |
| 513.04 | Transitional Assessment Plan (TAP) | 2/1/10 | 18 |
| 513.04.1 | Transition Assessment Plan – Behavioral Intervention Goals (TAP-BIG) | 5/1/11 | 18 |
| 513.05 | Inmate Monitoring | 11/15/09 | 18 |

| 513.06 | Level of Service/Case Management Inventory | | |
| | Quality Assurance | 3/1/11 | 18 |
| | PCN 13-32 | 8/15/13 | |
| 513.07 | Substance Use Disorder Programming and Services Delivery | 2/15/14 | 18 |



CCJ-000995

Appendix D.



## Appendix E    Liquidated Damages Schedule

Liquidated damages will be calculated in accordance with the following formula:

$$V \times B \times \$250.00 \text{ where}$$

**V** = Relative value of Service Area                    **B** = Relative value of the Breach

Service Area 1 - Value = 5:   Inmate Classification, Custody and Movement, Access to Courts, Disciplinary Procedures, Inmate Relations, Sentence Reduction Credits, Sentence Computation, Inmate Records:

| Contractor Breach: | B |
|---|---|
| Failure to Staff | 5 |
| Failure to Document | 4 |
| Failure to Report | 3 |
| Failure to Comply with Other Applicable Standards | 5 |

Service Area 2 - Value = 4:   General Administration, Personnel and Training, Security and Control, Use of Force, Health/Medical/Mental Health/Dental, Inmate Work and Education, Transportation, Inmate Drug Testing:

| Contractor Breach: | B |
|---|---|
| Failure to Staff | 5 |
| Failure to Document | 3 |
| Failure to Report | 2 |
| Failure to Comply with Other Applicable Standards | 5 |

Service Area 3 - Value = 3:   Equipment, Supplies and Perishables, Sanitation and Hygiene, Facility Management, Maintenance, and Utilities:

| Contractor Breach: | B |
|---|---|
| Failure to Staff | 4 |
| Failure to Document | 2 |
| Failure to Report | 1 |
| Failure to Comply with Other Applicable Standards | 4 |

Service Area 4 - Value = 2:   Personal Property, Visitation, Food Service, Laundry and Clothing, Recreation, Library, Commissary, Religious Services, Volunteer Services, Released Inmates, Telephone and Correspondence, Inmate Trust Fund, Community Relations, and other requirements of the Standards:

| Contractor Breach: | B |
|---|---|
| Failure to Staff | 4 |
| Failure to Document | 1 |
| Failure to Report | 1 |
| Failure to Comply with Other Applicable Standards | 4 |

CCA 000996

Appendix E.





# CERTIFICATE OF LIABILITY INSURANCE Page 1 of 2

DATE (MM/DD/YYYY)
04/04/2011

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME |
|---|---|
| Willis of Tennessee, Inc. 26 Century Blvd. P. O. Box 305191 Nashville, TN 37230-5191 | PHONE (A/C, No, Ext): 877-945-7378  FAX (A/C, No): 888-467-2378  E-MAIL ADDRESS: certificates@willis.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED Corrections Corporation of America 10 Burton Hills Blvd. Nashville, TN 37215 | INSURER A: Catlin Specialty Insurance Company | 15989-001 |
| | INSURER B: National Union Fire Insurance Company | 19445-002 |
| | INSURER C: Chartis Specialty Insurance Company | 26883-005 |
| | INSURER D: New Hampshire Insurance Company | 23841-001 |
| | INSURER E: Affiliated FM Insurance Company | 10014-001 |
| | INSURER F: | |

## COVERAGES    CERTIFICATE NUMBER: 15766731    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY  X COMMERCIAL GENERAL LIABILITY  CLAIMS-MADE  X  OCCUR | Y | | XGC2015700412 | 4/1/2011 | 4/1/2012 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ 5,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 5,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:  POLICY  PRO-JECT  X  LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 5,000,000 |
| | | | | | | | | $ |
| B | AUTOMOBILE LIABILITY  X  ANY AUTO  ALL OWNED AUTOS  SCHEDULED AUTOS  HIRED AUTOS  NON-OWNED AUTOS | | | 4309455 | 4/1/2011 | 4/1/2012 | COMBINED SINGLE LIMIT (Ea accident) | $ 2,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| C | X  UMBRELLA LIAB  X  OCCUR  EXCESS LIAB  CLAIMS-MADE  DED  X  RETENTION $ 25,000 | | | 8125184 | 4/1/2011 | 4/1/2012 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | | | AGGREGATE | $ 25,000,000 |
| | | | | | | | | $ |
| D | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y / N  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH)  If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | AOS 061967463 | 4/1/2011 | 4/1/2012 | X  WC STATU-TORY LIMITS  OTH-ER | |
| B | | | | CA 061967464 | 4/1/2011 | 4/1/2012 | E.L. EACH ACCIDENT | $ 1,000,000 |
| B | | | | FL 061967465 | 4/1/2011 | 4/1/2012 | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| D | | | | TX 061967466 | 4/1/2011 | 4/1/2012 | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| E | Commercial Property Per Loss/Location | | | GK685 | 4/1/2011 | 4/1/2012 | $250,000,000. Blanket Limit includes Real&PersPropsBusInterrupt $100,000 Deductible | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach Acord 101, Additional Remarks Schedule, if more space is required)
See Attached

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| State of Tennessee, Department of Corrections Rachel Jackson Building 320 6th Ave., N., 4th Fl Nashville, TN 37243-0465 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.  AUTHORIZED REPRESENTATIVE  Wallace Jr. |

Coll:3316772 Tpl:1245545 Cert:15766731   © 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD



# ADDITIONAL REMARKS SCHEDULE

| AGENCY | | NAMED INSURED |
|---|---|---|
| Willis of Tennessee, Inc. | | Corrections Corporation of America<br>10 Burton Hills Blvd.<br>Nashville, TN 37215 |
| **POLICY NUMBER** | | |
| See First Page | | |
| **CARRIER** | **NAIC CODE** | |
| See First Page | | **EFFECTIVE DATE:** See First Page |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: 25       FORM TITLE: CERTIFICATE OF LIABILITY INSURANCE

Workers Compensation - New Jersey
Carrier:   New Hampshire Insurance Company
Policy Number:  051967467
Policy Period: 04/01/2011 - 04/01/2012
Limits:
$1,000,000 EL Each Accident
$1,000,000 EL Disease - Each Employee
$1,000,000 EL Disease - Policy Limit

Property Locations:  Hardeman County, 2520 Union Springs Road, Whiteville, TN 38075; South Central
Correctional, 555 Forest Ave, Clifton, TN 38425; and Whiteville Correctional, 1440 Union Springs
Road, Whiteville, TN 38075.

The Certificate Holder shall be named as an Additional Insured but only with respect to liability
arising out of the Named Insured's operations.