
**EXHIBIT**
Walton, Jon 4-8-21
**4**



## CONTRACT
(fee-for-service contract with a federal or Tennessee local or quasi-governmental entity)

| Begin Date | End Date | Agency Tracking # | Edison Record ID |
|---|---|---|---|
| Service Commencement Date | 5 years following Service Commencement Date | 32904-20240 | 41701 |

| Contractor Legal Entity Name | Edison Vendor ID |
|---|---|
| Trousdale County | 2537 |

| Subrecipient or Vendor | CFDA # | |
|---|---|---|
| ☐ Subrecipient  ☒ Vendor | N/A | |

**Service Caption (one line only)**

Operation of a Prison

**Funding —**

| FY | State | Federal | Interdepartmental | Other | TOTAL Contract Amount |
|---|---|---|---|---|---|
| 16 | $10,344,900.00 | | | | $10,344,900.00 |
| 17 | 55,261,000.00 | | | | 55,261,000.00 |
| 18 | 56,847,900.00 | | | | 56,847,900.00 |
| 19 | 58,264,300.00 | | | | 58,264,300.00 |
| 20 | 59,885,100.00 | | | | 59,885,100.00 |
| 21 | 35,686,900.00 | | | | 35,686,900.00 |
| TOTAL: | $276,290,100.00 | | | | $276,290,100.00 |

American Recovery and Reinvestment Act (ARRA) Funding:   ☐ YES   ☒ NO

| Budget Officer Confirmation: There is a balance in the appropriation from which obligations hereunder are required to be paid that is not already encumbered to pay other obligations. | OCR USE - GU |
|---|---|
| *Lisa C Parks* | |

| Speed Chart (optional) | Account Code (optional) |
|---|---|
| | |



CONTRACT
BETWEEN THE STATE OF TENNESSEE,
DEPARTMENT OF CORRECTION
AND
TROUSDALE COUNTY, TENNESSEE

This Contract, by and between the State of Tennessee, DEPARTMENT OF CORRECTION, hereinafter referred to as the 'State' and TROUSDALE COUNTY, TENNESSEE, hereinafter referred to as the "County" or "Contractor," is for the provision of OPERATING A PRISON, as further defined in the "SCOPE OF SERVICES."

Contractor Edison Registration ID# 2537.

WHEREAS, Trousdale County has the ability to make beds available to the State in a correctional facility, hereinafter referred to as the Trousdale County Correctional Facility (TCCF), or the Facility, and in which Trousdale County may arrange to house and provide programing for Inmates;

WHEREAS, Trousdale County desires to enter into this contract to reserve, keep and maintain up to one hundred percent (100%) of the available beds for the State;

WHEREAS, the State desires to enter into this contract with Trousdale County to house at the Facility, pursuant to the terms of this Contract, felons (hereinafter "Inmates") sentenced to the care, custody and control of the Tennessee Department of Correction (the "Department");

WHEREAS, the State agrees to compensate the County as indicated below for reasonable allowable costs as defined by the contract associated with the housing of Inmates and the operation and management of the Facility; and

WHEREAS, the State is authorized to enter into agreements with local governments to house State prisoners.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the State and Trousdale County hereby agree as follows:

A.  SCOPE OF SERVICES:

A.1.  The Contractor shall provide all service and deliverables as required, described, and detailed herein and shall meet all service and delivery timelines as specified by this Contract.

A.2.  DEFINITIONS:

a.  ACA – means the American Correctional Association.

b.  ACA Standards – means the Standards for Adults Correctional Institutions, Fourth Edition, as the same may be modified, amended, or supplemented now or in the future, published by ACA.

c.  Commissioner – means the Commissioner of the Tennessee Department of Correction.

d.  Contract – means this Document, together with all written attachments, appendices, exhibits, amendments and modifications.

e.  Contract Liaison – means a person or persons appointed and paid by the State to monitor for the State the implementation of this Contract and/or to act as the Commissioner's designee. The Contract Liaison will also be the official liaison between the State and Contractor on matters pertaining to the proper operation, maintenance and management services of the Facility and may perform other functions described in Department policies, or otherwise provided by the Commissioner, in writing.

1

CCIP 000934



f.  Court Orders – means any orders, judgments or opinions issued by a court of competent jurisdiction or any stipulations, agreements or plans entered into in connection with litigation that are applicable to the proper operation, maintenance and management services of the Facility or relate to the care and custody of Inmates of the Facility, whether currently existing or as may be rendered in the future.

g.  Department – means the Tennessee Department of Correction (TDOC).

h.  Document – means this document with attached appendices.

i.  Effective Date of the Contract – means the date the Contract is approved by the appropriate State officials in accordance with applicable Tennessee State laws and regulations.

j.  Facility – means the medium security correctional institution located in Trousdale County, Tennessee, including adjacent real property described in Appendix A known as the Trousdale County Correctional Center.

k.  Indigent Inmates – means Inmates who are deemed indigent as defined by Department Policy found in Appendix C.

l.  Inmate – means any male felony offender sentenced to the Department and assigned to the Facility by the Department.

m.  Inmate Day – means each calendar day or part thereof that an Inmate is located at the Facility, including the first, but not the last day of Incarceration at the Facility.

n.  Local Area – means Trousdale County, the contiguous counties of Macon, Sumner, Wilson, Smith and Jackson and the counties of Davidson, Williamson and Rutherford in Tennessee.

o.  Per Diem Rate – means cost per Inmate, per Inmate Day.

p.  Partial Takeover – means the State's discretionary assumption of a portion of the services to be rendered by the Contractor under this Contract not resulting from Contractor's failure to perform.

q.  Policy Directive (aka Policy/Policies) – means formal statement of the State's correctional policy on a given subject. All Policy Directives shall not conflict with administrative rules or statutes or applicable American Correctional Association Standards.

r.  PREA – Federal Prison Rape Elimination Act

s.  Service Commencement Date – means the date that is 18 months after the Effective Date of the Contract.

t.  Standards – means the standards to which Contractor's performance under this Contract must conform pursuant to Section A.3.b.11 of the Contract.

u.  State – means the State of Tennessee, including but not limited to the Department.

v.  TOMIS (eTOMIS) – means the Tennessee Offender Management Information System, a mainframe computer system that automates the management of information about offenders under the supervision of the Tennessee Department of Correction.  TOMIS captures all offender related information at the point of origin to provide accurate and timely information to those who use it.

w.  TRICOR – means the Tennessee Rehabilitative Initiative in Correction.

2

CCC 000935



A.3.     DESCRIPTION OF SERVICES:

a.     MAINTENANCE

1.     Maintenance

Trousdale County shall implement a plan, including a preventive maintenance program, to maintain the Facility and all property contained therein.

Trousdale County shall provide for maintenance, repair, and replacement for the Facility and shall keep said Facility in good repair, working order and condition, subject to normal wear and tear. Trousdale County shall be responsible for all expenses incurred in said maintenance, repair and replacement.

2.     Utilities and Taxes

Trousdale County shall pay all taxes associated with this Contract and utility costs of the Facility, including, but not limited to, water, gas, sewage, waste and trash removal, and electric.

3.     Property Insurance

Trousdale County shall obtain and keep in force casualty insurance on the Facility and on all property to be located at the Facility.

b.     CONTRACT MONITORING

1.     Monitoring and Evaluation

The State has the right and authority under this Contract to monitor Trousdale County's performance hereunder. Such monitoring shall include but not be limited to observing and reporting on the day-to-day operational performance of Trousdale County regarding compliance with all terms and conditions of this Contract. Such monitoring or failure to monitor shall not relieve Trousdale County of its responsibility, obligation and liability under this Contract.

The State, shall develop reporting requirements for Trousdale County that shall include but not be limited to weekly, monthly, and/or quarterly reports on the following subjects: Inmate jobs and education, incident reports, disciplinary reports, Inmate grievances, staff turnover and vacancies, staff training, employee grievances, employee discipline, health care access, reclassifications, transfers, furloughs, releases, media contacts, lawsuits, volunteers, drug audits, cell searches, visitation, and maintenance. Also, an emergency reporting process shall be established that shall address, at a minimum, segregation of Inmates, use of force, and incidents which involve substantial risk to property, life, or institutional security.

Trousdale County agrees to cooperate with the State, including any representatives of the State, in the Contract monitoring effort of the State through such means as may be requested from time to time, including, but not limited to the reporting of information as requested. The State and Trousdale County agree that the information collecting and monitoring processes described in this Contract shall be in accordance with the policies and procedures of the Tennessee Department of Correction.

Trousdale County shall maintain for the State data in accordance with the Standards to include use of and data entry on TOMIS or any replacement system designated by the State..

3

CCP 000936



2.   Liaison

The State shall provide Liaison(s) to be located at the Facility. The Liaison(s) will be an employee(s) of the Department and will be paid by the Department. The Contractor, however, shall reimburse the State for the cost incurred by the State, including salary and benefits, for up to two full-time on-site Liaisons. Trousdale County shall have no control over the activities of the Liaison(s), supervisory or otherwise.

The Liaison(s) shall be the representative of the State at the Facility to monitor Trousdale County's compliance with the Contract. The Commissioner may also appoint the Liaison to act as his designee. The Liaison may also have functions described in Department policies. The Liaison may have other functions as provided by the Commissioner in writing.

Unless otherwise specified by the Commissioner, in writing, the Liaison(s) shall be the designated recipient of all information required of Trousdale County. Trousdale County shall be notified of the identity of any Contract Liaison, in writing, signed by the Commissioner.

The individual(s) acting as Liaison(s) may be changed during the term of the Contract, at the discretion of the Commissioner.

The State hereby expressly disclaims that the Liaison or any other state employee or official has any authority, apparent or otherwise, to bind the State under this Contract unless expressly stated herein; provided, however, that the Commissioner shall have the same authority granted any state employee under this Contract and the Commissioner retains authority over the Inmates which may not be delegated at law.

In addition to the Liaison(s) employed by the Department, the State may monitor the Contract through other representatives of State as it deems appropriate. Such representative(s) shall have the same right of access to information, the facility, Inmates, and Trousdale County's employees and agents as set out herein for Liaison(s).

3.   Multiple Liaisons

In the event that the Commissioner designates more than one individual to act as Liaison, the State shall provide Trousdale County with a description of the Liaisons' levels of authority in writing executed by the Commissioner.

In the event Trousdale County believes it is receiving conflicting instructions from the Liaison(s) or that the Liaison is acting beyond its level of authority under the Contract or as provided in this Contract, Trousdale County shall notify the Commissioner in writing. The written response of the Commissioner shall be final.

4.   Office Space

Trousdale County shall provide, at its expense, adequate office space and local telephone service for the Liaison(s) and the staff of the Liaison(s), which may include a secretary, in close proximity to other administrative offices.

Trousdale County also shall provide the Liaison(s) and staff with access to all major office equipment, at Trousdale County's expense.

Trousdale County shall not provide the Liaison(s) or Liaison(s)' staff with gifts or any form of compensation at any time.

4

CCJD 000937



5. <u>Liaison Access</u>

The Liaison(s) shall have immediate, complete, and unrestricted access to all parts of the Facility at any and all times.

The Liaison(s) shall have immediate, complete, and unrestricted access to all documents in any way pertaining to the obligations of Trousdale County under this Contract, including but not limited to Facility records, Inmate files, personnel files, and financial records. In the event that any such document is not located on the facility site, upon request Trousdale County agrees to provide the Liaison with a copy of the document within seventy-two (72) hours of the request.

The Liaison(s) shall have immediate, complete and unrestricted access to all Inmates and access at a reasonable time and place to all employees of Trousdale County, including, but not limited to, the warden.

The Liaison(s) shall have immediate, complete, and unrestricted access to all meetings and hearings which in any way pertain to the obligations of Trousdale County under this Contract. Trousdale County agrees to notify the Liaison of the time, place, and agenda at least twenty-four (24) hours in advance of any such meeting or hearing, unless it is not reasonable to provide said notice in which case the Liaison shall be notified simultaneously with the other participants; provided, however, the Liaison may not have access to meetings covered by the attorney-client privilege.

6. <u>Meetings with Liaison</u>

Trousdale County agrees that the Warden shall meet with the Liaison to report on/discuss the operations of the Facility and to respond to any questions raised by the Liaison.

7. <u>Requests for Information</u>

Trousdale County shall provide the Liaison(s) with written responses to any information requested by the Liaison(s) or Commissioner concerning Trousdale County's performance of this Contract within the period prescribed in the State's request.

Trousdale County shall certify that said information is accurate and if Trousdale County is unable to so certify then Trousdale County shall state the reason therefor.

Upon written request by the Liaison(s) or Commissioner, Trousdale County shall compile information in the requested form and provide documentation substantiating said information.

Documents related in any way to the Trousdale County's performance under the Contract shall be retained for the periods of time required for similar documents created or used by the Department, as described in Department policy and retention schedules.

8. <u>State Inspection</u>

The Commissioner or his/her designee(s) shall have the same access as described in Section A.3.b.5, Liaison Access, which access shall include but not be limited to persons designated by the Commissioner to inspect or audit the Facility and/or Trousdale County's performance under this Contract. Trousdale

5

CCID 000938



County is also obligated to provide appropriate access to authorized inspection and regulatory agencies. Trousdale County shall exercise due diligence for the safety and welfare of the Liaison(s), any other State employee, and any visitor at the Facility.

9.    Immediate Compliance

    a.    If the Commissioner determines that Trousdale County is not operating in compliance with a term or condition of this Contract which in the opinion of the Commissioner adversely affects the security of the Facility or which may present a hazard to the safety or health of inmates or other individuals, Trousdale County shall be notified in writing (or verbally if it is believed an emergency situation exists). The notice shall direct Trousdale County to immediately correct the noncompliance.

    b.    Trousdale County shall immediately notify the Commissioner of the proposed corrective action. If the Commissioner does not object to the proposed corrective action, Trousdale County shall immediately implement said corrective action.

    c.    If the Commissioner disagrees with the proposed corrective action or if Trousdale County fails to notify the Commissioner immediately of its proposed corrective action, the Department shall specify corrective action which Trousdale County shall immediately implement.

    d.    Notwithstanding any provision contained herein to the contrary, in such a circumstance, Trousdale County shall immediately implement the corrective action specified by the Department before any appeal is taken.

    e.    In the event Trousdale County disagrees with the determination of noncompliance or designated corrective action, a request for reconsideration may be taken to the Commissioner. In no event shall the corrective action be delayed pending appeal.

    f.    Upon examination, if the Commissioner determines in his or her sole discretion that noncompliance did not exist or that the corrective action required by the Department was excessive, the Commissioner shall authorize payment to Trousdale County of the actual expense incurred in taking said corrective action or excessive corrective action upon receipt of appropriate documentation substantiating said expense from Trousdale County. All directions and actions by the Commissioner and actions by the Contractor shall be recorded and reported in writing as soon as practical and filed with the TDOC Office of Compliance.

10.    Incident Reports

Trousdale County shall implement Departmental policy regarding the reporting of incidents.

11.    Operation of Facility

    A.    Obligations of Trousdale County. Trousdale County will perform all acts and services and comply with all duties and promises as described and in conformance with the following:

        1.    All applicable constitutional standards, federal, state and local laws and rules and regulations, court decisions, and Court

6

CCJP 000939



Orders, consent agreements, whether currently existing or as may be enacted or rendered in the future;

2. All existing State and Departmental policies specified in Appendix C, or, in the discretion of the State, other policies approved by the Department which may not be identical to State or Department policies. Current TDOC policies applicable to this contract are available to Trousdale County;

3. Such other policies as the Department may make applicable to Trousdale County in writing during the term of this Contract as same may be amended during the term of this Contract. Any revision in applicable TDOC policy will be sent to Trousdale County at the e-mail address provided in E.2, Special Terms and Conditions of this contract. Any change in the scope of services as a result of this would be compensated by an adjustment either upward or downward in accordance with Section C.11, Compensation Adjustment for Change of Service;

4. ACA Standards; and

5. The terms of this Contract.

The standards articulated in (1) through (5) hereinafter collectively shall be referred to as "Standards."

B. Obligations of the State. The State agrees to perform its obligations as described herein.

C. Conflicts.

1. In the event of an irreconcilable conflict among the Standards, Trousdale County is required to follow the Standard as determined by the Liaison(s).

2. In the event of disagreement between Trousdale County and the Liaison(s) regarding which item provides the standard of service, the Commissioner or his designee shall make the final, binding decision.

D. Policy and Procedures Manual and Operations Plan. No less than 60 days before the Service Commencement Date, Trousdale County shall provide the State with a written Policy and Procedures Manual which shall contain policies and procedures for all services to be rendered by Trousdale County in accordance with the Standards. On or before the Service Commencement Date, Trousdale County shall also submit an Operations Plan relating to all areas covered by the contract, subject to the written approval of the State, including but not limited to a staffing pattern, security and post assignments, post orders for all security positions by post and shift, and designation of critical posts. Said manual and plan shall establish the policies and procedures Trousdale County shall follow in all areas covered by this Contract. Said manual and plan shall be subject to the written approval of the State and shall not be altered, amended, modified, revised or supplemented without the prior written approval by the State. Trousdale County shall implement the provisions of said manual and plan throughout the term of this Contract. The State may require the Contractor to revise these documents, including policies, procedures, post orders, job descriptions, staffing patterns, shift rosters, etc., as required. A designee of the

7

CCI 000940



commissioner shall review and approve any applicable policy or procedure annually.

E.  Assignment and Transfer of Inmates.

    1.  Inmates will be assigned to the Facility in accordance with Departmental policies. Trousdale County may not refuse to accept any inmates proposed to be assigned to the Facility, but if Trousdale County believes that an Inmate has been erroneously assigned to the Facility or is presenting a discipline problem sufficient to require higher custody status which cannot be provided adequately or safely in the Facility, it may request his transfer in writing, through the Liaison(s), citing the appropriate sections of Departmental policy. Any decision by the Department on such request shall be final.

    2.  Trousdale County's requests for reassignment of Inmates from the Facility to another institution for medical, psychiatric, disciplinary or administrative reasons or for Inmate furloughs will be made in writing through the Liaison(s) and evaluated by the Department. Any decision by the Department on such requests shall be final.

    3.  The State may transfer Inmates from the Facility with said decision to transfer being within the State's sole discretion.

F.  Safety and Emergency Procedures.

    1.  No less than sixty (60) days prior to the Service Commencement Date, Trousdale County shall submit to the State one hard copy and one electronic version of the following: (1) riot and disturbance control and contingency plans, and (2) disaster preparedness plans. Trousdale County shall cooperate with the State in preparing contingent Inmate relocation plans.

    2.  Trousdale County shall develop and submit to the State on or before the Service Commencement Date, written guidelines for the prevention of fire, safety inspections, maintenance of fire alarm and smoke detection/evacuation systems, fire evacuation drills, evacuation plans, a procedure to report job-related injuries, and provisions for testing equipment to maintain essential lighting, air, noise, power and communications. All such procedures will comply with Tennessee Occupational Safety and Health Act (TOSHA), T.C.A. Title 50, Chapter 3, National Fire Protection Association (NFPA) life safety codes/standards and Department Policies 112.03, 112.04, 112.05, and 112.09

    3.  Trousdale County shall develop and submit to the State plans for the search and apprehension of any escaped Inmate on or before the Service Commencement Date. Said plans shall address Trousdale County searching for any escapee off the grounds of the Facility and coordination with local and State authorities. Trousdale County shall implement said plans regarding any search off the grounds of the Facility only if so requested by the Commissioner.

    4.  During the term of this Contract, Trousdale County shall develop and submit to the State in writing any other emergency

8

CCD 000941



and control plans as may be requested in writing by the Department within thirty (30) days of receipt of said request.

5. All plans required under this Section must be submitted to the State and approved by the State in writing. Trousdale County agrees to make any revisions, deletions or additions requested by the Commissioner or his designee. Upon written approval by the State, Trousdale County shall begin immediate implementation of the plans or in the case of contingency plans, certify that Trousdale County has the ability and shall implement the plan if the contingency occurs. Said plans may not be revised, amended, altered, or supplemented without prior written consent of the State.

6. All plans must be in conformance with the Standards.

G. Medical and Mental Health Services.

1. Trousdale County shall provide, in compliance with the Standards, all physical health services, mental health services and dental services as specified in this Section and in the Standards, utilizing the TDOC Health Services medical records forms and mental health service forms, as said forms may be revised or supplemented during the term of this Contract.

All medical services provided must be deemed medically necessary and must be approved through the TDOC Utilization Management process under the supervision of the TDOC Medical Director or designee.

a. Physician Coverage. The Contractor shall provide on-site physician coverage as specified in the approved institutional staffing plan and provide supervision of mid-level providers and consultation to nursing staff. Physician coverage shall include primary care services for inmates in mental health units. The Contractor shall provide an on-call physician to ensure 24-hour, seven days per week, emergency coverage with telephone response being required within 30 minutes of a notification call from the facility. The institutional physician is responsible and is physician of record for all inmates assigned to the Institution and retains that responsibility until the Inmate care is officially transferred to another licensed clinician. A physician shall determine whether his/her presence is required, give verbal orders and a treatment plan to nursing staff. Physician assistants/Nurse practitioners will provide on-site treatments for medical problems or injuries requiring sutures and minor surgical procedures as required on a 24-hour basis. On-site procedures, such as suturing, must be performed within 6 hours.

b. Nursing Coverage. The Contractor shall provide on-site 24-hours per day/ seven days/ week (24/7) nursing coverage as specified in the approved institutional manual.

c. Nursing Protocols. The Contractor is required to submit nursing protocols to the State for written approval within

9

CCI ID 000942



the first 30 days of the contract start date and annually thereafter. Such nursing protocols shall be applicable for all nursing staff including state employees and contractors. Any changes to said protocols shall require written approval by the TDOC Director of Nursing or Designee.

d.      <u>Medication Administration</u>. In accordance with the Contractor's staffing responsibilities, the Contractor's nurses shall administer all controlled, high abuse potential drugs and psychotropic medications to inmates.

e.      Contractor will comply with TDOC policy 113.70, Management of Pharmaceuticals, which requires accountability of controlled substances consisting of medication reconciliation at the change of each shift with signature of outgoing and incoming clinical staff.

f.      <u>Prosthetics and Durable Medical Equipment</u>. The Contractor shall be responsible for all prosthetics and durable medical equipment ordered by its physicians and specialists, including braces, special shoes, glasses, hearing aids, orthopedic devices, etc. Health care prosthetic devices and durable medical equipment shall be provided for inmates when deemed necessary by the attending health care provider to correct, assist, or improve a significant body impairment or debilitating condition, in accordance with TDOC policy.

g.      <u>Mid-level Supervision</u>. The contractor's physician staff shall supervise all mid-level providers in accordance with the Tennessee Health Related Boards Rules and Regulations. Mid-level supervision must be documented in the medical chart.

2.      At a minimum, the institution will operate as a Mental Health Level II and V facility as defined in Policy 113.87. These services must meet the Standards, and will be monitored pursuant to Section A.3.

3.      The Contractor shall ensure that all physical, mental, and dental health care is provided by appropriately licensed and/or qualified health care professionals as defined in TDOC policies. Candidates for the Medical Director, Physicians, and Nurse Practitioners positions shall be forwarded for the review of the TDOC Medical Director.

4.      The physical health, mental health, and dental services shall include but not be limited to:

a.      24 hour-a-day, 7 day-a-week emergency physical and mental health care;

b.      initial health screening;

c.      intake history and physical examinations

d.      health appraisal examination;

10

CCI-D 000943



e. daily triaging of complaints;

f daily sick call per the Standards;

g. infirmary operation with at least supervision by an RN twenty-four hours per day, seven days per week;

h. use of the Department health and programmatic records;

i. specialty care and/or mental health programs and services for, but not limited to, Inmates with chronic diseases, terminal illnesses or requiring convalescent care;

j. psychology services (routine), psychiatry services (routine), sheltered living (ancillary), and substance abuse services;

k. Specialty physician care; (The State may, in its sole discretion, allow the Contractor to use the health services at the Lois M. DeBerry Special Needs Facility (DSNF), provided, however, that the Contractor shall enter into an agreement for usage and payment for said services with the State's health services contractor.)

l. ancillary services – radiology, laboratory, etc.;

m. dental services;

n. pharmaceutical services and supplies;

o. optometry services (provided on site);

p. health education;

q. inpatient hospitalization services;

r. outpatient services;

s. immunizations,

1. Influenza: H1N1 and seasonal influenza vaccines

2. Pneumococcal vaccine

3. Hepatitis B provided to high risk patients

4. Hepatitis A when clinically indicated

5. Hepatitis vaccination will be provided to inmate workers where there is a high risk of exposure

6. Tetanus vaccination when clinically indicated

11

CCI 000944



5. Infirmary Bed Use: Every consideration will be given to use of infirmary beds for the purpose of managing inmates in a safe manner with short term medical needs to include, but not limited to:

   a. Controlled environment evaluations.

   b. Medical conditions which prevent the inmate from managing activities in general population but do not warrant a transfer to a Regional Sub-Acute Center.

   c. Step down post hospitalization care not requiring the level of care provided at Regional Sub-Acute Centers.

   d. Conditions in which IV fluid therapy for up to a two week period which may include antibiotic administration should be provided at those institutions with dedicated infirmary beds (see below).

   f. Post Emergency Room evaluation before release into general population if clinically indicated.

   g. Infirmary beds must be able to accommodate the medical and mobility needs of the inmate or a medical transfer to a higher level of care may be indicated.

   h. Routine wound care.

   i. Intravenous therapy, Intramuscular therapy or subcutaneous therapy administration of fluids and/or medications.

   k. Oxygen and/or Continuous Positive Airway Pressure (CPAP).

   l. Wound care (including vacuum-assisted wound closure) and dressing changes.

   m. Enteral nutrition.

   n. Burn, cast and ostomy care.

6. Chronic Care Clinics. The Contractor shall develop and implement a program for the care of inmates with chronic and infectious diseases, in accordance with TDOC policy #113.32. The chronic care provided shall entail the development of an individual treatment plan by the responsible physician specifying instructions for diet, medication, diagnostic testing, self-care instructions, disease education and follow-up. The Contractor is responsible for the costs associated with dietary supplements ordered by the attending physician. Chronic care patients shall be provided a review by a mid-level provider every three months and by a physician or mid-level provider, as determined by clinical indications but no less than every six months. Chronic care conditions shall include but not be limited to chronic respiratory diseases, cardio-vascular disease to include hypertension, diabetes, neurological disorders to include epilepsy, inmates with physical impairments that impact

12

CCID 000945



on their ability to function in a correction environment, geriatric care, and terminally ill, and infectious diseases to include HIV, Hepatitis C, and Cardiac Disease. In the event that a specific disorder is identified that impacts the TDOC inmate population, TDOC reserves the right to require an addition to the list of dedicated disease specific clinics.

7. Radiology. The Contractor shall provide all radiology services through subcontracting or provide radiology services at each institution under this contract by a certified technician and interpretation by a board certified radiologist. It is the intent of TDOC to use on-site radiology services when available to minimize offsite radiology/diagnostic services. TDOC requires the contractor to utilize mobile services, targeting mammography, ultra sound, echocardiogram, non-urgent CT, MRI, and PET scans when on-site services are not available at any facility. It is preferred that the subcontractor has and maintains accreditation by national accreditation entities such as American Institute of Ultrasound in Medicine for services provided when accreditation is available These services shall be available outside of normal business hours to determine the need to travel to obtain emergency services beyond those that can be provided at the institution. All reports will be typed and delivered in a timely manner to the correctional facility clinical staff as approved by the TDOC Medical Director. The Contractor is responsible for the provision of all other off-site diagnostic testing required. The Contractor shall provide all on-site fluoroscopy and special studies as capabilities allow. Radiology studies will be provided with digital imagery allowing access by designated providers in TDOC facilities and the TDOC Medical Director, direct access to view the films via PC's. Typed reports for routine studies shall be provided to the facility as soon as they are read or no later than 48 hours after the reading. The radiologist shall call the facility within 24 hours with any report requiring immediate intervention. Hard copy typed reports and films (where digital technology is not available) shall be received within 72-hours of completion. The Contractor is responsible for the maintenance, filing and purging of all xray films. The Contractor is responsible for providing all supplies required to support xray services.

8. Laboratory Services. The Contractor is responsible for the procurement and processing of all medical laboratory services including supplies, forms, and tests in accordance with TDOC policy. Laboratory specimens will be processed off-site for procedures/tests that are not waived by the Clinical Laboratory Improvement Amendments (CLIA). The Contractor shall ensure that the off-site laboratory has a quality assurance plan and is a CLIA certified laboratory. The Contractor shall be responsible for obtaining and maintaining necessary CLIA waivers at all sites.

9. Electrocardiography (EKG) Services. The Contractor shall provide EKG services on-site at the facility. Contractor shall either provide EKG machines at the facility or subcontract for these services. The Contractor shall be responsible for supplies and repair costs for TDOC equipment. It is preferable that EKG machines have transmission capabilities with 24 hour/day

13



cardiologist reading services available at the request of institutional staff.

10. The Contractor shall be responsible for all medication costs.

    a. The Contractor shall submit to the State's medical director a monthly pharmaceutical utilization report denoting, but not limited to, the following: the prescriber, inmate number, type of medication, and associated cost.

    b. The Contractor shall be responsible for securing the services of a pharmaceutical company that provides a delivery system that assures that medications are properly stored, packaged, and administered and provides for accountability of controlled substances.

    c. The pharmaceutical company of choice shall possess the capability of producing drug information forms to be distributed on site by the prescribing psychiatrist or certified nurse specialist (CNS). The drug information form shall be drug specific and include a patient signature line and date.

    d. The Contractor shall have in place a non-formulary request process. The Contractor shall provide the State with a copy of the Contractor's formulary as requested. Medications will be ordered in accordance with the Drug Formulary approved by the TDOC Medical Director and in accordance with TDOC policies. The Contractor's State Wide Medical Director will participate on the State wide Pharmacy and Therapeutics Committee and will communicate findings of the committee to contracted providers.

    e. The contractor shall follow TDOC Clinical Guidelines for chronic disease management, nursing protocols, psychiatric disorders, vaccinations, and immunizations. Where applicable, medications specified in these guidelines shall be provided as formulary medications.

    f. The contractor shall assist with the Quarterly TDOC pharmacy and Therapeutic Committee meetings in accordance to TDOC policy. The contractor's clinical pharmacologist or the contractor's Chief Medical Officer should participate in the committee meetings and monitor pharmaceutics outcome measures. The clinical pharmacologist is responsible for providing the requested statistical reports in preparation with the meetings.

    g. The contractor shall develop with the State a medication error review process to include electronic-tracing, reporting and trending of the dispensing and administration errors. A monthly electronic report shall be provided to the state detailing the month-to-date and year-to-date medication errors by facility.

14



11. <u>Quality Improvement</u>. The Contractor shall comply with the State's quality improvement initiatives in accordance with TDOC policy 113.09.

    a. <u>Committees</u>. The Contractor shall attend all committee meeting as indicated below

        (1) <u>State Continuous Quality Improvement (CQI) Committee</u>. The TDOC Statewide Associate Medical Director and the TDOC Behavioral Health Director shall be responsible for co-chairing the State Continuous Quality Improvement (CQI) Committee. Statewide quality improvement meetings are to be held quarterly or more frequently if necessary. At a minimum the contractor's Statewide Administrator, Statewide Medical Director, Statewide Infectious Disease Management Coordinator, and Statewide CQI Coordinator shall attend this meeting.

        (2) <u>Infectious Disease Committee</u>. The Contractor shall assist with maintaining an Infectious Disease Committee consisting of the TDOC Medical Director, Statewide Director of Nursing, Statewide Infectious Disease Management Coordinator, the Contactor's Statewide Medical Director, and others as designated. The purpose of this committee is to establish an effective infectious disease management program which will meet the needs of inmates with HIV/AIDS, TB, MRSA, Hepatitis, and other infectious diseases. The committee will also be responsible for establishing educational and training programs which are designed to enhance the knowledge of inmates and staff and thus prevent the spread of infectious diseases. These programs are to be consistent with acceptable medical standards and the State's policy for communicable and infectious disease.

        (3) <u>Pharmacy & Therapeutics Committee (P&T)</u>. The contractor will work in cooperation the TDOC Medical Director to coordinate a statewide P&T Committee. The TDOC Medical Director will chair this committee which will meet quarterly or more often if necessary. The purpose of the Committee is: the review of the formulary and any recommended additions or deletion as recommended by the Contractor or TDOC. In addition any information related to specific medications such as a change in

15

CCID 000948



indications, drug-drug interactions, or warnings will be discussed. The Contractor will identify a clinical pharmacologist who will attend meetings and be responsible for discussing reports related to Inmates on prescriptions, listing the most costly medications, as well as comparisons to other states based on other contracts of the Contractor or research on medication costs for other DOCs.

(4)    <u>Peer Review Committee</u>. The TDOC Medical Director will chair the Physician Peer Review Committee for the purpose of reviewing the credentials and clinical performance of Physicians (to include Psychiatrists), Dentists and at the discretion of the Committee; Physician Assistants and Advance Practice Nurses. The Contractor's membership on the Committee will consist of the Contract Medical Director and the Contractor's Chief Dental Officer. This Committee will meet bimonthly or more often if a situation may arise that indicates a need to meet. A meeting may be requested through the Chair by any member.

(5)    <u>Peer Review</u>. Annually, the work of all physicians and dentists shall be reviewed jointly by the Contractor and appropriate TDOC Medical Director. In an effort to assure clinical performance enhancement, the Contractor shall have a peer review program that Is approved, in writing, by the TDOC Medical Director within sixty (60) days of contract execution and annually thereafter. The program must either meet or exceed the State's policy and CQI Charter for peer review. The State Medical Director shall be notified of all peer review actions and the results of the peer review process shall be shared with the State's Peer Review Chairperson. The State shall review the peer review reports and approve the Contactor's plan of corrective action for peer review deficiencies.

(6)    <u>Morbidity and Mortality Committee</u>. The TDOC Medical Director shall be responsible for chairing the State Morbidity and Mortality Review Committee. Statewide Morbidity and Mortality Committee meetings are to be held monthly or more frequently if necessary. At a minimum the Contractor's Statewide Administrator, Statewide Medical Director, and attending physician shall attend this meeting.

b.    <u>Reports</u>. The Contractor shall be responsible for preparing minutes of all committee meetings as designated by the State. The Contractor shall also be responsible for ensuring that all necessary data and reports are completed and reported to the State within

16

CCID 000949



the designated timeframes in an effort to identify areas of opportunity for improvement in health care operations.

In accordance with the TDOC's policy, the Contractor shall submit a monthly CQI report to the TDOC CQI coordinator in a written or electronic form acceptable to the State, by the fifteenth (15th) day of each month.

At least annually, the Contractor shall provide the institution with documentation that peer review has been completed for each physician, dentist and midlevel provider on staff at that institution

13. The Contractor shall be responsible for security services for Inpatient care during the confinement period for which the Contractor is financially responsible, other than at a Departmental facility. Contractor shall provide security at an off-site medical facility after the Department assumes responsibility, if requested to do so by the Department. In such instances, the State shall reimburse the Contractor for the actual cost of providing such security services.

For the purpose of utilization management, the Contractor shall notify in writing the State's medical services contractor of all hospital admissions within 6 hours of the inpatient admission to the TDOC medical contractor and reported to the TDOC Clinical Ombudsman as a sentinel event. Failure to report will result in the Contractor bearing financial responsibility for the total cost of the hospitalization.

14. <u>Mental Health</u>. The Contractor shall provide routine and ancillary services as defined by Policy 113.80. All programming curriculum shall be annually approved in written form by the institutional psychologist. The Contractor shall develop and have in place program outcome measures that shall be reviewed by the State's Director of Behavioral Health Services and/or designee. The State reserves the right to modify the curriculum and recommend reasonable program delivery change if it is determined that participants are not benefiting.

15. <u>Sex Offender</u>. The State shall, when applicable, provide specialized training for sexual offender treatment programs. The Contractor shall follow the program philosophy and design standards as presented by the State.

16. <u>Substance Abuse</u>. The Contractor shall provide substance abuse treatment services that emphasize an evidence-based program curriculum in a therapeutic community setting and outpatient setting. All treatment services shall adhere to TDOC policy 513.07 (Substance Abuse Programming and Services Delivery). All program curricula must be approved by TDOC before use.

17. Notwithstanding any provision contained herein to the contrary, the Contractor shall be responsible for the cost of providing all health, medical, mental health, and dental services, including but not limited to inpatient hospitalization, any surgery and specialty services, medications, specialty clinics, medically

17

CCI-000950



related transportation and the costs associated with the provision of services described in this section unless specifically excluded or limited below under Exclusions And Limitations.

18.    Exclusions and Limitations.

    a.    If the inmate is hospitalized, the Contractor shall not be responsible for Inpatient-Hospital Costs which exceed FOUR THOUSAND DOLLARS ($4,000.00) per Inmate per admission. The Department's Medical Contractor shall be responsible for utilization management of all hospital cases. Accordingly, once the inmate has been determined medically stable, the Department's Medical Contractor shall decide if a hospital transfer is appropriate to manage the remainder of the hospital admission. In accordance with the Standards, the Contractor may request than an Inmate be either temporarily or permanently transferred to DeBerry Special Needs Facility (DSNF) or any other Regional Sub-Acute Center in Tennessee. Upon written approval by the TDOC Medical Director, the Inmate will be transferred to DSNF or any other Regional Sub-Acute Center for evaluation and/or treatment. If an Inmate Is housed and treated at a TDOC Regional /Sub-Acute Center, the Department may assume financial responsibility for expenses incurred within its facility. Provided, however, notwithstanding any provision contained herein to the contrary, any Inmate medical expenses resulting from the negligence or willful wrongdoing of the Contractor, its officers, agents or employees, shall be fully paid for by the Contractor.

    b.    Final decision regarding financial responsibility rests with the TDOC Commissioner.

    c.    The percentage of inmates with Hepatitis C, HIV/AIDS and end stage chronic care needs housed at the Facility shall not exceed the average percentage of such inmates within the State's system plus 3%..

H.    Food Service.

1.    Contractor will provide food service for the Inmates and volunteers in accordance with the Standards, including but not limited to the provision of special and religious diets and three (3) meals for each Inmate served at regular times during each twenty-four (24) hour period with no more than fourteen (14) hours between the evening meal and breakfast.

2.    The Contractor shall not be required to follow the Department's master menu, but the food service area must comply with State health regulations and the Standards. At a minimum the amount of daily calories must conform to the recommended dietary allowances published by the National Academy of Sciences. Menus shall be approved by TDOC dietician annually. Menus and dietary allowances shall be filed with Office of Compliance.

18

CCI-000951



3. The Contractor is strongly encouraged to purchase food products, milk and other beverage products offered from TRICOR.

I.  Laundry, Inmate Clothing and Hygiene.

1. Contractor will provide complete Inmate laundry services, Inmate clothing and bed linen (including pillows, pillow cases, sheets, blankets), and towels in accordance with the Standards.

2. Contractor shall ensure the issue of clean, usable bed linen, towels, shoes and clothing to all Inmates.

3. Contractor shall provide Indigent Inmates with soap, toothbrush, toothpaste, comb, deodorant, and all other necessary hygiene supplies.

4. Pursuant to *Tennessee Code Annotated* § 41-21-234(a) all Inmates shall be clothed in the TDOC uniforms (shirts, pants and jackets) manufactured by TRICOR and the Contractor shall be responsible for providing the clothing. This is to be provided for in the per diem rate which the Contractor charges TDOC.

5. Inmates transferred from TCCF to another institution will be sent with the same amount of State uniform clothing required by policy. Receiving institutions who note insufficient clothing in the property of Inmates received from TCCF will notify the TDOC Liaisons' office at TCCF of the shortage.

J.  Recreation.

1. Consistent with the Standards, the Contractor shall provide facilities, equipment and supplies for indoor and outdoor recreational and leisure time programs for the Inmate population.

2. Contractor shall provide for a comprehensive recreational program supervised by a qualified person and shall set forth the number of hours of outdoor recreation available to each Inmate. On or before the Service Commencement Date, Contractor shall submit to the Department one (1) hard copy and one (1) electronic version of the written policy and procedure which shall provide the specifics of said program and shall be subject to the prior written approval of the State.

K.  Transportation.

1. The Contractor will be responsible for the following Inmate transportation:

    a. All transportation between the Facility and any TDOC facility located in Davidson County, Tennessee, designated by the State to connect with central transportation system vehicles, to include transportation of Inmates initially assigned to the Facility and other Inmates being transferred to and from the Facility for various reasons.

    b. All transportation within the Local Area; and

19

CCF 000952



    c.    Transportation outside the Local Area, as necessary, when the Department's central transportation is unavailable or time restricts inter- institutional transfer, including but not limited to administrative transfers initiated by the Warden and approved by the Commissioner's designee, and missed or late notification of court dates.

2.    Contractor is responsible for all inmate transportation costs that are medical related.

3.    The Contractor shall provide security in conformance with the Standards while transporting inmates.

4.    The Department will be responsible for all other inmate transportation via connection at a TDOC facility located in Davidson County for Department-mandated moves of prisoner groups for assignment purposes.

L.    <u>Inmate Commissary</u>.

1.    Contractor will provide a commissary for Inmates which shall supply only those non-consumable items approved by the Department in writing and such consumable items as the Contractor approves.

2.    The Contractor may not have items in the Commissary that are prohibited by Departmental policy.

3.    Commissary items shall be sold at a price determined by TDOC Policy 209.01 and subject to the prior written approval by the Commissioner or his designee. All profits derived from the Commissary operation shall be retained by Contractor. Contractor shall utilize the statewide Inmate Trust Fund system for all commissary transactions.

M.    <u>Mail</u>. Contractor will provide pick-up and delivery of Inmate mail in compliance with the Standards. Contractor will furnish first class postage to Indigent Inmates for the mailing of legal documents to courts or legal counsel and a reasonable amount of postage for other purposes as per TDOC policy 507.02. The Contractor shall follow the TDOC mail policy to include all special approved package programs.

N.    <u>Religious Services</u>. Contractor will designate adequate staff, volunteers and space within the Facility for religious services and provide religious programs and/or religious services in compliance with the Departmental Policy.

O.    <u>Reentry and Counseling Services</u>.

1.    Contractor will designate space within the Facility to provide counseling, case management, and reentry services in compliance with Departmental policy. Counseling and reentry services shall include but not be limited to the following:

    a.    Administration of a risk-needs assessment according to TDOC policy.

20

CCID 000953



    b.    Assistance with obtaining offender identification/driver's license, birth certificate, and other vital records.

    c.    Assistance with the development of a reentry plan for offenders expiring their sentences and/or transitioning to community supervision.

    d.    Career development planning.

2.    Contractor shall provide adequate staff to provide counseling, case management, and reentry services and should include the following specialized counselor positions:

    a.    Chief Counselor

    b.    Reentry Specialist

    c.    Career Development Counselor

P.    <u>Inmate Grievance Procedure</u>. Contractor will comply with Departmental policies and procedures regarding the Inmate grievance process and the Department's system for maintaining grievance-related records, as said policies and/or system may be revised during the term of this Contract.

Q.    <u>Security</u>.

1.    Contractor shall provide security in accordance with the Standards at all times in the Facility, and while Contractor is transporting Inmates and at all other times unless relieved of said obligation by the Commissioner in writing. All Contractor policies and procedures regarding security shall be provided to the State via one (1) hard copy and one (1) electronic version (in Word if possible) on or before the Service Commencement Date. Said policies and procedures shall be in accordance with the Standards and subject to written approval by the State prior to implementation. Contractor shall comply with said policies and procedures during the term of this Contract. All Inmate program activities in accordance with the Standards shall take place within the Facility. No Inmate shall leave the Facility except under security escort unless provided for by Department policy.

2.    At a minimum, the Contractor shall provide security, perimeter control, Facility control, control center function, post orders, security patrols, security inspections, counting procedures, key control, procedure for search and control of contraband, tool control, escape plan detection, appropriate use of security equipment, use of restraints, use of firearms and chemical agents, tactical unit procedure, inspections, housing unit assignment plans and internal and external movement control procedures and periodic shakedowns. Security procedures will be in compliance with Departmental policy when applicable.

R.    <u>Visitation</u>. Contractor shall designate physical space and provide appropriate security and supervision for indoor visitation in accordance with applicable Standards, no less frequently than at comparable Department facilities. Contractor shall furnish State with a written attorney visitation policy via one (1) hard copy and one (1) electronic

21

CCL 000954



version (in Word if possible) no later than the Service Commencement Date.

S.    <u>Access to Courts</u>. Contractor shall provide Inmates with constitutionally required access to the courts as required by the Standards.

T.    <u>Inmate Discipline</u>.

    1.    The Contractor shall implement Department Inmate disciplinary rules and procedures as they may be amended by the Department.

    2.    All disciplinary processes and board activities must strictly adhere to Department Policies 502.01, 502.02, 502.04, and 502.05.

    3.    Contractor agrees that no Inmate will be disciplined except in accordance with this Section and the Standards.

    4.    The Contractor shall use the present or any future system established by the Department for recording disciplinary information.

U.    <u>Use of Force</u>.

    1.    The Contractor shall comply with Departmental Policies on the use of force. Any internal policies and procedures and revisions thereto shall be in accordance with the Standards and subject to written approval by the State.

    2.    Notwithstanding any provision contained herein to the contrary, no use of force shall be allowed by Contractor except as in accordance with the Standards.

    3.    Contractor's employees shall be allowed to use force only

        a.    while on the grounds of the Facility;

        b.    while transporting Inmates;

        c.    during periods of community hospitalization;

        d.    during court proceedings;

        e.    while pursuing escapees from the Facility if the Commissioner requests said pursuit; and

        f.    while supervising Inmates away from the Facility and then only in accordance with the policies and procedures described in (1) and (2) above.

    4.    Contractor's employees shall be authorized to use such non-deadly force as the circumstances require only in the following situations:

        a.    to prevent the commission of a felony or misdemeanor, including escape;

22

CCI_000955



b. to defend themselves or others against physical assault;

c. to prevent serious damage to property;

d. to enforce institutional regulations and orders; and

e. to prevent or quell a riot or disturbance.

5. Contractor's employees shall be authorized and trained to use deadly force in accordance with TDOC Policy 506.08 and the Standards. The Contractor's employees authorized to use firearms must at a minimum meet the qualifications set forth in T.C.A. 62-35-117. Deadly force may be used only as a last resort and then may be used only to prevent escape, to prevent the loss of life or serious bodily harm, or to quell a rebellion, riot, or disturbance in which loss of life or serious injury to an individual is imminent. Only those employees who are appropriately trained, and, if applicable, authorized by law shall be authorized to carry and use firearms.

V. Sentence Reduction Credits.

1. Sentence credits shall be handled in accordance with TDOC Policy 505.01.

2. The decision on award or forfeiture of sentence credits remains solely with the Department.

W. Sentence Computation. Contractor shall provide the State with essential data and information relating to sentence computation. All sentence computations, including calculation of Inmate release and parole dates, shall be done by the Department and copies furnished to Contractor and Inmates. All other record keeping functions (e.g. posting of disciplinary reports, filing, updating Inmate assignments, custody levels, etc.) are the responsibility of the Contractor.

X. Records and Reports

1. Contractor shall provide for comprehensive operations and Inmate record and reporting systems for the Facility in compliance with the Standards and Department policy including the automated Inmate records and reporting system operated by the Department which shall include but not be limited to the following:

a. Inmate institutional records on each Inmate including, but not limited to, personal data, personal inventory receipts, disciplinary action reports, incident reports, release information, classification and counseling records, dental, psychiatric and medical records.

b. Documentation regarding complaints against Contractor's staff, the number and nature of violent or other disruptive incidents among Inmates or against staff, the number and nature of disciplinary actions against staff, the rate at which Inmates complete programs successfully, the number of Inmates productively active and the level of production;

23

CCI 000956



    c.    identification of all Inmates at the Facility and their actual assigned physical location within the Facility;

    d.    identification of Facility staff and other authorized persons who have direct access to Inmate records; and

    e.    provision of all reports requested by the State in writing for monitoring or evaluation of the Contract or any court-ordered compliance.

The system shall adhere to the Standards governing confidentiality.

2.    The Contractor shall maintain permanent logs in addition to shift reports that record routine and emergency situations. Each shift shall maintain records of pertinent information regarding individual Inmates and groups of Inmates. These records shall be compiled daily and reviewed by appropriate supervisory staff.

3.    The Contractor will be responsible for bearing the actual cost of purchasing computers as well as the network charges. The TDOC Information Technology Division who will supply Contractor with the appropriate specifications. The Contractor will submit the computers to TDOC for imaging prior to installation on the network.

4.    Contractor will be required to incorporate into its operation all new systems developed to report and track Inmate record information designated by the Commissioner.

5.    Upon request, all records, reports and documents will be made available immediately to the Contract Liaison for review. At the conclusion of the Contract, all records shall be turned over to the Department.

6.    The Contractor shall prepare and submit to the Contract Liaison such reports as are required by the State. Unless otherwise notified in writing by the Contract Liaison, these reports include the following which must be submitted on a monthly basis:

    a.    Unusual Occurrence Reports

    b.    Incident Reports

    c.    Disciplinary Reports

    d.    Medical Summaries

    e.    Program Activity Summaries

    f.    Inmate Grievances

    g    Facilities Maintenance and Repair and Related Operations

7.    Contractor shall promptly notify the Contract Liaison whenever an Inmate leaves the Facility on court order.

24

CCL 000957



Y.  Escapes.

1.  The Contractor shall exercise its best efforts to prevent escapes from the Facility. If the frequency of escapes or attempted escapes shall be in excess of the frequency of escapes or attempted escapes from comparable State facilities without good cause or shall exhibit a disregard for the safety of the general public, the State may declare the Contractor in Breach pursuant to Section E.14. Said determinations shall be within the sole judgment of the Commissioner.

2.  In the event of an escape resulting in whole or part from Contractor's failure to perform pursuant to the provisions of this Contract, the State may seek damages in a court of competent jurisdiction.

Z.  Post Orders.

1.  Contractor shall develop and submit to the State, as soon as each is available, but no later than sixty (60) days prior to the Service Commencement Date, one (1) hard copy and one (1) electronic version (in Word if possible), of the Post Orders required by this Contract in compliance with the Standards.

2.  Post Orders shall be by post and shift and shall include Post Orders for all security positions.

AA.  Policy Audit. The Contractor shall be inspected or audited at least annually in accordance with TDOC Policy 103.07 with respect to the implementation of at least those policies and procedures listed in Appendix C. The Contractor may, in addition and at its own expense, elect to have a policy audit conducted using personnel independent from the Contractor. The implementation will be in compliance with Tennessee Department of Correction Policies 103.07 and the Contractor will respond as required. In the event an audit reveals a Breach, as defined in E.14, by the Contractor, the State shall have available the remedies set out in Section E.14.

BB.  Inmate Work.

1.  The Contractor shall establish work programs in accordance with the Standards.

2.  Inmate work is subject to the written approval of the Commissioner pursuant to T.C.A. 41-24-110 or as the same may be modified or amended in the future.

3.  Any minimum restricted or higher custody Inmate working outside the secured perimeter must be under armed supervision.

    The specific location of inmates working outside the secure perimeter must be documented on the gate pass.

4.  The Contractor will be allowed to use Inmate labor for Facility operations and maintenance to the same extent Inmate labor is utilized in other State facilities pursuant to State policy and not for the benefit of the Contractor. The Contractor shall submit

25

CCID 000958



Inmate job descriptions for the State's written approval before assigning jobs to Inmates. Submission of job descriptions shall be by the method designated by the State. Job assignments and re-assignments shall be made by the Contractor only after the job description has been approved in writing by the State. No Inmate shall *ever* be placed in a position of authority or control over another.

5.    In emergency situations, the Department, in its sole discretion, may require the Contractor to furnish Inmates and security for outside work crews. Labor costs of security services associated therewith shall be reimbursed at the Contractor's actual cost, plus expenses and cost of operation.

6.    Inmates shall not perform services or produce goods for use outside the Facility except upon written consent of the Commissioner.

7.    The Department shall provide Inmates with sentence reduction credits. The Contractor shall be responsible for establishing and administering a compensation program at its expense, which will include Inmate pay in compliance with the Standards.

CC.    <u>Vocational and Academic Education</u>. Contractor shall furnish vocational and academic education as set forth in the Standards and according to TDOC policy at its expense.

DD.    <u>Classification</u>.

1.    Contractor shall comply with Departmental policies regarding classification and reclassification services.

2.    Contractor shall be required to maintain classification information which conforms to the Department's system.

EE.    <u>Inmate Trust Fund</u>. The Contractor will be responsible for maintaining an inmate trust fund following Department procedures including those relating to deposits and withdrawals for payment of court costs, privilege taxes, and Criminal Injuries Compensation Fund requirements, as well as other applicable fees and deductions. All commissions from trust fund deposits will be paid to the State in conformance with the terms of the inmate trust fund automation contract.

FF.    <u>Sanitation and Hygiene</u>. The Contractor shall provide for sanitation and hygiene in accordance with the Standards.

GG.    <u>Computer Software</u>. The State shall retain proprietary rights to all State provided software utilized in connection with this Contract.

HH.    <u>Inmate Drug Testing</u>. The Contractor will conduct drug tests in accordance with Departmental Policy 506.21 and 513.07. The Contractor will be responsible for all costs. All positive drug screens shall be confirmed through a second methodology. The selection of Inmates to be tested at random will be the responsibility of TDOC (State).

II.    <u>Assumption of Control</u>.

26

CCI 000959



1.     Trousdale County shall review and comment on the Department's plan for assumption of control within fifteen (15) days following its receipt by Trousdale County. The plan will provide for the orderly transfer of Inmates from Trousdale County to the Department under conditions of termination. Trousdale County agrees to implement said plan upon written notice from the Commissioner.

2.     Said plan will also provide for emergency assumption of control by the Department of whole or part of the Facility under conditions of natural disaster, in the event of riot or insurrection or other emergency circumstances wherein the Commissioner deems it necessary for the State to assume temporary control of the Facility. The Commissioner shall determine whether and to what extent an emergency circumstance exists in his sole discretion.

    The plan shall address Trousdale County's resumption of control after the circumstances causing the emergency assumption has ended. The plan will provide for the transfer of all records to the Department.

JJ.     <u>Accreditation</u>. The Contractor shall obtain, maintain and retain, at its expense, ACA accreditation of the Facility. Such accreditation shall be obtained within three years of the Service Commencement Date.

KK.     <u>Inmate and Staff Identification</u>. Contractor shall comply with the procedures in the Standards for Inmate and staff identification Including but not limited to, uniforms, fingerprinting and photographing.

LL.     <u>Inmate Personal Property Space</u>. Contractor shall follow Department policy on Inmate personal property.

MM.     <u>Library</u>. A general Inmate library will be provided and operated by Contractor in accordance with the Standards.

NN.     <u>Volunteer Services</u>. Contractor shall implement volunteer service programs In accordance with the Standards and TDOC policy. At a minimum, the Contractor shall provide for supervision and monitoring of the program and security background checks for volunteer applicants. Contractor shall establish and maintain a Local Volunteer Advisory Board.

OO.     <u>Release Payments for Inmates</u>. The Contractor shall follow Departmental policy regarding transportation for discharged Inmates and discharge payments to said Inmates. The Contractor shall make such payments at its own expense without reimbursement from the State.

PP.     <u>Space for Board of Parole/Institutional Parole Officer</u>. Contractor shall provide a hearing room for the Board of Parole two (2) days per month or as otherwise requested by the Board. The hearing room shall be large enough to comfortably accommodate three (3) Board members and fifteen (15) visitors. The Contractor shall provide local and long distance telephone service and furniture for the hearing room. The Contractor shall also provide furnished office space five (5) days each month, or as otherwise requested by the Department Institutional Probation and Parole Officer.

27

CCID 000960



QQ. **Rehabilitative Services**. The Contractor shall provide rehabilitative services in accordance with the Standards. Such services shall include, but not be limited to counseling, pre-release and transitional services.

RR. **Post-Conviction Actions**. The State will defend any post-conviction action, including appeals and writs of habeas corpus, by any Inmate challenging the underlying judgment of conviction or the administration of the sentence imposed.

SS. **Legal Actions Against Contractor, Agents and Employees**. The State is not obligated to provide legal representation for any non-state employee or official in any litigation arising from or based on this Contract, including but not limited to post-conviction actions, or any actions brought under the United States Constitution or the Federal Civil Rights Act.

TT. **Incorporation by Reference**. All plans, manuals and procedures required by this Contract to be submitted by Trousdale County to the State are made a part of this Contract upon approval by the State and all such plans, manuals and procedures are incorporated herein by reference

A.4. **STAFFING/EMPLOYEES:**

a. **Independent Contractor**. Contractor is associated with the State only for the purposes and to the extent set forth in this Contract. With respect to the performance of the management services set out herein, Contractor is and shall be an independent Contractor. The Contractor's agents and employees shall not accrue leave, retirement, insurance, bonding, use of State vehicles or any other benefit afforded to the employees of the State as a result of this Contract. Contractor, its agents and employees shall not be considered agents or employees of the State.

b. **Executive Officer**. The Facility and its programs shall be managed by a single executive officer employed by the Contractor (sometimes referred to herein as "Warden"). The executive officer shall be subject to the prior written approval of the State.

c. **Personnel**. Notwithstanding any provision contained herein to the contrary, Trousdale County shall provide adequate staff to fulfill its obligations under this Contract, which shall be at a minimum the number of staff required by the State. All vacancies shall be filled in forty- five (45) days; provided, however, that during the period of any vacancy, the services associated with said position shall be provided by Contractor unless the Commissioner has agreed in writing to the contrary with a reduction in the per diem rate as defined in Section C.11. The Contractor may request a thirty (30) day extension of the forty-five (45) day time limit to fill a vacancy. The Commissioner may grant this request on a one time basis for each applicable position. The Contractor must specify the position number of each extension request. The Contractor staff turnover ratio for security personnel shall not exceed fifty percent (50%) annually as of each June 30.

d. **Job Descriptions**.

1. Trousdale County shall provide as part of the operations plan required by Section A.3.b.11.D., written job descriptions for each position in the staffing pattern including but not limited to job title, responsibility and required minimum experience and education.

2. Any revisions or modifications of the job descriptions require the prior written approval of the State.

28



e. <u>Personnel Records.</u> A personnel record shall be maintained for each employee at the Facility which at a minimum shall contain the following: application, background investigation, dates of employment, training, performance evaluations, and disciplinary actions. The Contractor shall obtain a signed statement from each employee authorizing the State to have access to the personnel record.

f. <u>Staffing Reports.</u> On or before the fifteenth (15th) day of each month, Trousdale County shall submit a report to the Liaison(s) providing the following information:

    1.    the name of employees hired, indicating position;

    2.    the name of each employee whose employment has been terminated for whatever reason whether voluntarily or involuntary (including reason for termination), and position.

    3.    whether any position on the staffing pattern was vacant and for how many days.

g. <u>Reduction in Staff</u>.

    1.    Contractor shall immediately notify the Liaison if any positions on the staffing pattern are vacant.

    2.    If a position described in subsection 1) remains vacant in excess of the time allowed in A.4.c., then the State shall have the option of exercising the remedies available in Section E.14.

h. <u>Staffing Pattern/Security Post Assignment.</u>

    1.    Trousdale County shall implement a staffing pattern approved by the State in writing.

    2.    Trousdale County shall implement a security post assignment schedule approved in writing by the State. Said schedule shall detail by day and shift the security positions and hours of work. Said security post assignment schedule shall include designation of critical posts. Trousdale County shall also implement a plan regarding the process for managing the security post assignment schedule including but not limited to how the posts may be created and/or eliminated.

    3.    During the Facility ramp–up, Trousdale County shall implement the staffing pattern and post chart consistent with the ramp schedule attached as Appendix G.

    4.    Trousdale County shall develop and submit to the Liaison on or before the fifteenth (15th) of each month its written monthly post assignment schedule for the following month.

    5.    Any revisions to the staffing pattern and/or security post assignment require the prior written approval of the State. Trousdale County shall submit monthly staffing reports on or before the fifteenth (15th) of each month describing for the preceding month whether and to what extent Trousdale County has complied with the staffing pattern, security post assignment, and monthly post assignment. Staffing patterns are determined by security and program requirements and associated workloads. If changed circumstances modify those requirements or workloads Trousdale County and/or the State will review those changed circumstances and the State in its sole discretion will determine

29

CCID 000962



whether any changes in staffing requirements are necessary. If the change in staffing requirements is made necessary by a change in an applicable Standard, the provisions of C.11 apply.

i. Background Checks.

1. Prior to completion of pre-service training, applicants shall be subjected to a thorough background investigation, including criminal, employment, and medical histories. The background investigation for applicants for correctional officer positions shall also include psychological history, and such applicants shall be required to be certified by a qualified mental health professional as being free from any disorder as described, in the current edition of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association that would, in the professional judgment of the examiner, impair the subject's ability to perform any essential function of the job or would cause the applicant to pose a direct threat to safety. Criminal and employment histories must go back a minimum of five (5) years. Said background investigations shall be available to the State upon request. All criminal background checks shall be completed according to TDOC Guidelines. The cost of the background checks is the responsibility of Trousdale County.

2. A Security Addendum required by Title 28, Code of Federal Regulations Part 20, is appended hereto as Appendix B and incorporated by reference herein. The security addendum shall be included in any subcontract for management of the facility.

j. State Assistance in Training.

1. During the term of this Contract, Trousdale County shall send a representative to participate in periodic meetings regarding departmental activities and shall send a representative to sessions in which relevant policy modifications are being discussed or presented.

2. Trousdale County shall receive written notice of the time, place and agenda of the meetings or sessions described in subsection (a) at the same time State employees are provided notice.

3. Said meetings or sessions shall be held within the State, and Trousdale County shall bear any and all expense associated with its representative being present.

4. The Department shall supply Trousdale County with technical assistance, consultation and informational support consistent with that provided other comparable institutions in accordance with the Standards; provided, however, said support shall consist solely of advice and consultation.

k. Training. Trousdale County shall provide orientation and training programs for all employees in accordance with the Standards. All costs incurred for said orientation and training programs shall be borne by Trousdale County. The Liaison(s) shall be permitted to review training curricula and other training-related records and to audit training classes at any time.

l. Drug Free Work Force. Trousdale County shall at all times maintain a drug free work force and shall implement a plan for maintenance of a drug free work force and the employee assistance program.

B. CONTRACT PERIOD:

30



The Contractor shall provide the services as described in this Contract for a period of five (5) years beginning on the Service Commencement Date. The Contractor hereby acknowledges and affirms that the State shall have no obligation for services rendered by the Contractor which were not performed within this specified contract period.

C.      PAYMENT TERMS AND CONDITIONS:

C.1.    <u>Maximum Liability</u>. In no event shall the maximum liability of the State under this Contract exceed Two Hundred Seventy-Six Million, Two Hundred Ninety Thousand, One Hundred Dollars ($276,290,100). The payment rates in section C.3 shall constitute the entire compensation due the Contractor for all service and Contractor obligations hereunder regardless of the difficulty, materials or equipment required. The payment rates include, but are not limited to, all applicable taxes, fees, overheads, and all other direct and indirect costs incurred or to be incurred by the Contractor.

The Contractor is not entitled to be paid the maximum liability for any period under the Contract or any extensions of the Contract for work not requested by the State. The maximum liability represents available funds for payment to the Contractor and does not guarantee payment of any such funds to the Contractor under this Contract unless the State requests work and the Contractor performs said work. In which case, the Contractor shall be paid in accordance with the payment rates detailed in section C.3. The State is under no obligation to request work from the Contractor in any specific dollar amounts or to request any work at all from the Contractor during any period of this Contract.

C.2.    <u>Compensation Firm</u>. The payment rates and the maximum liability of the State under this Contract are firm for the duration of the Contract and are not subject to escalation for any reason unless amended.

C.3.    <u>Payment Methodology</u>. The Contractor shall be compensated based on the payment rates herein for units of service authorized by the State in a total amount not to exceed the Contract Maximum Liability established in section C.1.

 a. The Contractor's compensation shall be contingent upon the satisfactory completion of units, milestones, or increments of service defined in section A.

 b. <u>Operating Per Diem Payments</u>.

  The State shall make Operating Per Diem Rate payments to Trousdale County based on the greater of the number of inmates actually at the Facility or 90% of the 2552 beds (or the number of beds available pursuant to section C.3.b(2)), provided, however, that during the ramp period the State agrees to pay the Operating Per Diem Rate based on the greater of the number of inmates actually at the Facility or 90% of the beds available pursuant to the ramp schedule attached as Appendix G. If the 2552 beds are not available on the Service Commencement Date, the State shall not be obligated to make the Operating Per Diem Rate payments to the County pursuant to this section until such beds are available. If the beds are available and the State does not assign inmates to the Facility, the State shall be obligated to make the Operating Per Diem Rate payments to the County pursuant to this section

  (1) Beginning on the Service Commencement Date and continuing for one year thereafter, the Operating Per Diem Rate shall be **$58.75** per Inmate Day.

   Each year, on the anniversary of the Service Commencement Date, the Operating Per Diem Rate shall increase by 2.5%.

  (2) Beginning on the Service Commencement Date, Trousdale County shall make available 2,552 beds. The State may change the number of State Bed Days that Trousdale County makes available to it from time to time by giving Trousdale County 180 days advance written notice of the change. The State may lower or

31



raise the State Bed Days in its sole discretion, for any reason or no reason including, but not limited to, the State's dissatisfaction with any management subcontract. Notwithstanding any provisions herein to the contrary, Trousdale County shall make available to the State all or part of the Facility's capacity upon notice described herein and shall enter into no agreement to the contrary.

(3) Any beds not required to be made available to the State by this Contract may be filled with Inmates from other jurisdictions. Such Inmates shall be kept completely separate in all assignments including, but not limited to, housing and programming assignments. Trousdale County shall notify the Commissioner of the source and nature of Inmates from other jurisdictions proposed to be housed at the facility. Said notice shall be provided at least 30 days prior to receipt of such inmates at the institution. Within ten (10) days of receipt of such notice, the Commissioner shall notify Trousdale County of any objection to the proposal. If Trousdale County decides to proceed with the housing of such inmates at the Facility over such objection it shall so notify the Commissioner prior to receipt of the inmates. The State shall have thirty (30) days from receipt of such notice to change, at its discretion, the number of State Bed Days that Trousdale County makes available to it. The State shall provide at least ten (10) days' notice of the change in State Bed Days. The notice requirement is an exception to the 180-day notice required by Section C.3.b.(2). If inmates from other jurisdictions are housed at the facility, the State's Operating Per Diem Rate payments to Trousdale County pursuant to section C.3.b. shall be based on the greater of the number of Tennessee State Department of Correction Inmates actually at the Facility or 90% of the beds available to the State.

(4) No Operating Per Diem will be paid for Inmates housed and treated at a State departmental Facility. Subject to the subsection (b) above, the Operating Per Diem Rate payment will be made only for Inmates actually incarcerated at the Facility, except the Operating Per Diem Rate payment shall be made for any Inmate hospitalized at a non-State departmental Facility during the period when the contractor is responsible for said hospitalization expense. No Operating Per Diem shall be paid for any Inmate out to court.

(5) Inmate Days and billings will be determined by the Midnight count of each day, which count shall be periodically reviewed and signed by the Liaison(s).

c. Where applicable, payments under Section A.3.b.9.f. are allowed.

d. With the State's written approval, Trousdale County may designate in writing an entity to receive payment on its behalf.

C.4. Travel Compensation. The Contractor shall not be compensated or reimbursed for travel, meals, or lodging.

C.5. Invoice Requirements. The Contractor shall invoice the State only for completed increments of service and for the amount stipulated in section C.3, above, and present said invoices no more often than monthly, with all necessary supporting documentation, to:

TENNESSEE DEPARTMENT OF CORRECTION
DIVISION OF BUDGET AND FISCAL SERVICES
6TH FLOOR RACHEL JACKSON BUILDING
320 6TH AVENUE NORTH
NASHVILLE, TENNESSEE 37243-0465

a. Each invoice shall clearly and accurately detail all of the following required information (calculations must be extended and totaled correctly).

(1) Invoice Number (assigned by the Contractor)

32

CCI D 000965



    (2)     Invoice Date
    (3)     Contract Number (assigned by the State)
    (4)     Customer Account Name: TENNESSEE DEPARTMENT OF CORRECTION, ACCOUNTS PAYABLE
    (5)     Customer Account Number (assigned by the Contractor to the above-referenced Customer)
    (6)     Contractor Name
    (7)     Contractor Tennessee Edison Registration ID Number Referenced in Preamble of this Contract
    (8)     Contractor Contact for Invoice Questions (name, phone, and/or fax)
    (9)     Contractor Remittance Address
    (10)   Description of Delivered Service
    (11)   Complete Itemization of Charges, which shall detail the following:

        i.      Service or Milestone Description (including name & title as applicable) of each service invoiced
        ii.     Number of Completed Units, Increments, Hours, or Days as applicable, of each service invoiced
        iii.    Applicable Payment Rate (as stipulated in Section C.3.) of each service invoiced
        iv.    Amount Due by Service
        v.     Total Amount Due for the invoice period

    b.     The Contractor understands and agrees that an invoice under this Contract shall:

        (1)     include only charges for service described in Contract Section A and in accordance with payment terms and conditions set forth in Contract Section C;
        (2)     only be submitted for completed service and shall not include any charge for future work;
        (3)     not include sales tax or shipping charges; and
        (4)     initiate the timeframe for payment (and any discounts) only when the State is in receipt of the invoice, and the invoice meets the minimum requirements of this section C.5.

C.6.    <u>Payment of Invoice</u>. A payment by the State shall not prejudice the State's right to object to or question any payment, invoice, or matter in relation thereto. A payment by the State shall not be construed as acceptance of any part of the work or service provided or as approval of any amount invoiced. If the amount to be paid the Contractor is disputed by the State, then the State, on or before the date the invoice is payable, shall advise the Contractor of the basis for the dispute and pay the amount of such invoice which is not in dispute.

C.7.    <u>Invoice Reductions</u>. The Contractor's invoice shall be subject to reduction for amounts included in any invoice or payment theretofore made which are determined by the State, on the basis of audits conducted in accordance with the terms of this Contract, not to constitute proper remuneration for compensable services.

C.8.    <u>Deductions</u>. The State reserves the right to deduct from amounts, which are or shall become due and payable to the Contractor under this or any contract between the Contractor and the State of Tennessee any amounts, which are or shall become due and payable to the State of Tennessee by the Contractor.

C.9.    <u>Prerequisite Documentation</u>. The Contractor shall not invoice the State under this Contract until the State has received the following documentation properly completed.

    a.     The Contractor shall complete, sign, and present to the State an "Authorization Agreement for Automatic Deposit (ACH Credits) Form" provided by the State. By doing so, the Contractor acknowledges and agrees that, once said form is received by the State, all payments to the Contractor, under this or any other contract the Contractor has with the State of Tennessee shall be made by Automated Clearing House (ACH).

33

CCL 000966


b.  The Contractor shall complete, sign, and present to the State a "Substitute W-9 Form" provided by the State. The taxpayer Identification number detailed by said form must agree with the Contractor's Federal Employer Identification Number or Tennessee Edison Registration ID referenced in this Contract.

C.10.  Compensation Adjustment for Change of Services.

a.  The parties recognize that each has entered into this Contract based upon the Standards in effect as of Effective Date of Contract. Trousdale County agrees to be bound by any applicable Standard change and said change shall not affect the validity of this Contract. If a change occurs in the applicable Standard, either party may notify the other in writing if it is believed said change shall affect the services delivered by Trousdale County. The Commissioner shall make the final, binding decision regarding whether a change has occurred in an applicable Standard and whether said change affects the services rendered by Trousdale County. Any adjustment in the Operating Per Diem Rate due Trousdale County shall be determined in accordance with subsection (c).

b.  In the event Contractor may receive payments or compensation of any nature for services it is obligated to perform under this Contract from any source, including but not limited to federal, state or local authority, or any third party, other than the compensation described in this Contract, Contractor shall receive prior written consent and direction from the State prior to receiving any such additional compensation. The State may withhold a comparable amount from any payments due the Contractor. In the event said additional compensation is used to provide enhanced or innovative services at the Facility as compared to the services provided by the Department at comparable facilities, Contractor must still receive prior written consent from the State prior to receiving said compensation before the contractor may retains those funds. The Commissioner shall decide whether the funds will be used to provide enhanced or innovative services at the Facility.

c.  Within thirty (30) days of the notice required in subsections (a) and (b) above, Trousdale County shall provide the State with the proposed adjustment in the Operating Per Diem Rate and appropriate documentation in support thereof. The Commissioner shall decide whether and to what extent an adjustment in the Operating Per Diem Rate is appropriate. In the event the Commissioner determines that an adjustment in the Operating Per Diem Rate is appropriate, the rate may only be revised by an appropriate amendment to this Contract as described in Section D.2.

C.11.  Failure to Agree on Billing Dispute or for Additional or Reduced Services.

a.  In the event Trousdale County disagrees with the State's failure to pay a disputed amount under Section C.7, disagrees with the determination of the Commissioner regarding whether and to what extent an adjustment in the Operating Per Diem for change in services is appropriate under Section C.11, disagrees with the Commissioner's determination under Section A.3.b.9.f., or disagrees with any other aspect or amount of payment made by the State then Trousdale County shall submit a claim and the grounds for said disagreement in writing to the Commissioner within thirty (30) days of the date the State either makes partial payment of the disputed bill or refuses the disputed bill in its entirety. Failure of Trousdale County to submit said claim and grounds to the Commissioner in writing within the time period described herein shall be an absolute waiver of said claim. The State shall be afforded a sixty (60) day period in which to effect a cure or take reasonable steps to effect a cure, if it deems a cure appropriate.

b.  In the event Trousdale County timely provides the notice described in subsection (a), then Trousdale County may file a claim against the State before the appropriate forum in

34



Tennessee with jurisdiction to hear said claim. Failure by Trousdale County to file a claim before the appropriate forum in Tennessee with jurisdiction to hear said claim within one year of the notice described in subsection (a) shall operate as a waiver of said claim in its entirety. It is agreed by the parties that this provision establishes a contractual period of limitations for any claim brought by Trousdale County. Neither this Section nor any other provision of this Contact creates or expands jurisdiction of any court or commission over the State.

C.12. <u>Failure to Pay Health Care Providers</u>. Trousdale County shall be responsible for making payments to the hospital utilized by the State's Primary Health Care Contractor and to physicians providing services at such hospital within ninety (90) days of the invoice date for services to any Inmate assigned to the Facility for which Trousdale County is financially responsible under the provisions of Section A.3.b.11.G, provided such charges are not being disputed by Trousdale County. When any such undisputed debt is more than ninety (90) days old, the State reserves the right to pay the provider and deduct the amount from payments due from the State to Trousdale County hereunder.

D. STANDARD TERMS AND CONDITIONS:

D.1. <u>Required Approvals</u>. The State is not bound by this Contract until it is signed by the contract parties and approved by appropriate officials in accordance with applicable Tennessee laws and regulations (depending upon the specifics of this contract, said officials may include, but are not limited to, the Commissioner of Finance and Administration, the Commissioner of Human Resources, and the Comptroller of the Treasury).

D.2. <u>Modification and Amendment</u>. This Contract may be modified only by a written amendment signed by all parties hereto and approved by both the officials who approved the base contract and, depending upon the specifics of the contract as amended, any additional officials required by Tennessee laws and regulations (said officials may include, but are not limited to, the Commissioner of Finance and Administration, the Commissioner of Human Resources, and the Comptroller of the Treasury).

D.3. <u>Termination for Convenience</u>. The State may terminate this Contract at any time after the first year following the Service Commencement Date without cause for any reason. Said termination shall not be deemed a breach of contract by the State. The State shall give the Contractor at least **ninety (90) days** written notice before the effective termination date. The Contractor shall be entitled to compensation for satisfactory, authorized service completed as of the termination date, but in no event shall the State be liable to the Contractor for compensation for any service which has not been rendered. Upon such termination, the Contractor shall have no right to any actual general, special, incidental, consequential, or any other damages whatsoever of any description or amount.

D.4. <u>Termination for Cause</u>. If the Contractor fails to properly perform its obligations under this Contract in a timely or proper manner, or if the Contractor violates any terms of this Contract, the State shall have the right to immediately terminate the Contract and withhold payments in excess of fair compensation for completed services. Notwithstanding the above, the Contractor shall not be relieved of liability to the State for damages sustained by virtue of any breach of this Contract by the Contractor.

D.5. <u>Subcontracting</u>.

a. It is acknowledged and agreed by the State and Trousdale County that the duties and the obligations of Trousdale County hereunder may be performed in whole and/or in part from time to time by subcontractors. Any performance by a subcontractor shall constitute and be deemed performance by Trousdale County hereunder, provided; however, performance by a subcontractor shall not release Trousdale County of its obligation hereunder. It is understood that Trousdale County intends to contract with a prime subcontractor to manage the prison. Trousdale County shall deliver a copy of said contracts to the State within 60 days of the execution of this Contract. Trousdale County

35

CCID 000968



shall not modify said contracts without the prior written approval of the State; said approval shall not be unreasonably withheld. Said contracts shall include a provision requiring the subcontractor to provide the Commissioner with a copy of its previous fiscal year's audited annual financial statements on or before April 1 of each year during the term of this contract. Trousdale County shall not enter into any other subcontract or modification, for operation and management of the prison without obtaining the prior written approval of the State. Trousdale County agrees to place in its subcontracts, a provision allowing the State of Tennessee access to the Facility, Inmates, personnel and records regarding the performance of any contractor or subcontractor for monitoring purposes. Any such provision shall include, but not be limited to, the same access as provided in A.3.b.5. above.

b.    All subcontracts shall contain, at a minimum, sections of this contract below pertaining to "Conflicts of Interest," "Non-discrimination," "Records," "No Violation of Contract Articles of Incorporation or Bylaws," "No Defaults under Agreements," "Change in Owners," "Research Projects," and "Financial Termination" as identified by the section headings.

c.    Trousdale County shall provide that its contracts with its prime contractor referenced in subsection (a) and their successors and assigns, and any future contract for the management of the facility, include the following provision:

Hold Harmless. The parties acknowledge and agree that the State of Tennessee is a third-party beneficiary under this Contract because the Contractor will be performing services that will benefit the State of Tennessee and on which the State of Tennessee is relying pursuant to its separate contract with Trousdale County. The Contractor agrees to indemnify and hold harmless the State of Tennessee as well as its officers, agents, and employees from and against any and all claims, liabilities, losses, and causes of action, including reasonable attorney fees, which may arise, accrue, or result to any person, firm, corporation, or other entity which may be injured or damaged as a result of acts, omissions, bad faith, negligence, or willful misconduct on the part of the Contractor, its employees, or any person acting for or on its or their behalf relating to this Contract. The Contractor further agrees it shall be liable for the reasonable cost of attorneys for the State in the event such service is necessitated to enforce the terms of this Contract or otherwise enforce the obligations of the Contractor to the State.

In the event of any such suit or claim, the Contractor shall give Trousdale County and the State immediate notice thereof and shall provide all assistance required by the State in the State's defense. The State shall give the Contractor written notice of any such claim or suit, and the Contractor shall have full right and obligation to conduct the Contractor's own defense thereof. Nothing contained herein shall be deemed to accord to the Contractor, through its attorney(s), the right to represent the State of Tennessee in any legal matter, such rights being governed by Tennessee Code Annotated, Section 8-6-106.

D.6.    Conflicts of Interest. The Contractor warrants that no part of the total Contract Amount shall be paid directly or indirectly to an employee or official of the State of Tennessee as wages, compensation, or gifts in exchange for acting as an officer, agent, employee, subcontractor, or consultant to the Contractor in connection with any work contemplated or performed relative to this Contract.

D.7.    Nondiscrimination. The Contractor hereby agrees, warrants, and assures that no person shall be excluded from participation in, be denied benefits of or be otherwise subjected to discrimination in the performance of this Contract or in the employment practices of the Contractor on the grounds of handicap or disability, age, race, color, religion, sex, national origin, or any other classification protected by Federal, Tennessee State constitutional, or statutory law. The Contractor shall, upon request, show proof of such nondiscrimination and shall post in conspicuous places, available to all employees and applicants, notices of nondiscrimination.

36

CCI 000969



D.8. <u>Prohibition of Illegal Immigrants</u>. The requirements of *Tennessee Code Annotated*, Section 12-3-309, *et seq.*, addressing the use of illegal immigrants in the performance of any Contract to supply goods or services to the state of Tennessee, shall be a material provision of this Contract, a breach of which shall be grounds for monetary and other penalties, up to and including termination of this Contract.

 a. The Contractor hereby attests, certifies, warrants, and assures that the Contractor shall not knowingly utilize the services of an illegal immigrant in the performance of this Contract and shall not knowingly utilize the services of any subcontractor who will utilize the services of an illegal immigrant in the performance of this Contract. The Contractor shall reaffirm this attestation, in writing, by submitting to the State a completed and signed copy of the document at Appendix **F,** hereto, semi-annually during the period of this Contract. Such attestations shall be maintained by the Contractor and made available to state officials upon request.

 b. Prior to the use of any subcontractor in the performance of this Contract, and semi-annually thereafter, during the period of this Contract, the Contractor shall obtain and retain a current, written attestation that the subcontractor shall not knowingly utilize the services of an illegal immigrant to perform work relative to this Contract and shall not knowingly utilize the services of any subcontractor who will utilize the services of an illegal immigrant to perform work relative to this Contract. Attestations obtained from such subcontractors shall be maintained by the Contractor and made available to state officials upon request.

 c. The Contractor shall maintain records for all personnel used in the performance of this Contract. Said records shall be subject to review and random inspection at any reasonable time upon reasonable notice by the State.

 d. The Contractor understands and agrees that failure to comply with this section will be subject to the sanctions of *Tennessee Code Annotated*, Section 12-3-309, *et seq.* for acts or omissions occurring after its effective date. This law requires the Chief Procurement Officer to prohibit a contractor from contracting with, or submitting an offer, proposal, or bid to contract with the State of Tennessee to supply goods or services for a period of one year after a contractor is discovered to have knowingly used the services of illegal immigrants during the performance of this Contract.

 e. For purposes of this Contract, "illegal immigrant" shall be defined as any person who is not either a United States citizen, a Lawful Permanent Resident, or a person whose physical presence in the United States is authorized or allowed by the federal Department of Homeland Security and who, under federal immigration laws and/or regulations, is authorized to be employed in the U.S. or is otherwise authorized to provide services under the Contract.

D.9. <u>Records</u>. The Contractor shall maintain documentation for all charges under this Contract. The books, records, and documents of the Contractor, insofar as they relate to work performed or money received under this Contract, shall be maintained for a period of three (3) full years from the date of the final payment and shall be subject to audit at any reasonable time and upon reasonable notice by the State, the Comptroller of the Treasury, or their duly appointed representatives. The financial statements shall be prepared in accordance with generally accepted accounting principles.

D.10. <u>Prevailing Wage Rates</u>. All contracts for construction, erection, or demolition or to install goods or materials that involve the expenditure of any funds derived from the State require compliance with the prevailing wage laws as provided in *Tennessee Code Annotated*, Section 12-4-401, *et seq.*

D.11. <u>Monitoring</u>. The Contractor's activities conducted and records maintained pursuant to this Contract shall be subject to monitoring and evaluation by the State, the Comptroller of the Treasury, or their duly appointed representatives.

37

CCI-D-000970



D.12. <u>Progress Reports.</u> The Contractor shall submit brief, periodic, progress reports to the State as requested.

D.13. <u>Strict Performance</u>. Failure by any party to this Contract to insist in any one or more cases upon the strict performance of any of the terms, covenants, conditions, or provisions of this Contract shall not be construed as a waiver or relinquishment of any such term, covenant, condition, or provision. No term or condition of this Contract shall be held to be waived, modified, or deleted except by a written amendment signed by the parties hereto.

D.14. <u>Independent Contractor</u>. The parties hereto, in the performance of this Contract, shall not act as employees, partners, joint ventures, or associates of one another. It is expressly acknowledged by the parties hereto that such parties are independent contracting entitles and that nothing In this Contract shall be construed to create an employer/employee relationship or to allow either to exercise control or direction over the manner or method by which the other transacts its business affairs or provides its usual services. The employees or agents of one party shall not be deemed or construed to be the employees or agents of the other party for any purpose whatsoever.

The Contractor, being a Tennessee governmental entity, is governed by the provisions of the Tennessee Government Tort Liability Act, Tennessee Code Annotated, Sections 29-20-101 et seq., for cause of action sounding in tort. Further no contract provision requiring a Tennessee political entity to indemnify or hold harmless the State beyond the liability imposed by law is unenforceable because it appropriates public money and nullifies governmental immunity without the authorization of the General Assembly.

D.15. <u>State Liability</u>. The State shall have no liability except as specifically provided in this Contract.

D.16. <u>Force Majeure</u>. The obligations of the parties to this Contract are subject to prevention by causes beyond the parties' control that could not be avoided by the exercise of due care including, but not limited to, natural disasters, riots, wars, epidemics, or any other similar cause.

D.17. <u>State and Federal Compliance</u>. The Contractor shall comply with all applicable State and Federal laws and regulations in the performance of this Contract.

D.18. <u>Governing Law</u>. This Contract shall be governed by and construed in accordance with the laws of the State of Tennessee. The Contractor agrees that it will be subject to the exclusive jurisdiction of the courts of the State of Tennessee in actions that may arise under this Contract. The Contractor acknowledges and agrees that any rights or claims against the State of Tennessee or its employees hereunder, and any remedies arising therefrom, shall be subject to and limited to those rights and remedies, if any, available under *Tennessee Code Annotated,* Sections 9-8-101 through 9-8-407.

D.19. <u>Completeness</u>. This Contract is complete and contains the entire understanding between the parties relating to the subject matter contained herein, including all the terms and conditions of the parties' agreement. This Contract supersedes any and all prior understandings, representations, negotiations, and agreements between the parties relating hereto, whether written or oral.

D.20. <u>Severability</u>. If any terms and conditions of this Contract are held to be invalid or unenforceable as a matter of law, the other terms and conditions hereof shall not be affected thereby and shall remain in full force and effect. To this end, the terms and conditions of this Contract are declared severable.

D.21. <u>Headings</u>. Section headings of this Contract are for reference purposes only and shall not be construed as part of this Contract.

E.     SPECIAL TERMS AND CONDITIONS:

38



E.1.   Conflicting Terms and Conditions. Should any of these special terms and conditions conflict with any other terms and conditions of this Contract, these special terms and conditions shall control.

E.2.   Communications and Contacts. All instructions, notices, consents, demands, or other communications required or contemplated by this Contract shall be in writing and shall be made by certified, first class mail, return receipt requested and postage prepaid, by overnight courier service with an asset tracking system, or by EMAIL or facsimile transmission with recipient confirmation. Any such communications, regardless of method of transmission, shall be addressed to the respective party at the appropriate mailing address, facsimile number, or EMAIL address as set forth below or to that of such other party or address, as may be hereafter specified by written notice.

The State:

DERRICK D. SCHOFIELD, COMMISSIONER
TENNESSEE DEPARTMENT OF CORRECTION
6TH FLOOR RACHEL JACKSON BUILDING
Derrick.Schofield@tn.gov
Telephone # 615.741.1000 Ext. 8139
FAX # 615.532.8281

The Contractor:

TROUSDALE COUNTY:

BETTY LOU TAYLOR
TAYLOR, DONOHO, TAYLOR & TAYLOR
204 Court Street
P.O. Box 179
Hartsville, TN 37074
paula@dttlawfirm.com
Telephone # 615-374-3004
FAX # 615-374-2267

All instructions, notices, consents, demands, or other communications shall be considered effectively given upon receipt or recipient confirmation as may be required.

E.3.   Subject to Funds Availability. The Contract is subject to the appropriation and availability of State and/or Federal funds. The State will include in its budget request to the Legislature for each Fiscal year the payments to become due thereunder in such Fiscal Year and will use all reasonable and lawful means at its disposal to secure the appropriation of money for such Fiscal Year sufficient to pay the payments thereunder coming due therein. The Department reasonably believes that monies in an amount sufficient to make all payments due thereunder can and will lawfully be appropriated and made available for this purpose. In the event that the funds are not appropriated or are otherwise unavailable, the State reserves the right to terminate the Contract upon written notice to the Contractor. Said termination shall not be deemed a breach of Contract by the State. Upon receipt of the written notice, the Contractor shall cease all work associated with the Contract. Should such an event occur, the Contractor shall be entitled to compensation for all satisfactory and authorized services completed as of the termination date. Upon such termination, the Contractor shall have no right to recover from the State any actual, general, special, incidental, consequential, or any other damages whatsoever of any description or amount.

E.4.   Confidentiality of Records. Strict standards of confidentiality of records and information shall be maintained in accordance with applicable state and federal law. All material and information, regardless of form, medium or method of communication, provided to the Contractor by the State or acquired by the Contractor on behalf of the State shall be regarded as confidential information in accordance with the provisions of applicable state and federal law, state and federal rules and regulations, departmental policy, and ethical standards. Such confidential

39



information shall not be disclosed, and all necessary steps shall be taken by the Contractor to safeguard the confidentiality of such material or information in conformance with applicable state and federal law, state and federal rules and regulations, departmental policy, and ethical standards.

The Contractor's obligations under this section do not apply to information in the public domain; entering the public domain but not from a breach by the Contractor of this Contract; previously possessed by the Contractor without written obligations to the State to protect it; acquired by the Contractor without written restrictions against disclosure from a third party which, to the Contractor's knowledge, is free to disclose the information; independently developed by the Contractor without the use of the State's information; or, disclosed by the State to others without restrictions against disclosure. Nothing in this paragraph shall permit Contractor to disclose any information that is confidential under federal or state law or regulations, regardless of whether it has been disclosed or made available to the Contractor due to intentional or negligent actions or inactions of agents of the State or third parties.

It is expressly understood and agreed the obligations set forth in this section shall survive the termination of this Contract.

E.5.    Printing Authorization. The Contractor agrees that no publication coming within the jurisdiction of *Tennessee Code Annotated*, Section 12-7-101, *et.* seq., shall be printed pursuant to this contract unless a printing authorization number has been obtained and affixed as required by *Tennessee Code Annotated*, Section 12-7-103 (d).

E.6.    State Ownership of Work Products. The State shall have ownership, right, title, and interest, including ownership of copyright, in all work products, including computer source code, created, designed, developed, derived, documented, installed, or delivered under this Contract subject to the next subsection and full and final payment for each "Work Product." The State shall have royalty-free and unlimited rights and license to use, disclose, reproduce, publish, distribute, modify, maintain, or create derivative works from, for any purpose whatsoever, all said Work Products.

    a.    To the extent that the Contractor uses any of its pre-existing, proprietary or independently developed tools, materials or information ("Contractor Materials"), the Contractor shall retain all right, title and interest in and to such Contractor Materials, and the State shall acquire no right, title or interest in or to such Contractor Materials EXCEPT the Contractor grants to the State an unlimited, non-transferable license to use, copy and distribute internally, solely for the State's internal purposes, any Contractor Materials reasonably associated with any Work Product provided under the Contract.

    b.    The Contractor shall furnish such information and data as the State may request, including but not limited to computer code, that is applicable, essential, fundamental, or intrinsic to any Work Product and Contractor Materials reasonably associated with any Work Product, in accordance with this Contract and applicable state law.

    c.    Nothing in this Contract shall prohibit the Contractor's use for its own purposes of the general knowledge, skills, experience, ideas, concepts, know-how, and techniques obtained and used during the course of providing the services requested under this Contract.

    d.    Nothing in the Contract shall prohibit the Contractor from developing for itself, or for others, materials which are similar to and/or competitive with those that are produced under this Contract.

40

CCID-000973



E.7.   State Furnished Property. The Contractor shall be responsible for the correct use, maintenance, and protection of all articles of nonexpendable, tangible, personal property furnished by the State for the Contractor's temporary use under this Contract. Upon termination of this Contract, all property furnished shall be returned to the State in good order and condition as when received, reasonable use and wear thereof excepted. Should the property be destroyed, lost, or stolen, the Contractor shall be responsible to the State for the residual value of the property at the time of loss.

E.8.   Prohibited Advertising. The Contractor shall not refer to this Contract or the Contractor's relationship with the State hereunder in commercial advertising in such a manner as to state or imply that the Contractor or the Contractor's services are endorsed. It is expressly understood and agreed that the obligations set forth in this section shall survive the termination of this Contract in perpetuity.

E.9.   Public Accountability. If the Contractor is subject to *Tennessee Code Annotated,* Title 8, Chapter 4, Part 4 or if this Contract involves the provision of services to citizens by the Contractor on behalf of the State, the Contractor agrees to establish a system through which recipients of services may present grievances about the operation of the service program, and the Contractor shall display in a prominent place, located near the passageway through which the public enters in order to receive services pursuant to this Contract, a sign at least twelve inches (12") in height and eighteen inches (18") in width stating:

NOTICE: THIS AGENCY IS A RECIPIENT OF TAXPAYER FUNDING. IF YOU OBSERVE AN AGENCY DIRECTOR OR EMPLOYEE ENGAGING IN ANY ACTIVITY WHICH YOU CONSIDER TO BE ILLEGAL, IMPROPER, OR WASTEFUL, PLEASE CALL THE STATE COMPTROLLER'S TOLL-FREE HOTLINE: 1-800-232-5454

E.10.   Environmental Tobacco Smoke. Pursuant to the provisions of the federal "Pro-Children Act of 1994" and the Tennessee "Children's Act for Clean Indoor Air of 1995," the Contractor shall prohibit smoking of tobacco products within any indoor premises in which services are provided pursuant to this Contract to individuals under the age of eighteen (18) years. The Contractor shall post "no smoking" signs in appropriate, permanent sites within such premises. This prohibition shall be applicable during all hours, not just the hours in which children are present. Violators of the prohibition may be subject to civil penalties and fines. This prohibition shall apply to and be made part of any subcontract related to this Contract.

E.11.   Lobbying. The Contractor certifies, to the best of its knowledge and belief, that:

a.   No federally appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any federal contract, grant, loan, or cooperative agreement.

b.   If any funds other than federally appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this contract, grant, loan, or cooperative agreement, the Contractor shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

c.   The Contractor shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, sub-grants, and contracts under grants, loans, and cooperative agreements) and that all sub-recipients shall certify and disclose accordingly.

41



This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into and is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, *U.S. Code*.

E.12. <u>Debarment and Suspension</u>. The Contractor certifies, to the best of its knowledge and belief, that it, its current and future principals, its current and future subcontractors and their principals:

    a.    are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any federal or state department or agency;

    b.    have not within a three (3) year period preceding this Contract been convicted of, or had a civil judgment rendered against them from commission of fraud, or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (federal, state, or local) transaction or grant under a public transaction; violation of federal or state antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification, or destruction of records, making false statements, or receiving stolen property;

    c.    are not presently indicted or otherwise criminally or civilly charged by a government entity (federal, state, or local) with commission of any of the offenses detailed in section b. of this certification; and

    d.    have not within a three (3) year period preceding this Contract had one or more public transactions (federal, state, or local) terminated for cause or default.

        The Contractor shall provide immediate written notice to the State if at any time it learns that there was an earlier failure to disclose information or that due to changed circumstances, its principals or the principals of its subcontractors are excluded or disqualified.

E.13. <u>Copyrights and Patents</u>. The Contractor agrees to indemnify and hold harmless the State of Tennessee as well as its officers, agents, and employees from and against any and all claims or suits which may be brought against the State for infringement of any laws regarding patents or copyrights which may arise from the Contractor's performance of this Contract. In any such action brought against the State, the Contractor shall satisfy and indemnify the State for the amount of any final judgment for infringement. The Contractor further agrees it shall be liable for the reasonable fees of attorneys for the State In the event such service is necessitated to enforce the terms of this Contract or otherwise enforce the obligations of the Contractor to the State. The State shall give the Contractor written notice of any such claim or suit and full right and opportunity to conduct the Contractor's own defense thereof.

E.14. <u>Breach</u>. A party shall be deemed to have breached the Contract if any of the following occurs:

        – failure to perform in accordance with any term or provision of the Contract;
        – partial performance of any term or provision of the Contract;
        – any act prohibited or restricted by the Contract, or
        – violation of any warranty.

For purposes of this Contract, these items shall hereinafter be referred to as a "Breach."

    a.    Contractor Breach – The State shall notify Contractor in writing of a Breach.

        (1)    In event of a Breach by Contractor, the State shall have available the remedy of Actual Damages and any other remedy available at law or equity.

        (2)    Liquidated Damages – In the event of a Breach, the State may assess Liquidated Damages. The State shall notify the Contractor of amounts to be

42

CCID 000975



assessed as Liquidated Damages. The parties agree that due to the complicated nature of the Contractor's obligations under this Contract it would be difficult to specifically designate a monetary amount for a Breach by Contractor as said amounts are likely to be uncertain and not easily proven. Contractor hereby represents and covenants it has carefully reviewed the Liquidated Damages contained in above referenced, Appendix D and agree that said amounts represent a reasonable relationship between the amount and what might reasonably be expected in the event of Breach, and are a reasonable estimate of the damages that would occur from a Breach. It is hereby agreed between the parties that the Liquidated Damages represent solely the damages and injuries sustained by the State in losing the benefit of the bargain with Contractor and do not include any injury or damage sustained by a third party. The Contractor agrees that the liquidated damage amount is in addition to any amounts Contractor may owe the State pursuant to the indemnity provision or other section of this Contract.

For services to be performance on a daily basis, the liquidated damages may be assessed for each day the service was not fully performed. For services to be performed on a less regular basis (e.g. a monthly report), the liquidated damages may be assessed for each time the service was not fully performed. The State may continue to withhold the Liquidated Damages or a portion thereof until the Contractor cures the Breach, the State exercises its option to declare a Partial Default, or the State terminates the Contract. The State is not obligated to assess Liquidated Damages before availing itself of any other remedy. The State may choose to discontinue Liquidated Damages and avail itself of any other remedy available under this Contract or at law or equity; provided, however, Contractor shall receive a credit for said Liquidated Damages previously withheld except in the event of a Partial Default.

(3)  Partial Default – In the event of a Breach, the State may declare a Partial Default. In which case, the State shall provide the Contractor written notice of: (1) the date which Contractor shall terminate providing the service associated with the Breach; and (2) the date the State will begin to provide the service associated with the Breach. Notwithstanding the foregoing, the State may revise the time periods contained in the notice written to the Contractor.

In the event the State declares a Partial Default, the State may withhold, together with any other damages associated with the Breach, from the amounts due the Contractor the greater of: (1) amounts which would be paid the Contractor to provide the defaulted service: or (2) the cost to the State of providing the defaulted service, whether said service is provided by the State or a third party. To determine the amount the Contractor is being paid for any particular service, the Department shall be entitled to receive within five (5) days any requested material from Contractor. The State shall make the final and binding determination of said amount.

The State may assess Liquidated Damages against the Contractor for any failure to perform which ultimately results in a Partial Default with said Liquidated Damages to cease when said Partial Default is effective. Upon Partial Default, the Contractor shall have no right to recover from the State any actual, general, special, incidental, consequential, or any other damages whatsoever of any description or amount. Contractor agrees to cooperate fully with the State in the event a Partial Default is taken.

(4)  Contract Termination – In the event of a Breach, the State may terminate the Contract immediately or in stages. The Contractor shall be notified of the termination in writing by the State. Said notice shall hereinafter be referred to as Termination Notice. The Termination Notice may specify either that the termination is to be effective immediately, on a date certain in the future, or that

43

CCID 000976



the Contractor shall cease operations under this Contract in stages. In the event of a termination; the State may withhold any amounts which may be due Contractor without waiver of any other remedy or damages available to the State at law or at equity. The Contractor shall be liable to the State for any and all damages incurred by the State and any and all expenses incurred by the State which exceed the amount the State would have paid Contractor under this Contract. Contractor agrees to cooperate with the State in the event of a Contract Termination or Partial Takeover.

b. State Breach – In the event of a Breach of Contract by the State, the Contractor shall notify the State in writing within 30 days of any Breach of Contract by the State. Said notice shall contain a description of the Breach. Failure by the Contractor to provide said written notice shall operate as an absolute waiver by the Contractor of the State's Breach. In no event shall any Breach on the part of the State excuse the Contractor from full performance under this Contract. In the event of Breach by the State, the Contractor may avail itself of any remedy at law in the forum with appropriate jurisdiction; provided, however, failure by the Contractor to give the State written notice and opportunity to cure as described herein operates as a waiver of the State's Breach. Failure by the Contractor to file a claim before the appropriate forum in Tennessee with jurisdiction to hear such claim within one (1) year of the written notice of Breach shall operate as a waiver of said claim in its entirety. It is agreed by the parties this provision establishes a contractual period of limitations for any claim brought by the Contractor.

E.15.   Partial Takeover. The State may, at its convenience and without cause, exercise a partial takeover of any service which the Contractor is obligated to perform under this Contract, including but not limited to any service which is the subject of a subcontract between Contractor and a third party, although the Contractor is not in breach (hereinafter referred to as "Partial Takeover"). Said Partial Takeover shall not be deemed a Breach of Contract by the State. Contractor shall be given at least 30 days prior written notice of said Partial Takeover with said notice to specify the area(s) of service the State will assume and the date of said assumption. Any Partial Takeover by the State shall not alter in any way Contractor's other obligations under this Contract. The State may withhold from amounts due the Contractor the amount the Contractor would have been paid to deliver the service as determined by the State. The amounts shall be withheld effective as of the date the State assumes the service. Upon Partial Takeover, the Contractor shall have no right to recover from the State any actual, general, special, incidental, consequential, or any other damages whatsoever of any description or amount.

E.16.   Unencumbered Personnel. All persons assigned by the Contractor to perform services for the State under this Contract, whether they are employees, agents, subcontractors, or principals of the Contractor, shall not be subject to any employment contract or restrictive covenant provisions which would preclude those persons from performing the same or similar services for the State after the termination of this Contract, either as a State employee, an independent contractor, or an employee, agent, subcontractor or principal of another contractor with the State. If the Contractor provides the State with the services of any person subject to a restrictive covenant or contractual provision in violation of this provision, any such restrictive covenant or contractual provision will be void and unenforceable, and the Contractor will pay the State and any person involved all of its expenses, including attorney fees, caused by attempts to enforce such provisions.

E.17   Types of Insurance. The Contractor and/or its management subcontractor shall maintain and pay for insurance substantially as described in ATTACHMENT E. The State shall be listed as an additional insured. Contractor shall revise or supplement the Insurance listed on Appendix E and may seek a compensation adjustment pursuant to Section C.11.

E.18.   Defense/Immunity. Notwithstanding any provision contained herein to the contrary, the State does not waive any immunity defenses which may exist by operation of law, including, but not limited to, limitations on the amount of damages which may be awarded or paid.

44

GCID 000977



E.19.  Prohibitions.  Notwithstanding any other provision of this Contract to the contrary, nothing contained herein shall be interpreted to authorize, allow or imply authority of the Contractor to do the following:

a.  develop or implement procedures for calculating Inmate release and parole eligibility dates;

b.  develop and implement procedures for calculating and awarding sentence credits;

c.  approve Inmates for furlough and work release;

d.  approve the type of work an Inmate may perform, and the wages or sentence credits which may be given to Inmates engaged in such work; and

e.  grant, deny or revoke sentence credits; place an Inmate under less restrictive custody or more restrictive custody; or take any disciplinary actions; provided, however, that this Section shall not prevent Contractor from making recommendations to the State with respect to any of the above in conformance with Departmental policy. The Commissioner shall determine whether any action or proposed action violates the provisions of this Section.

E.20.  Contractor's Representations and Warranties.  Contractor represents and warrants to and for the benefit of State, with the Intent that State will rely thereon for purposes of entering into this Contract, as follows:

a.  Authorization. This Contract has been duly authorized, executed, and delivered by Contractor and, assuming due execution by the appropriate State officials as indicated on the signature page of this Contract and delivery by State, constitutes a legal, valid, and binding agreement enforceable against Contractor in accordance with its terms.

b.  No Violation of Contract, Articles of Incorporation or Bylaws. The consummation of the transactions contemplated by this Contract and its fulfillment of the terms hereof will not conflict with, or result in a breach of any of the terms and provisions of, or constitute a default under any indenture, mortgage, deed of trust, lease, loan agreement, license, security agreement, Contract, governmental license or permit, or other agreement or instrument to which Contractor is a party or by which its properties are bound, or any order, rule, or regulation of any court or any regulatory body, administrative agency, or their governmental body applicable to Contractor or any of its properties, except any such conflict, breach, or default which would not materially and adversely affect Contractor's ability to perform its obligations under this Contract, and will not conflict with, or result in a breach of any of the terms and provisions of, or constitute a default under, the Articles of Incorporation (or other corresponding charter document) or Bylaws of Contractor.

c.  No Defaults under Agreements. Contractor is not in default nor is there any event in existence which, with notice or the passage of time or both, would constitute a default by Contractor, under any indenture, mortgage, deed of trust, lease, loan agreement, license, security agreement, Contract, governmental license or permit, or other agreement or instrument to which it is a party or by which any of its properties are bound and which default would materially and adversely affect Contractor's ability to perform its obligations under this Contract.

d.  Compliance with Laws. Contractor, its officers and directors purporting to act on behalf of Contractor or such officers and directors have been conducting business in compliance with all applicable laws, rules, and regulations of the jurisdictions in which Contractor is conducting business including all safety laws and laws with respect to worker's compensation, discrimination in hiring, promotion or pay of employees. Contractor warrants that Contractor, and its current and former officers and directors have no convictions regarding criminal activity;

45



       (1)     no pending charges regarding criminal activity; or

       (2)     to their knowledge, no investigations on-going by any state, local or federal authorities regarding any possible criminal activity, except as provided in writing.

e.     No Litigation. There is not now pending or, to the knowledge of Contractor, threatened, any action, suit, or proceeding to which Contractor is or may be a party, before or by any court or governmental agency or body, which might result in any material adverse change in Contractor's ability to perform its obligations under this Contract, or any such action, suit, or proceeding related to environmental or civil rights matters; and no labor disturbance by the employees of Contractor exists or is imminent which might materially and adversely affect Contractor's ability to perform its obligations under this Contract.

f.     Disclosure. There is no material fact which materially and adversely affects or in the future will (so far as Contractor can now reasonably foresee) materially and adversely affect Contractor's ability to perform its obligations under this Contract which has not been accurately set forth in this Contract or otherwise accurately disclosed in writing to State by Contractor prior to the date hereof.

g.     Opinion of Contractor's Counsel. Contractor shall furnish to State an opinion of counsel in connection with this Contract dated as of the date of the Contract. Such opinion shall address the Contractor's compliance with applicable law, affirm its authority to enter into this Contract, indicate that the Contractor is not currently in litigation or have notice of litigation that could cause the Contractor not to perform the terms of this Contract, and affirm the enforceability of this Contract in accordance with its terms.

E.21.   Binding Nature. This Contract shall not be binding until the State has received evidence of insurance required by Section E.17.

E.22.   Terminology and Definitions. All personal pronouns used in this Contract, whether used in the masculine, feminine, or neutral gender, shall include all other genders; the singular shall include the plural and the plural shall include the singular.

E.23.   Change In Owners. Contractor shall notify the State in writing of any change of ownership of the Contractor, through sale or merger, which occurs during the term of the Contract. Contractor shall inform the State fully of the financial ability of the new ownership to fully comply with the terms and conditions of the Contract. The State reserves the right to terminate the Contract in the event of a change in ownership without penalty to the State or to consider the failure to comply with the notification or financial reporting provisions as a Breach by the Contractor.

E.24.   Release. Contractor, upon final payment of the amount due under this Contract, releases the State, its officers and employees, from all liabilities, claims and obligations whatsoever arising from or under this Contract. Contractor agrees not to purport to bind the State to any obligation not expressly assumed herein by the State.

E.25.   Subcontracting and Assignment.

The Contractor shall provide that all subcontracts may be assignable to the State at the State's sole discretion. Any subcontract shall also provide that the State shall not be responsible for any outstanding liability to the subcontractors incurred by the Contractor and that the State may terminate such subcontracts upon giving thirty days prior written notice with or without cause.

Notwithstanding any use of approved subcontractors, the Contractor shall be the State's prime contractor and shall be responsible for all work performed.

E.26.   Research Projects. Contractor shall not publish or disseminate any findings based on data obtained from the operation of the Contract or engage in any research projects without the prior written consent of the Department.

46

CCI 000979


E.27. Waiver. No consent, waiver or excuse of any Breach of any of the terms or conditions of this Contract shall be held to be a consent, waiver, or excuse of any other or subsequent Breach; nor shall any such waiver or excuse be valid or binding unless the same shall be in writing and approved and executed by the party alleged to have granted the waiver as indicated on the signature page of the Contract.

E.28. Third Party Beneficiary. Neither the Contractor nor the State intends to create rights for any third party by the Contract and no third party beneficiary rights are created hereby. Third parties shall mean all persons except the State and the Contractor, including but not limited to employees of Contractor, subcontractors of Contractor and Inmates located at the Facility.

E.29. Laws. The Contractor shall comply with all applicable federal, state, and local constitutions, laws, and regulations, court decisions, Court Orders, and any applicable state and federal orders in the performance of the Contract, which may be in effect during the term of this Contract.

E.30. Attorney Fees. The Contractor agrees that in the event either party deems it necessary to take legal action to enforce any provision of the Contract and in the event the State prevails, the Contractor shall pay all expenses of such action, including but not limited to the State's attorney fees and costs of all stages of the litigation.

E.31. Approvals. Any policies, procedures or other documents contained or referenced in this Contract subject to the State's approval under the terms this Contract shall remain subject to State prior written approval whenever they are revised, amended, replaced or supplemented. Contractor agrees to accept and implement any revisions, alterations or supplements suggested by the State to any document, plan, policy or procedure which requires State approval.

E.32. Fraud/Misrepresentation. If, in the course of any stage under the term of the Contract, the Contractor commits fraud, misrepresentation or conspiracy to defraud the State, the State shall have the right to pursue any remedies described in Section E.14, and/or pursue any criminal sanctions allowed by law.

E.33. Financial Termination. The State may terminate the Contract without penalty to the State in the event the Contractor:

    a.    admits in writing its inability to pay its debts;

    b.    makes a general assignment for the benefit of creditors;

    c.    suffers a decree or order appointing a receiver or trustee for it or substantially all of its property to be entered and, if entered without its consent, not to be stayed or discharged within 60 days;

    d.    suffers proceedings under any law relating to bankruptcy, insolvency, or the reorganization or relief of debtors to be instituted by or against it and, if contested by Contractor, not to be dismissed or stayed within 60 days; or

    e.    suffers any judgment, unit of attachment or execution, or any similar process to be issued or levied against a substantial part of its property which is not released, stayed, bonded, or vacated within 60 days after issue or levy.

E.34. Set-Off. The State reserves the right to deduct from amounts which are or shall become due and payable to the Contractor under this or any Contract between the parties any amounts which are or shall become due and payable to the State by the Contractor. The State may withhold any amounts which may otherwise be due the Contractor without waiver of any other remedy or damages available to the State under this Contract at law or at equity.

E.35. Construction. The parties agree that should a dispute arise involving the construction or interpretation of this Contract, it shall not be construed or interpreted in favor of either party.

47



E.36. <u>Written Notices</u>. The necessity of written notices herein shall be strictly construed.

E.37. <u>Implied Covenants or Agreements.</u> The State shall be bound only by the express, written terms contained herein and shall not be bound by any implied covenants or agreements.

E.38. <u>Approvals.</u> Contractor agrees to accept and implement any revisions, alterations or supplements suggested by the State to any document, plan, policy or procedure which requires State approval.

E.39. <u>Notices.</u> Failure of the State to provide any notice to Contractor described in this Contract whether or not the State had knowledge of the appropriateness of said notice shall not relieve the Contractor of its obligation to perform in accordance with the Contract and shall not be a waiver or excuse of any failure to perform.

E.40. <u>No Contingent Fees</u>. No person or entity shall be employed or retained or given anything of monetary value on a contingent fee basis to solicit or secure this Contract, except bona fide employees of Contractor (including proposed subcontractors) or bona fide established commercial or professional entities retained by Contractor for the purpose of securing business. For violation of this Section, in addition to the remedies available pursuant to Section E.14., the State shall have the right to deduct from any amount owed Contractor the amount of such commission, percentage, brokerage or contingent fee, and other benefit from the Contractor.

E.41. <u>Prison Rape Elimination Act (PREA):</u> Contractor will comply with the Prison Rape Elimination Act of 2003, 42. U.S.C. 15601 et seq., [PREA] and with all applicable PREA Standards for preventing, detecting, monitoring, investigating, and eradicating any form of sexual abuse in the performance of the Contract. Contractor acknowledges that, in addition to self-monitoring requirements imposed by such laws and standards, the State will conduct announced or unannounced compliance monitoring to include on-site monitoring. Failure to comply with PREA and PREA Standards may result in termination of the contract.

E.42 <u>Competitive Procurements</u>. This Contract provides for reimbursement of the cost of goods, materials, supplies, equipment, or contracted services. Such procurements shall be made on a competitive basis, where practical. The Contractor shall maintain documentation for the basis of each procurement for which reimbursement is paid pursuant to this Contract. In each instance where it is determined that use of a competitive procurement method was not practical, said documentation shall include a written justification, approved by the Commissioner, for such decision and non-competitive procurement.

E.43 <u>HIPAA Compliance</u>. The State and Contractor shall comply with obligations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and its accompanying regulations.

    a.     Contractor warrants to the State that it is familiar with the requirements of HIPAA and its accompanying regulations, and will comply with all applicable HIPAA requirements in the course of this Contract.

    b.     Contractor warrants that it will cooperate with the State, including cooperation and coordination with State privacy officials and other compliance officers required by HIPAA and its regulations, in the course of performance of the Contract so that both parties will be in compliance with HIPAA.

    c.     The State and the Contractor will sign documents, including but not limited to business associate agreements, as required by HIPAA and that are reasonably necessary to keep the State and Contractor in compliance with HIPAA. This provision shall not apply if information received by the State under this Contract is NOT "protected health information" as defined by HIPAA, or if HIPAA permits the State to receive such information without entering into a business associate agreement or signing another such document.

48



IN WITNESS WHEREOF,

CONTRACTOR LEGAL ENTITY NAME:

_Jakie West_     July 1, 2014

CONTRACTOR SIGNATURE        DATE

_Jakie West_     County Mayor

PRINTED NAME AND TITLE OF CONTRACTOR SIGNATORY (above)

ATTEST _Rita Crowder_ , COURT CLERK

DEPARTMENT OF CORRECTION:

_D. D. Schofield_     July 1, 2014

DERRICK D. SCHOFIELD, COMMISSIONER        DATE

49



# LIST OF APPENDICES

Appendix A.  Description of Real Property

Appendix B.  Security Addendum

Appendix C.  TDOC Policies

Appendix D.  Liquidated Damages Schedule

Appendix E.  Description of Insurance

Appendix F.  Prohibition of Illegal Immigrants

Appendix G.  Ramp Schedule

49



Appendix A.

**Property Description**

A parcel or tract of land lying in the First Civil District of Trousdale County, State of Tennessee, and being more particularly described as follows:

Commencing at the northwest corner of the Four Lake Regional Industrial Development Authority property as of record in Deed Book 72, page 265, Register's Office for Trousdale County, Tennessee, said point being an angle iron found and having Tennessee State Plane Coordinates of N = 738,901.68 feet and E = 1,938,049.05 feet (NAD 83), thence South 51° 23' 44" East, 4751.08 feet to an iron pin set, said point being the TRUE POINT OF BEGINNING and being the northeast corner of the herein described tract, thence South 04°00'47" East, a distance of 794.56 feet; thence North 84°19'10" East, a distance of 808.03 feet; thence South 7°32'23" East, a distance of 1196.99 feet: South 38° 24'28"W 215.61 feet; thence South 84°21'19" West, a distance of 1363.05 feet to the beginning of a curve to the left having an arc length of 296.46 feet, a radius of 825.00 feet and a central angle of 20°35'20" and being subtended by a chord which bears S74°03'39"W 294.87 feet; thence South 63°45'58" West tangent to said curve, a distance of 81.02 feet to the beginning of a curve to the right having an arc length of 399.96 feet, a radius of 875.00 feet and a central angle of 26°11'22" and being subtended by a chord which bears S76°51'39"W 396.48 feet; thence continuing with a curve to the right having an arc length of 151.84 feet, a radius of 150.00 feet and a central angle of 57°59'56" and being subtended by a chord which bears N61°02'42"W 145.44 feet; thence North 32°02'44" West tangent to said curve, a distance of 561.03 feet to the beginning of a curve tangent to said line; thence with a curve to the right having an arc length of 368.26 feet, a radius of 500.00 feet and a central angle of 42°11'57" and being subtended by a chord which bears N10°56'45"W 359.99 feet; thence North 10°09'13" East tangent to said curve, a distance of 1040.72 feet to the beginning of a curve tangent to said line; thence with a curve to the right having an arc length of 500.42 feet, a radius of 775.00 feet and a central angle of 36°59'47" and being subtended by a chord which bears N28°39'07"E 491.78 feet; thence North 47°09'00" East tangent to said curve, a distance of 21.38 feet to the beginning of a curve tangent to said line; thence with a curve to the right having an arc length of 132.84 feet, a radius of 85.00 feet and a central angle of 89°32'40" and being subtended by a chord which bears S88°04'40"E 119.73 feet; thence with a curve to the left having an arc length of 766.44 feet, a radius of 630.00 feet and a central angle of 69°42'15" and being subtended by a chord which bears S78°09'27"E 720.04 feet; thence North 66°59'25" East tangent to said curve, a distance of 488.83 feet to the Point of Beginning and containing 4,683,964 square feet or 107.53 Acres, more or less.

Being a portion of the property acquired by Four Lake Regional Industrial Development Authority from the United States Of America, Tennessee Valley



Authority by Special Warranty and Quit Claim deed of record in Deed Book 72, page 265, Register's Office for Trousdale County, Tennessee

CCI-D 000985



# FEDERAL BUREAU OF INVESTIGATION
## CRIMINAL JUSTICE INFORMATION SERVICES
## SECURITY ADDENDUM

The goal of this document is to augment the CJIS Security Policy to ensure adequate security is provided for criminal justice systems while (1) under the control or management of a private entity or (2) connectivity to FBI CJIS Systems has been provided to a private entity (contractor). Adequate security is defined in Office of Management and Budget Circular A-130 as "security commensurate with the risk and magnitude of harm resulting from the loss, misuse, or unauthorized access to or modification of information."

The intent of this Security Addendum is to require that the Contractor maintain a security program consistent with federal and state laws, regulations, and standards (including the CJIS Security Policy in effect when the contract is executed), as well as with policies and standards established by the Criminal Justice Information Services (CJIS) Advisory Policy Board (APB).

This Security Addendum identifies the duties and responsibilities with respect to the installation and maintenance of adequate internal controls within the contractual relationship so that the security and integrity of the FBI's information resources are not compromised. The security program shall include consideration of personnel security, site security, system security, and data security, and technical security.

The provisions of this Security Addendum apply to all personnel, systems, networks and support facilities supporting and/or acting on behalf of the government agency.

1.00    Definitions

1.01    Contracting Government Agency (CGA) - the government agency, whether a Criminal Justice Agency or a Noncriminal Justice Agency, which enters into an agreement with a private contractor subject to this Security Addendum.

1.02    Contractor - a private business, organization or individual which has entered into an agreement for the administration of criminal justice with a Criminal Justice Agency or a Noncriminal Justice Agency.

2.00    Responsibilities of the Contracting Government Agency.

2.01    The CGA will ensure that each Contractor employee receives a copy of the Security Addendum and the CJIS Security Policy and executes an acknowledgment of such receipt and the contents of the Security Addendum. The signed acknowledgments shall remain in the possession of the CGA and available for audit purposes. The acknowledgement may be signed by hand or via digital signature (see glossary for definition of digital signature).

3.00    Responsibilities of the Contractor.

3.01    The Contractor will maintain a security program consistent with federal and state laws, regulations, and standards (including the CJIS Security Policy in effect when the contract is executed and all subsequent versions), as well as with policies and standards established by the Criminal Justice Information Services (CJIS) Advisory Policy Board (APB).

4.00    Security Violations.

Case 3:22-cv-00093   Document 37-4   Filed 05/25/22   Page 54 of 86 PageID #: 885   CCID 000986



4.01    The CGA must report security violations to the CJIS Systems Officer (CSO) and the Director, FBI, along with indications of actions taken by the CGA and Contractor.

4.02    Security violations can justify termination of the appended agreement.

4.03    Upon notification, the FBI reserves the right to:

   a. Investigate or decline to investigate any report of unauthorized use;

   b. Suspend or terminate access and services, including telecommunications links. The FBI will provide the CSO with timely written notice of the suspension. Access and services will be reinstated only after satisfactory assurances have been provided to the FBI by the CJA and Contractor.   Upon termination, the Contractor's records containing CHRI must be deleted or returned to the CGA.

5.00    Audit

5.01    The FBI is authorized to perform a final audit of the Contractor's systems after termination of the Security Addendum.

6.00    Scope and Authority

6.01    This Security Addendum does not confer, grant, or authorize any rights, privileges, or obligations on any persons other than the Contractor, CGA, CJA (where applicable), CSA, and FBI.

6.02    The following documents are incorporated by reference and made part of this agreement: (1) the Security Addendum; (2) the NCIC 2000 Operating Manual; (3) the CJIS Security Policy; and (4) Title 28, Code of Federal Regulations, Part 20.  The parties are also subject to applicable federal and state laws and regulations.

6.03    The terms set forth in this document do not constitute the sole understanding by and between the parties hereto; rather they augment the provisions of the CJIS Security Policy to provide a minimum basis for the security of the system and contained information and it is understood that there may be terms and conditions of the appended Agreement which impose more stringent requirements upon the Contractor.

6.04    This Security Addendum may only be modified by the FBI, and may not be modified by the parties to the appended Agreement without the consent of the FBI.

6.05    All notices and correspondence shall be forwarded by First Class mail to:


Assistant Director

Criminal Justice Information Services Division, FBI

1000 Custer Hollow Road

Clarksburg, West Virginia  26306



# FEDERAL BUREAU OF INVESTIGATION
## CRIMINAL JUSTICE INFORMATION SERVICES
### SECURITY ADDENDUM

## CERTIFICATION

I hereby certify that I am familiar with the contents of (1) the Security Addendum, including its legal authority and purpose; (2) the NCIC Operating Manual; (3) the CJIS Security Policy; and (4) Title 28, Code of Federal Regulations, Part 20, and agree to be bound by their provisions.

I recognize that criminal history record information and related data, by its very nature, is sensitive and has potential for great harm if misused. I acknowledge that access to criminal history record information and related data is therefore limited to the purpose(s) for which a government agency has entered into the contract incorporating this Security Addendum. I understand that misuse of the system by, among other things: accessing it without authorization; accessing it by exceeding authorization; accessing it for an improper purpose; using, disseminating or re-disseminating information received as a result of this contract for a purpose other than that envisioned by the contract, may subject me to administrative and criminal penalties. I understand that accessing the system for an appropriate purpose and then using, disseminating or re-disseminating the information received for another purpose other than execution of the contract also constitutes misuse. I further understand that the occurrence of misuse does not depend upon whether or not I receive additional compensation for such authorized activity. Such exposure for misuse includes, but is not limited to, suspension or loss of employment and prosecution for state and federal crimes.

_____          _____
Printed Name/Signature of Contractor Employee          Date


_____          _____
Printed Name/Signature of Contractor Representative          Date


_____
Organization and Title of Contractor Representative


8/9/2013
CJISD-ITS-DOC-08140-5.2

H-7



## CURRENT APPLICABLE TDOC POLICIES
### for
### TROUSDALE COUNTY
April 3, 2014

| Policy Number | Policy Title | Effective Date | CCA Chapter # |
|---|---|---|---|
| 100.00 | PCN 14-13 | 4/1/14 | |
| 101.04.1 | Policies and Procedures Distribution/ Inmate Access | 3/1/14 | 1 |
| 101.06 | Policy and Procedure Exemptions | 3/1/14 | 1 |
| 103.01 | Quarterly Reports | 8/15/11 | 1 |
| 103.02 | Incident Reporting | 1/15/14 | 5 |
| 103.03 | Open Parole Hearings | 2/15/12 | 21 |
| 103.04 | Provision of Information and Access to the Media and Public | 1/1/13 | 1 |
| 103.05 | Inmate Emergency Notification | 5/1/12 | 5 |
| 103.07 | Annual Inspections | 10/1/12 | 1 |
| 103.10 | Title VI-Civil Rights Act of 1964 PCN 13-37 | 10/1/12 9/15/13 | 1 |
| 103.11 | Notification to Victim/Member of the Public and Confidentiality of Information | 9/1/13 | 1 |
| 103.11.1 | Victim-Offender Dialogue Program | 5/15/10 | 1 |
| 103.12 | Documentation of Significant Offender Related Contacts | 3/1/11 | 1 |
| 103.13 | Administration of Victim Services PCN 10-31 | 8/1/10 11/1/10 | 1 |
| 103.14 | Victim Impact Program | 11/1/10 | 1 |
| 103.15 | Central Communication Center | 01/15/14 | |
| 105.03 | Diplomatic Access for Foreign National Inmates | 11/1/10 | 14 |
| 107.01 | Investigations Unit Authority, Responsibility, Personnel – Selection and Training PCN 13-22 | 12/1/12 5/1/13 | 1 |
| 107.02 | Investigations Unit Operational Procedures PCN 13-23 | 12/1/12 5/1/13 | 1 |
| 107.03 | Institutional Internal Affairs Investigators, Selection, and Responsibilities | 12/1/12 | 1 |
| 107.04 | Office of Investigations and Compliance | 12/1/12 | 1 |
| 108.01 | Facility Construction, Renovation, & Physical Plant Maintenance PCN 13-33 | 4/15/13 8/15/13 | 7 |
| 108.02 | Design and Construction of Prison Facilities | 8/15/12 | 7 |
| 108.03 | Building and Safety Codes | 10/1/12 | 7 |
| 109.04 | Restriction of TOMIS and State Network Access by Offenders | 10/15/07 | 1 |
| 109.05 | Acceptable Use Network Resources PCN 11-12 | 12/1/06 5/1/11 | 1 |



| 110.08 | Level of Service/Case Management Inventory Training | 6/15/10 | 18 |
| 112.02 | Self Contained and Emergency Response Breathing Apparatus | 5/1/11 | 8 |
| 112.03 | Occupational Health and Safety | 10/1/13 | 8 |
| 112.04 | Fire and Emergency Evacuation Plan<br>PCN 13-55 | 11/1/11<br>3/11/13 | 8 |
| 112.05 | Monitoring and Conducting Fire Prevention and Building Construction Safety Inspections | 11/1/11 | 8 |
| 112.08 | Personal Hygiene Resources for Inmates<br>PCN 13-8 | 3/1/11<br>4/15/13 | 13 |
| 112.09 | Control and Use of Flammable, Toxic, and Caustic Materials | 4/1/14 | 8 |
| 112.11 | Smoke-Free Policy (TDOC Institutions and Academy)<br>PCN 12-3<br>PCN 11-1 | 1/15/10<br>1/1/12<br>2/1/11 | 8 |
| 113.01 | Health Services Administration | 3/1/12 | 13 |
| 113.02 | Health Care Facilities, Equipment, and Supplies | 8/15/11 | 13 |
| 113.03 | Health Services Disaster Procedures Plan | 10/15/11 | 13 |
| 113.04 | Medical Requirements for the Release/Transfer of Inmates | 3/1/12 | 13 |
| 113.05 | Death and Autopsies<br>PCN 13-39 | 6/1/12<br>10/15/13 | 13 |
| 113.08 | Prosthetics and Durable Medical Equipment<br>PCN 11-38 | 11/1/10<br>11/1/11 | 13 |
| 113.09 | Health Services Quality Improvement<br>PCN 13-45 | 8/15/12<br>11/15/13 | 13 |
| 113.10 | Credentials of Health Care Personnel | 11/1/10 | 13 |
| 113.11 | Clinical and Nursing Protocols | 11/1/11 | 13 |
| 113.12 | Specialty Consultant Services<br>PCN 11-39 | 7/15/11<br>11/1/11 | 13 |
| 113.13 | Employee Health Care | 12/15/13 | 13 |
| 113.14 | Inmate Workers in Health Care | 8/15/11 | 13 |
| 113.15 | Inmate Co-payment of Health Services | 6/1/11 | 13 |
| 113.20 | Intake Physical Examination<br>PCN 12-14 | 8/1/10<br>8/15/12 | 13 |
| 113.21 | Health Classification | 4/1/10 | 13 |
| 113.22 | Health Orientation | 1/1/12 | 13 |
| 113.23 | Initial Health Screening and Evaluation | 5/15/11 | 13 |
| 113.24 | Inmates Assigned to Jobs in Food Services | 7/15/11 | 13 |
| 113.30 | Access to Health Care | 6/15/11 | 13 |
| 113.31 | Sick Call/Assessment of Health Complaints | 2/15/14 | 13 |
| 113.32 | Levels of Care | 2/1/11 | 13 |
| 113.34 | Extended Health Services | 9/15/12 | 13 |
| 113.33 | Telehealth | 12/1/12 | 13 |
| 113.35 | Therapeutic Diets<br>PCN 13-28 | 12/1/11<br>6/1/13 | 13 |
| 113.36 | Hunger Strike | 11/1/11 | 13 |
| 113.40 | Health Education | 6/1/13 | 13 |
| 113.41 | Periodic Health Appraisal | 5/1/11 | 13 |



| 113.42 | Communicable Diseases<br>PCN 11-41 | 11/1/10<br>11/1/11 | 13 |
| 113.43 | Immunizations: Inmate Population | 5/1/13 | 13 |
| 113.44 | Tuberculosis (TB) Control | 6/15/11 | 13 |
| 113.45 | AIDS: Education, Prevention and Case Management | 6/1/12 | 13 |
| 113.50 | Health Records | 2/1/11 | 13 |
| 113.51 | Consent/Refusal of Treatment | 10/1/12 | 13 |
| 113.52 | Release of Protected Health Information | 8/15/11 | 13 |
| 113.53 | Accident/Injury Reporting | 10/15/11 | 13 |
| 113.54 | Health Statistics Collection and Reporting | 6/1/12 | 13 |
| 113.60 | Dental Services Administration | 2/1/12 | 13 |
| 113.62 | Dental Specialties | 1/1/12 | 13 |
| 113.70 | Management of Pharmaceuticals<br>PCN 12-7<br>PCN 11-43 | 8/15/11<br>3/1/12<br>11/1/11 | 13 |
| 113.71 | Administration/Distribution of Medication<br>PCN 11-44 | 8/15/11<br>11/1/11 | 13 |
| 113.72 | Management of Hazardous Medical Devices<br>PCN 14-2 | 6/1/13<br>2/15/14 | 13 |
| 113.78 | Radiology Services | 12/1/11 | 13 |
| 113.80 | Mental Health Services Administration and Delivery | 10/1/12 | 13 |
| 113.81 | Mental Health Documentation | 8/1/10 | 13 |
| 113.81.1 | Mental Health Statistics and Reports | 9/15/12 | 13 |
| 113.82 | Mental Health Referral Triage Process | 9/15/12 | 13 |
| 113.82.1 | Transition for Offenders with Mental Illness<br>PCN 12-12<br>PCN 10-21 | 3/1/09<br>8/15/12<br>7/1/10 | 13 |
| 113.83 | Mental Health Evaluation and Mental Health Treatment Plan<br>PCN 13-47 | 12/1/11<br>1/15/14 | 13 |
| 113.84 | Clinical Assessments, Mental Health Appraisals,<br>and Psychological Testing | 3/15/12 | 13 |
| 113.85 | Mental Health Treatment Team | 6/1/12 | 13 |
| 113.87 | Mental Health Levels of Care | 9/15/12 | |
| 113.88 | Mental Health Seclusion and Suicide Monitoring | 7/15/11 | 13 |
| 113.89 | Psychotropic Medication/Involuntary Treatment | 8/15/11 | 13 |
| 113.92 | DNA Specimen Collection and Documentation<br>PCN 13-46 | 10/15/12<br>12/15/13 | 13 |
| 113.93 | Detoxification | 2/15/14 | 13 |
| 113.94 | Health Care Personnel and Medical Drug Screening | 4/1/14 | 13 |
| 114.02 | Research Projects | 6/1/13 | 5 |
| 115.01 | Standards for Volunteers and Coordination of Community<br>Involvement<br>PCN 13-21 | 6/1/12<br><br>4/15/13 | 22 |
| 117.01 | Administrative Guidelines/Educational Programs | 3/15/13 | 20 |
| 117.02 | Academic Programs | 3/1/14 | 20 |
| 117.03 | Vocational Programs | 6/1/13 | 20 |



| 117.04 | Career Management for Success and Release for Success Programs<br>PCN 12-16 | 8/1/11<br>8/15/12 | 21 |
|---|---|---|---|
| 117.05 | Title One Programs | 12/15/13 | 20 |
| 117.06 | Inmate Academic/Vocational Education Records<br>PCN 11-47 | 3/1/11<br>11/15/11 | 20 |
| 117.07 | Special Education Programs | 5/1/11 | 20 |
| 118.01 | Religious Programs<br>Religious Property Memo | 2/15/14<br>5/11/11 | 20 |
| 200.00 | PCN 14-14 | 4/1/14 | |
| 202.05 | Notary Commissions | 8/15/12 | 14 |
| 205.02 | Contract Monitoring | 6/15/11 | 1 |
| 206.01 | State Personal Property | 10/15/13 | 2 |
| 208.01 | Trust Fund Accounts | 3/15/14 | 2 |
| 208.03 | Collection of Taxes and Other Amounts Owed by Offenders | 10/1/11 | 2 |
| 208.06 | Money Found on Inmates and/or Institution | 4/1/13 | 2 |
| 208.07 | Reclaiming Confiscated Currency | 1/1/12 | 2 |
| 208.08 | Inmate Telephone Debit System | 12/15/12 | 2 |
| 208.09 | Arts and Crafts Sales | 2/15/14 | 2 |
| 208.10 | Voluntary Participation and Agreement with Wage Deductions – PIE Program | 3/1/14 | 19 |
| 216.01 | Tennessee Public Records Act and Reproduction of Public Records | 11/1/12 | |
| 301.04 | Job Requirements<br>PCN 13-30 | 6/1/13<br>7/1/13 | 3 |
| 305.03 | Employee/Offender Interaction<br>PCN 13-11 | 5/1/11<br>4/15/13 | 3 |
| 401.01 | PCN 14-16 | 4/1/14 | |
| 401.01 | Classification Programs Administration | 4/1/14 | 18 |
| 401.02 | Receiving and Receipting of Inmates | 4/1/14 | 17 |
| 401.03 | Organization of the Classification Committee | 4/1/14 | 18 |
| 401.04 | Initial Classification Process | 4/1/14 | 18 |
| 401.06 | Custody Overrides<br>PCN 11-19 | 11/15/09<br>7/1/11 | 18 |
| 401.08 | Classification Hearing Process | 9/1/10 | 18 |
| 403.01 | Institutional Transfers<br>PCN 12-23 | 6/1/10<br>10/1/12 | 18 |
| 403.01.1 | Transfer of Records | 9/1/10 | 6 |
| 403.02 | Central Transportation System | 7/15/11 | 9 |
| 403.03 | Interstate Transportation | 3/1/12 | 9 |
| 403.05 | Population Reporting<br>PCN 11-18 | 8/15/07<br>7/1/11 | 6 |
| 404.05 | Orientation Program | 9/15/08 | 17 |
| 404.07 | Minimum Custody Placement | 8/15/11 | 18 |
| 404.07.1 | Notification to Committing Jurisdictions | 9/15/08 | 18 |
| 404.09 | Protective Services | 3/15/14 | 10 |



| 404.10 | Administrative Segregation, Placement and Release | 8/1/10 | 10 |
|---|---|---|---|
| 500.00 | PCN 14-17 | 4/1/14 | |
| 501.01 | Inmate Grievance Procedures<br>PCN 13-38<br>PCN 13-10<br>*INMATE GRIEVANCE HANDBOOK* | 10/1/12<br>9/15/13<br>4/15/13<br>4/2013 | 14 |
| 502.01 | Uniform Disciplinary Procedures<br>PCN 12-9 | 12/1/10<br>6/1/12 | 15 |
| 502.02 | Disciplinary Punishment Guidelines | 6/1/12 | 15 |
| 502.04 | Rule Books for Inmates<br>PCN 11-22 | 5/1/10<br>8/1/11 | 14 |
| 502.05 | Definitions of Disciplinary Offenses | 3/15/14 | 15 |
| 502.06 | Prison Rape Elimination Act (PREA) Implementation and Compliance<br>PCN 14-10 | 4/15/13<br>4/1/14 | 14 |
| 502.06.1 | Prison Rape Elimination Act (PREA) Screening, Classification, Education, and Monitoring<br>PCN 14-7<br>PCN 13-35 | 4/15/13<br>4/1/14<br>8/15/13 | 14 |
| 502.06.2 | Prison Rape Elimination Act (PREA) Allegations, Investigations, and SART Teams<br>PCN 14-8 | 5/1/13<br>4/1/14 | 14 |
| 502.06.3 | Medical, Mental Health, Victim Advocacy, and Community Support Services for PREA Victims<br>PCN 14-9 | 10/1/13<br>4/1/14 | 14 |
| 503.04 | Inmate Councils | 1/1/12 | |
| 503.07 | Inmate Marriages | 2/15/14 | 14 |
| 503.08 | Telephone Privileges | 4/1/14 | 16 |
| 503.11 | Motor Vehicle Operation by Inmates | 11/15/12 | 19 |
| 504.01 | Inmate Personal Property<br>Inmate Personal Property Memo | 12/1/13<br>12/1/13 | 17 |
| 504.02 | Inmate Personal Property Accounting System | 12/1/13 | 17 |
| 504.04 | Inmate Pay | 10/1/13 | 19 |
| 504.05 | Inmate Clothing<br>PCN 13-1 | 1/15/11<br>1/1/13 | 17 |
| 505.01 | Sentence Credits | 6/1/10 | 18 |
| 505.07 | Inmate Programming (Jobs/Classes/Treatment)<br>PCN 12-11<br>PCN 11-32 | 5/1/10<br>7/15/12<br>8/15/11 | 19 |
| 505.08 | Community Service Work Projects | 3/15/12 | 19 |
| 505.09 | Coordination and Cooperation Between TDOC and TRICOR at the Facility Level (SCCC is required to follow this policy) | 1/15/11 | 20 |
| 505.10 | Work Release Job Placement | 6/1/11 | 18 |
| 506.01 | Custody and Security Levels | 1/1/12 | 18 |
| 506.06 | Searches | 2/15/14 | 9 |
| 506.07 | Use of Restraint Devices<br>PCN 12-10<br>PCN 11-45 | 7/15/11<br>7/15/12<br>11/1/11 | 9 |
| 506.07.1 | Use of Chemical Agents | 5/15/13 | 9 |
| 506.07.2 | Statewide Tactical Programs | 4/1/14 | 4 |
| 506.07.5 | Use of Specialty Impact Weapons/Munitions | 10/15/09 | 9 |



| 506.08 | Use of Force/Use of Weapons for Deadly Force<br>PCN 13-42 | 6/1/13<br>11/15/13 | 9 |
|---|---|---|---|
| 506.10 | Escorted Emergency Visits | 10/1/11 | 9 |
| 506.11 | Population Count<br>PCN 12-25 | 6/1/12<br>11/1/12 | 9 |
| 506.12 | Escapes | 4/1/10 | 8 |
| 506.13 | Identification of Inmates | 12/15/13 | 17 |
| 506.14 | Housing Assignments<br>PCN 13-12 | 7/15/12<br>4/15/13 | 17 |
| 506.14.2 | Housing and Programming of Youthful Offenders<br>PCN 13-14 | 10/1/11<br>4/15/13 | 17 |
| 506.15 | Disposition of Contraband<br>PCN 12-13 | 2/15/12<br>8/15/12 | 9 |
| 506.16 | Living Conditions for Segregated Inmates<br>PCN 13-15 | 2/15/10<br>4/15/13 | 10 |
| 506.20 | Emergency Operations Plans | 4/1/14 | 8 |
| 506.21 | Inmate Drug/Alcohol Testing and Sanctions<br>PCN 13-44 | 8/15/12<br>11/15/13 | 9 |
| 506.25 | Security Threat Group Intelligence | 2/1/11 | 9 |
| 506.26 | Security Threat Group Program Identification, Placement,<br>and Operation | 3/1/08 | 9 |
| 506.26.1 | Security Management Unit Operations | 5/1/13 | 9 |
| 506.27 | Correctional Intelligence Initiative | 7/15/11 | 9 |
| 506.28 | Commissioner Security Alert | 3/1/11 | 5 |
| 507.01 | Visitation | 4/1/14 | 16 |
| 507.01.1 | Non-Contact Visitation | 7/15/11 | 16 |
| 507.02 | Inmate Mail | 6/1/12 | 16 |
| 508.01 | Social Service Programs<br>PCN 11-15 | 11/1/10<br>6/15/11 | 20 |
| 508.04 | Counseling Services<br>PCN 13-40 | 9/15/13<br>10/1/13 | 20 |
| 510.01 | Recreation Programs | 6/1/11 | 20 |
| 510.02 | Arts & Crafts Program & the Purchase Of<br>Arts & Crafts Items/Vocational Services | 7/15/11 | 20 |
| 511.01 | Furloughs | 7/15/11 | 21 |
| 511.01.1 | Medical Furloughs | 5/15/13 | 21 |
| 511.03 | Release Procedures | 3/15/14 | 21 |
| 511.04 | Coordination/Cooperation with Board of Probation and Parole | 3/15/14 | 21 |
| 511.05 | Identification for Post Release | 1/1/13 | 21 |
| 512.01 | Inmate Institutional Records<br>PCN 13-9 | 3/1/12<br>4/15/13 | 6 |
| 512.02 | Sex Offender Registry | 2/15/14 | |
| 513.02 | Transition Center Programming<br>PCN 13-31 | 8/15/12<br>8/1/13 | 18 |
| 513.04 | Transitional Assessment Plan (TAP) | 2/1/10 | 18 |
| 513.04.1 | Transition Assessment Plan – Behavioral Intervention Goals<br>(TAP-BIG) | 5/1/11 | 18 |
| 513.05 | Inmate Monitoring | 11/15/09 | 18 |



| 513.06 | Level of Service/Case Management Inventory | | |
|---|---|---|---|
| | Quality Assurance | 3/1/11 | 18 |
| | PCN 13-32 | 8/15/13 | |
| 513.07 | Substance Use Disorder Programming and Services Delivery | 2/15/14 | 18 |

Appendix D.



## Appendix E    Liquidated Damages Schedule

Liquidated damages will be calculated in accordance with the following formula:

$$V \times B \times \$250.00 \text{ where}$$

V = Relative value of Service Area                    B = Relative value of the Breach

Service Area 1 - Value = 5:    Inmate Classification, Custody and Movement, Access to Courts, Disciplinary Procedures, Inmate Relations, Sentence Reduction Credits, Sentence Computation, Inmate Records:

| Contractor Breach: | B |
|---|---|
| Failure to Staff | 5 |
| Failure to Document | 4 |
| Failure to Report | 3 |
| Failure to Comply with Other Applicable Standards | 5 |

Service Area 2 - Value = 4:    General Administration, Personnel and Training, Security and Control, Use of Force, Health/Medical/Mental Health/Dental, Inmate Work and Education, Transportation, Inmate Drug Testing:

| Contractor Breach: | B |
|---|---|
| Failure to Staff | 5 |
| Failure to Document | 3 |
| Failure to Report | 2 |
| Failure to Comply with Other Applicable Standards | 5 |

Service Area 3 - Value = 3:    Equipment, Supplies and Perishables, Sanitation and Hygiene, Facility Management, Maintenance, and Utilities:

| Contractor Breach: | B |
|---|---|
| Failure to Staff | 4 |
| Failure to Document | 2 |
| Failure to Report | 1 |
| Failure to Comply with Other Applicable Standards | 4 |

Service Area 4 - Value = 2:    Personal Property, Visitation, Food Service, Laundry and Clothing, Recreation, Library, Commissary, Religious Services, Volunteer Services, Released Inmates, Telephone and Correspondence, Inmate Trust Fund, Community Relations, and other requirements of the Standards:

| Contractor Breach: | B |
|---|---|
| Failure to Staff | 4 |
| Failure to Document | 1 |
| Failure to Report | 1 |
| Failure to Comply with Other Applicable Standards | 4 |

CCID 000956

Appendix E.



 **ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
04/04/2011

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME | | |
|---|---|---|---|
| Willis of Tennessee, Inc.<br>26 Century Blvd.<br>P. O. Box 305191<br>Nashville, TN 37230-5191 | PHONE (A/C, No, Ext): 877-945-7378 | FAX (A/C, No): 888-467-2378 | |
| | E-MAIL ADDRESS: certificates@willis.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: Catlin Specialty Insurance Company | | 15989-001 |
| Corrections Corporation of America<br>10 Burton Hills Blvd.<br>Nashville, TN 37215 | INSURER B: National Union Fire Insurance Company | | 19445-002 |
| | INSURER C: Chartis Specialty Insurance Company | | 26883-008 |
| | INSURER D: New Hampshire Insurance Company | | 23841-001 |
| | INSURER E: Affiliated FM Insurance Company | | 10014-001 |
| | INSURER F: | | |

## COVERAGES    CERTIFICATE NUMBER: 15766731    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADD'L INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE X OCCUR | Y | | XGC2015700412 | 4/1/2011 | 4/1/2012 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ 5,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>POLICY PRO-JECT X LOC | | | | | | GENERAL AGGREGATE | $ 5,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 5,000,000 |
| | | | | | | | | $ |
| B | **AUTOMOBILE LIABILITY**<br>X ANY AUTO<br>ALL OWNED AUTOS SCHEDULED AUTOS<br>HIRED AUTOS NON-OWNED AUTOS | | | 4309455 | 4/1/2011 | 4/1/2012 | COMBINED SINGLE LIMIT (Ea accident) | $ 2,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| C | X UMBRELLA LIAB X OCCUR<br>EXCESS LIAB CLAIMS-MADE<br>DED X RETENTION $ 25,000 | | | 8125184 | 4/1/2011 | 4/1/2012 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | | | AGGREGATE | $ 25,000,000 |
| | | | | | | | | $ |
| D<br>B<br>B<br>D<br>E | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | AOS 061967463<br>CA 061967464<br>FL 061967465<br>TX 061967466<br>GK685 | 4/1/2011<br>4/1/2011<br>4/1/2011<br>4/1/2011<br>4/1/2011 | 4/1/2012<br>4/1/2012<br>4/1/2012<br>4/1/2012<br>4/1/2012 | X WC STATU- TORY LIMITS OTH- ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| E | Commercial Property<br>Per Loss/Location | | | | | | $250,000,000. Blanket Limit includes Real&PersProp&BusInterrupt $100,000 Deductible | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach Acord 101, Additional Remarks Schedule, if more space is required)
See Attached

## CERTIFICATE HOLDER    CANCELLATION

| | |
|---|---|
| State of Tennessee, Department of Corrections<br>Rachel Jackson Building<br>320 6th Ave., N., 4th Fl<br>Nashville, TN 37243-0465 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

Coll:3316772 Tpl:1245545 Cert:15766731    © 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD

CCD-000997



# ACORD

## ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| AGENCY | | NAMED INSURED |
|---|---|---|
| Willis of Tennessee, Inc. | | Corrections Corporation of America<br>10 Burton Hills Blvd.<br>Nashville, TN 37215 |
| POLICY NUMBER | | |
| See First Page | | |
| CARRIER | NAIC CODE | |
| See First Page | | EFFECTIVE DATE: See First Page |

### ADDITIONAL REMARKS

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: 25     FORM TITLE: CERTIFICATE OF LIABILITY INSURANCE

Workers Compensation - New Jersey
Carrier:  New Hampshire Insurance Company
Policy Number:  051967467
Policy Period: 04/01/2011 - 04/01/2012
Limits:
$1,000,000 EL Each Accident
$1,000,000 EL Disease - Each Employee
$1,000,000 EL Disease - Policy Limit

Property Locations:  Hardeman County, 2520 Union Springs Road, Whiteville, TN 38075; South Central
Correctional, 555 Forest Ave, Clifton, TN 38425; and Whiteville Correctional, 1440 Union Springs
Road, Whiteville, TN 38075.

The Certificate Holder shall be named as an Additional Insured but only with respect to liability
arising out of the Named Insured's operations.

Case 3:22-cv-00093  Document 37-4  Filed 05/25/22  Page 66 of 86  PageID #: 000998



## ATTESTATION RE PERSONNEL USED IN CONTRACT PERFORMANCE

| | |
|---|---|
| SUBJECT CONTRACT NUMBER: | 41701 |
| CONTRACTOR LEGAL ENTITY NAME: | Hartsville Trousdale County Metro Govt. |
| FEDERAL EMPLOYER IDENTIFICATION NUMBER:<br>(or Social Security Number) | Edison Vendor ID 2537 |

The Contractor, identified above, does hereby attest, certify, warrant, and assure that the Contractor shall not knowingly utilize the services of an illegal immigrant in the performance of this Contract and shall not knowingly utilize the services of any subcontractor who will utilize the services of an illegal immigrant in the performance of this Contract.

_Jakie West_

**CONTRACTOR** SIGNATURE

NOTICE: This attestation MUST be signed by an individual empowered to contractually bind the Contractor. If said individual is not the chief executive or president, this document shall attach evidence showing the individual's authority to contractually bind the Contractor.

Jakie West     County Mayor

PRINTED NAME AND TITLE OF SIGNATORY

4/28/14

DATE OF ATTESTATION

GCI 000399

## Trousdale Ramp Plan

| | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| Building G (512 GP Dorm)* | 128 | 128 | 128 | 128 | | | | | | |
| Building B (360 GP cell) | | | | | 90 | 90 | 90 | 90 | | |
| Building C (360 GP cell) | | | | | | | | | 90 | 90 |
| Building D (360 GP cell) | | | | | | | | | | |
| Building E (360 GP cell) | | | | | | | | | | |
| Building F (360 GP cell) | | | | | | | | | | |
| Building A (240 GP cell)** | | | | | | | | | | |
| Cumulative Count | 128 | 256 | 384 | 512 | 602 | 692 | 782 | 872 | 962 | 1052 |
| * We would fill with work detail inmates first. | | | | | | | | | | |
| ** Building A has 360 cell beds, but 120 are segregation | | | | | | | | | | |

and therefore are not represented on this plan.

Appendix G.



| Week 11 | Week 12 | Week 13 | Week 14 | Week 15 | Week 16 | Week 17 | Week 18 | Week 19 | Week 20 | Week 21 | Week 22 | Week 23 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| 90 | 90 | | | | | | | | | | | |
| | | 90 | 90 | 90 | 90 | | | | | | | |
| | | | | | | 90 | 90 | 90 | 90 | | | |
| | | | | | | | | | | 90 | 90 | 90 |
| | | | | | | | | | | | | |
| 1142 | 1232 | 1322 | 1412 | 1502 | 1592 | 1682 | 1772 | 1862 | 1952 | 2042 | 2132 | 2222 |
| | | | | | | | | | | | | |





| | Week 24 | Week 25 | Week 26 | Total |
|---|---|---|---|---|
| | | | | 512 |
| | | | | 360 |
| | | | | 360 |
| | | | | 360 |
| | | | | 360 |
| | | | | 360 |
| | | | | 240 |
| | 90 | 120 | 120 | |
| | 2312 | 2432 | 2552 | |
| | | | | 2552 |

**AGREEMENT**

**BETWEEN**

**TROUSDALE COUNTY, TENNESSEE**

**AND**

**CORRECTIONS CORPORATION OF AMERICA**

**THIS AGREEMENT** is hereby entered into between Corrections Corporation of America ("CCA") and Trousdale County, Tennessee ("Trousdale County").

**WHEREAS,** by way of a letter to the Tennessee Department of Correction (the "Department") dated July 23, 2013, Trousdale County requested that the Department consider Trousdale County as a potential site for future prison expansion, a copy of which is attached hereto as Exhibit A;

**WHEREAS,** by way of a letter from the Department dated October 8, 2013, the Department stated its intent to move forward with a partnership with Trousdale County to meet the State's anticipated bed demand for felony offenders in the next few years; a copy of the letter is attached hereto as Exhibit B;

**WHEREAS,** CCA owns a site that is ideally suited to meet the criteria required by the Department (as detailed in Exhibit B) and Trousdale County desires CCA to design, construct, own and operate a facility on this site to meet the Department's needs;

**WHEREAS,** CCA desires to design construct, own and operate a facility on its site to meet the Department's needs and will contribute construction, employment, utility and personal and real property tax dollars to the community in connection with its construction and operation of a facility in Trousdale County.

**NOW, THEREFORE,** in consideration of the mutual promises and covenants contained herein, the parties agree as follows:

1. Trousdale County will negotiate an inmate Incarceration Agreement with the Department and any related agreements necessary to effectuate the partnership between Trousdale County and the Department as contemplated in the letters attached hereto as Exhibits A and B (the "Incarceration Agreement(s)"). Any such agreement or agreements negotiated are subject to the review and approval of CCA and the Trousdale County attorney and shall not be executed or considered final until approved by the Trousdale County Commission.

2. CCA shall design, construct, own and operate a facility on its site in Hartsville, Tennessee that meets the criteria laid out by the Department in Exhibit B (the "Facility")

CCA 003003

and the County shall house State of Tennessee inmates received under the Incarceration Agreement(s) in the Facility.

3. On behalf of Trousdale County, CCA shall provide services and perform all obligations required of the County under the terms of the Incarceration Agreement(s) including, but not limited to insurance requirements.

4. CCA shall pay all personal and real property taxes associated with the Facility. .

5. Trousdale County will not amend, terminate or otherwise change the terms of the Incarceration Agreement(s) without CCA's prior written approval.

6. Trousdale County shall pay CCA all funds received pursuant to the Incarceration Agreement(s) within ten days of receipt of such funds. CCA agrees to prepare the necessary documentation on behalf of Trousdale County for payment in accordance with the process set forth in the Incarceration Agreement(s). To the extent allowed under the Incarceration Agreement(s), CCA will be the designated Payee and all funds due pursuant to the Incarceration Agreements will be paid directly to CCA.

7. CCA shall indemnify, defend and save and hold harmless Trousdale County, its agents, employees, and representatives from and against any and all suits, actions, claims, demands, damages or losses arising from the acts of omissions of CCA, its agents, employees, representatives, or subcontractors incident to the performance of duties and obligations under the Incarceration Agreement(s). In addition, CCA shall save and hold harmless and indemnify Trousdale County, its agents, employees and representatives against any and all liability, claims and costs of whatsoever kind and nature for injury to or death of any person or persons and for loss or damage to any property occurring in connection with, or in any way incident to or arising out of the occupancy, use, service, operation or performance of work under the tenets of the Incarceration Agreements resulting from the negligent acts or omissions of CCA or any employee, or agent of CCA. In so agreeing, CCA does not waive any defenses, immunities or limits of liability available to it under state or federal law. CCA agrees to hold harmless and indemnify Trousdale County and their officials in their official and individual capacities from any liability, including third-party liability or worker's compensation arising from the conduct of CCA and its employees during the course of transporting inmates on behalf of the State. In no event shall this provision be construed to extend CCA's indemnification obligation to any suit, action, claim, demand, damage or loss arising from acts or omissions of Trousdale County, its agents, employees, representatives, or subcontractors, other than CCA.

The parties acknowledge and agree that the State of Tennessee is a third-party beneficiary under this Agreement because CCA will be performing services that will benefit the State of Tennessee and on which the State of Tennessee is relying pursuant to its separate contract with the County. CCA agrees to indemnify and hold harmless the State of Tennessee as well as its officers, agents, and employees from and against any and all

claims, liabilities, losses, and causes of action, including reasonable attorney fees, which may arise, accrue, or result to any person, firm, corporation, or other entity which may be injured or damaged as a result of acts, omissions, bad faith, negligence, or willful misconduct on the part of CCA, its employees, or any person acting for or on its or their behalf relating to this Agreement. CCA further agrees it shall be liable for the reasonable cost of attorneys for the State in the event such service is necessitated to enforce the terms of this Contract or otherwise enforce the obligations of CCA to the State.

In the event of any such suit or claim, CCA shall give the County and the State immediate notice thereof and shall provide all assistance required by the State in the State's defense. The State shall give CCA written notice of any such claim or suit, and CCA shall have full right and obligation to conduct CCA's own defense thereof. Nothing contained herein shall be deemed to accord to CCA, through its attorney(s), the right to represent the State of Tennessee in any legal matter, such rights being governed by Tennessee Code Annotated, Section 8-6-106.

8. CCA hereby agrees, warrants, and assures that no person shall be excluded from participation in, be denied benefits of, or be otherwise subjected to discrimination in the performance of this Agreement or in the employment practices of CCA on the grounds of handicap or disability, age, race, color, religion, sex, national origin, or any other classification protected by Federal, Tennessee State constitutional, or statutory law. CCA shall, upon request, show proof of such nondiscrimination and shall post in conspicuous places, available to all employees and applicants, notices of nondiscrimination.

9. CCA shall maintain documentation for all charges under this Agreement. The books, records, and documents of CCA, insofar as they relate to work performed or money received under this Agreement, shall be maintained for a period of three (3) full years from the date of the final payment and shall be subject to audit at any reasonable time and upon reasonable notice by the State, the Comptroller of the Treasury, or their duly appointed representatives. The financial statements shall be prepared in accordance with generally accepted accounting principles.

10. CCA warrants that no part of the total Incarceration Agreement Amount shall be paid directly or indirectly to an employee or official of the State of Tennessee as wages, compensation, or gifts in exchange for acting as an officer, agent, employee, subcontractor, or consultant to CCA in connection with any work contemplated or performed relative to this Agreement.

11. CCA agrees that for monitoring purposes the State shall have access to the Facility, inmates, personnel and records regarding CCA's performance to the same extent as the State has access to such information pursuant to the Incarceration Agreement.

12. The terms of this Agreement shall be effective upon execution and shall be concurrent with the term of the Incarceration Agreement(s) unless otherwise terminated as provided

herein; provided, however, the obligations of CCA under paragraph 7 shall survive any termination hereof.

13. Either party may terminate this Agreement if a breach by the other party remains uncured for more than sixty (60) days after written notice; provided, however, the obligations of CCA under paragraph 7 shall survive any termination thereof.

14. The provisions of this Agreement are for the sole benefit of the parties hereto and shall not be construed as conferring any rights on any other person or entity, except as set forth in paragraph 7 hereof.

15. This Agreement shall not be altered, changed or amended except in a written amendment executed by both parties.

16. CCA may assign or subcontract this Agreement to any wholly-owned CCA affiliate. Otherwise, neither party may assign or subcontract this Agreement without the written consent of the other party.

17. This Agreement shall be interpreted under the laws of the State of Tennessee. Venue shall lie in Trousdale County, Tennessee.

18. This Agreement, the Incarceration Agreement(s) and all related documents and any modifications thereof incorporate all the agreements, covenants and understandings between the parties.

19. All notices sent pursuant to this Agreement shall be sent via certified mail, return receipt requested or a nationally recognized overnight carrier to:

Trousdale County:
Betty Lou Taylor
204 Court Street
P.O. Box 179
Hartsville, TN 37074

CCA:
Steve Groom, General Counsel
Corrections Corporation of America
10 Burton Hills Boulevard
Nashville, TN 37215

20. No waiver of any breach of any terms or conditions of this Agreement shall be a waiver of any other or subsequent breach; nor shall any waiver be valid or binding unless the same shall be in writing and signed by the party alleged to have granted the waiver.

21. In the event any provision of this Agreement shall be held invalid or unenforceable, such provision shall be null and void. The validity of the remaining provisions shall not in any way be affected thereby.

22. This Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same Agreement. Execution of this Agreement may be evidenced by facsimile signature.

**IN WITNESS WHEREOF**, intending to be legally bound, the parties have caused their authorized representatives to execute this Agreement.

**TROUSDALE COUNTY:**

_____
Signature

_____
Print Name

_____
Title

_____
Date

**CCA:**

_____
Signature

_____
Print Name

_____
Title

_____
Date

# JAKIE WEST

Hartsville/Trousdale County Executive
210 Broadway, Room 5
Hartsville, Tennessee 37074
Telephone: (615) 374-2461
Fax: (615) 374-3948
trousdaleexec@bellsouth.net



Debbie Jenkins
Executive Assistant

Linda Gammons
Secretary

July 23, 2013

Commissioner Derrick Schofield
Tennessee Department of Corrections
320 Sixth Avenue North
Nashville, TN 37243

Dear Commissioner Schofield:

In my capacity as Mayor of Trousdale County I am writing to ask for your consideration of an economic development opportunity that not only provides much needed jobs, construction and commercial dollars for our County but that also provides the State with much needed prison beds at a cost-effective price.

Like many areas of rural Tennessee, our County's unemployment rate remains higher than both the state and national averages. We continually and aggressively look for opportunities to bring meaningful employment growth to the area and to promote further economic development in the region. A main target of our economic development efforts has been seeking companies to build operations in the 550-acre PowerCom Industrial Center located in Hartsville. One such company, Tennessee-based private prison operator CCA, owns a 108-acre site in the park that is ideally suited for a state correctional facility. We believe a correctional facility on this site is a timely and appropriate economic benefit for the State and offers the Department benefits that are unique to this particular location. Specifically:

- Location: Within 45 miles of Nashville, our central location provides easy access to a metropolitan area known for its nationally renowned medical centers and specialty care. The closest hospital will be the Trousdale Medical Center (5 miles). The Nashville International Airport will be the closest metropolitan airport and the facility will also be located within 40 miles from Murfreesboro.
- Timing: Due to work that CCA has already performed on the site, CCA can have a state of the art correctional facility of up to 2,000 beds available for occupancy in as little as 18 months. We believe this accelerated timeline for delivering a facility is critical to providing the State with relief from its current backlog of inmates in county jails.

- Quality: CCA is a known and valued provider to the State. We would expect that CCA would deliver to the State the same high-quality services that it delivers in the facilities CCA operates for the State today. In fact, we would propose to mirror the type of arrangement that currently exists between the State and Hardeman County. In this arrangement, Trousdale County would propose to contract directly with the Department. Trousdale County will, in turn, enter into a management agreement with CCA for the design, construction and management of a facility on the Hartsville site.

The significant benefits to our community cannot be understated. With a full-time employment of more than 300 employees, the $8-10 million payroll will turn over multiple times in our community and the estimated $1.5 million in property taxes and estimated $1.8 utility payments will provide much needed resources to our area.

I believe you will see that this proposal offers a benefit to both the Department and Trousdale County. Additionally, I must urge you to act on this opportunity quickly in order to avoid jeopardizing the key grants for infrastructure improvements upon which we are relying to provide necessary improvements to service not only the prison site but that are critical to the entire Four Lakes region. While we have been successful in obtaining a combination of federal, state and local grant commitments of almost $8 million, I fear that without the prison project, many of these grants will not come to fruition.

Trousdale County is ready and willing to enter into an agreement with the State for the housing of inmates in a state of the art prison facility to be built on the PowerCom site. Immediately upon receipt of a letter from you indicating your desire for such an agreement, we will proceed with the steps necessary to enter into a management agreement with our operator and to finalize an Incarceration Agreement with your Department in keeping with the Agreement the Department currently has with Whiteville.

Thank you for your consideration of this request and I stand ready to answer any questions you may have at your earliest convenience.

Sincerely,

Jakie West

Jakie West
Hartsville/Trousdale County Mayor

CCA 003009

BILL HASLAM
*GOVERNOR*



DERRICK D. SCHOFIELD
*COMMISSIONER*

STATE OF TENNESSEE
DEPARTMENT OF CORRECTION
SIXTH FLOOR, RACHEL JACKSON BUILDING
320 SIXTH AVENUE NORTH
NASHVILLE, TENNESSEE 37243-0465
OFFICE (615) 741-1000●FAX (615) 532-8281

October 8, 2013

The Honorable Jakie West
Hartsville/Trousdale County Executive
210 Broadway, Room 5
Hartsville, TN 37074

Dear Mayor West:

REGARDING: Trousdale County Partnership

This letter serves as confirmation of our recent conversation regarding your July 23, 2013, correspondence requesting that the Department of Correction give consideration to Trousdale County as a potential site for future prison expansion. As we discussed, it is the Department's intent to move forward in a partnership with Trousdale County to meet the State's anticipated bed demand for felony offenders in the next few years.

Based upon our population projections, the State has short-term bed need for an additional 3,400 beds within the next five (5) years and 2,500 beds within the next two (2) years. The additional beds will provide a "relief valve" for the state system and our county jails as the Department begins to initiate best-practice strategies to divert non-violent offenders away from hard prison beds.

The department's decision to enter into this partnership was based upon the county meeting the following criteria:

a. Within an hour's drive to Nashville.

b. Sufficient available workforce to accommodate the staffing requirements of the facility.

c. The construction schedule cannot exceed 18 months from the signing of the agreement.

    d. Access to medical and mental health emergency services.

    e. Evidence-based programming must be the cornerstone of the facility. Correctional education, as well as alcohol and drug treatment programming, will increase the likelihood of successful reentry to our communities and work to reduce the current average 46 percent recidivism rate in Tennessee.

In your correspondence, you indicated the County's desire to contract with a private-prison operator for the design, construction, and management of a facility similar to the State's current agreement with Hardeman County to operate the Whiteville facility. The facility would require a capital investment from the contractor of approximately $200 million. No State dollars would be spent until construction is complete and the inmates begin arriving at the facility. The contractor would fund the construction project using its own capital resources.

We look forward to working with Trousdale County on this mutually beneficial partnership for the State and the County. If I can be of any further assistance, please do not hesitate to contact me.

Sincerely,

Derrick D. Schofield
Commissioner, Department of Correction

DDS:JT

pc: Commissioner Larry Martin, Finance & Administration
    Chief Operating Officer Greg Adams
    Chief of Staff Mark Cate

# CONTRACT AMENDMENT COVER SHEET

| Agency Tracking # | Edison ID | Contract # | Amendment # |
|---|---|---|---|
| 32904-20240 | 41701 | | 1 |

| Contractor Legal Entity Name | Edison Vendor ID |
|---|---|
| Trousdale County | 2537 |

**Amendment Purpose & Effect(s)**
To remove the provision where TDOC consented to pay the county a set rate rather than a population-based rate

| Amendment Changes Contract End Date: | ☐ YES ☒ NO | End Date: 5 years following Service Commencement Date |
|---|---|---|

TOTAL Contract Amount INCREASE or DECREASE *per this Amendment* (zero if N/A):   $ 0.00

**Funding —**

| FY | State | Federal | Interdepartmental | Other | TOTAL Contract Amount |
|---|---|---|---|---|---|
| 16 | $10,344,900.00 | | | | $10,344,900.00 |
| 17 | 55,261,000.00 | | | | 55,261,000.00 |
| 18 | 56,847,900.00 | | | | 56,847,900.00 |
| 19 | 58,264,300.00 | | | | 58,264,300.00 |
| 20 | 59,885,100.00 | | | | 59,885,100.00 |
| 21 | 35,686,900.00 | | | | 35,686,900.00 |
| TOTAL: | $276,290,100.00 | | | | $276,290,100.00 |

| American Recovery and Reinvestment Act (ARRA) Funding: | ☐ YES ☐ NO |
|---|---|

**Budget Officer Confirmation:** There is a balance in the appropriation from which obligations hereunder are required to be paid that is not already encumbered to pay other obligations.

*Lisa C Parks*

CPO USE

| Speed Chart (optional) | Account Code (optional) |
|---|---|

**AMENDMENT One**
**OF CONTRACT 41701**

This Amendment is made and entered by and between the State of Tennessee, Department of Correction, hereinafter referred to as the "State" and Trousdale County, hereinafter referred to as the "Contractor." For good and valuable consideration, the sufficiency of which is hereby acknowledged, it is mutually understood and agreed by and between said, undersigned contracting parties that the subject contract is hereby amended as follows:

1.    Contract section Reference C.3.b.is deleted in its entirety and replaced with the following:

C.3.b.    b.    <u>Operating Per Diem Payments.</u>

The State shall make Operating Per Diem Rate payments to Trousdale County based on the number of inmates actually at the Facility. If the 2552 beds are not available on the Service Commencement Date, the State shall not be obligated to make the Operating Per Diem Rate payments to the County pursuant to this section until such beds are available. If the beds are available and the State does not assign Inmates to the Facility, the State shall be obligated to make the Operating Per Diem Rate payments to the County pursuant to this section

*C.C. 6/18/18 TP 6/18/18*

(1)    Beginning on the Service Commencement Date and continuing for one year thereafter, the Operating Per Diem Rate shall be $58.75 per Inmate Day.

Each year, on the anniversary of the Service Commencement Date, the Operating Per Diem Rate shall increase by 2.5%.

(2)    Beginning on the Service Commencement Date, Trousdale County shall make available 2,552 beds. The State may change the number of State Bed Days that Trousdale County makes available to it from time to time by giving Trousdale County 180 days advance written notice of the change. The State may lower or raise the State Bed Days in its sole discretion, for any reason or no reason including, but not limited to, the State's dissatisfaction with any management subcontract. Notwithstanding any provisions herein to the contrary, Trousdale County shall make available to the State all or part of the Facility's capacity upon notice described herein and shall enter into no agreement to the contrary.

(3)    Any beds not required to be made available to the State by this Contract may be filled with inmates from other jurisdictions. Such inmates shall be kept completely separate in all assignments including, but not limited to, housing and programming assignments. Trousdale County shall notify the Commissioner of the source and nature of inmates from other jurisdictions proposed to be housed at the facility. Said notice shall be provided at least 30 days prior to receipt of such inmates at the institution. Within ten (10) days of receipt of such notice, the Commissioner shall notify Trousdale County of any objection to the proposal. If Trousdale County decides to proceed with the housing of such inmates at the Facility over such objection it shall so notify the Commissioner prior to receipt of the inmates. The State shall have thirty (30) days from receipt of such notice to change, at its discretion, the number of State Bed Days that Trousdale County makes available to it. The State shall provide at least ten (10) days' notice of the change in State Bed Days. The notice requirement is an exception to the 180-day notice required by Section C.3.b.(2). If inmates from other jurisdictions are housed at the facility, the State's Operating Per Diem Rate payments to Trousdale County pursuant to section C.3.b. shall be based on the number of Tennessee State Department of Correction Inmates actually at the Facility.

(4)    No Operating Per Diem will be paid for Inmates housed and treated at a State departmental Facility. Subject to the subsection (b) above, the Operating Per

1

Diem Rate payment will be made only for Inmates actually incarcerated at the Facility, except the Operating Per Diem Rate payment shall be made for any Inmate hospitalized at a non-State departmental Facility during the period when the contractor is responsible for said hospitalization expense. No Operating Per Diem shall be paid for any Inmate out to court.

(5) Inmate Days and billings will be determined by the Midnight count of each day, which count shall be periodically reviewed and signed by the Liaison(s).

Required Approvals. The State is not bound by this Amendment until it is signed by the contract parties and approved by appropriate officials in accordance with applicable Tennessee laws and regulations (depending upon the specifics of this contract, said officials may include, but are not limited to, the Commissioner of Finance and Administration, the Commissioner of Human Resources, and the Comptroller of the Treasury).

Amendment Effective Date. The revisions set forth herein shall be effective May 1, 2018. All other terms and conditions of this Contract not expressly amended herein shall remain in full force and effect.

**IN WITNESS WHEREOF,**

Trousdale County:

_____          4/11/2018
**SIGNATURE**                              **DATE**

CARROLL CARMAN , MAYOR H/TC.
**PRINTED NAME AND TITLE OF SIGNATORY (above)**

Tennessee Department of Correction:

_____          4/24/18
Tony Parker, Commissioner                 **DATE**

RFS 32904-20240  Amendment 1 Trousdale County

2

# First Amendment to the Agreement Between

## Trousdale County, Tennessee

### And

## Corrections Corporation of America

THIS FIRST AMENDMENT to the Agreement between Trousdale County, Tennessee (Trousdale County) and Corrections Corporation of America (CCA) dated April 28, 2014, (Agreement) is made and entered this _____ day of _____, 2014.

WHEREAS, the State of Tennessee has requested the inclusion of certain additional provisions in the Agreement; and

WHEREAS, Trousdale County and CCA desire to amend the Agreement to include such provisions.

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, Trousdale County and CCA hereby agree to amend the Agreement to include the following provisions:

1.  Insert the following as paragraph 23:

    "Change In Owners. CCA shall notify the State in writing of any change of ownership of the CCA, through sale or merger, which occurs during the term of the Incarceration Agreement. CCA shall inform the State fully of the financial ability of the new ownership to fully comply with the terms and conditions of the Incarceration Agreement. The State reserves the right to terminate the Incarceration Agreement in the event of a change in ownership without penalty to the State or to consider the failure to comply with the notification or financial reporting provisions as a Breach by CCA."

2.  Insert the following as paragraph 24:

    "CCA's Representations and Warranties. CCA represents and warrants to and for the benefit of State, with the Intent that State will rely thereon for purposes of entering into the Contract with Trousdale County, as follows:

    a. No Violation of Contract Articles of Incorporation or Bylaws. The consummation of the transactions contemplated by this Incarceration Agreement and its fulfillment of the terms hereof will not conflict with, or result in a breach of any of the terms and provisions of, or constitute a default under any indenture, mortgage, deed of trust, lease, loan agreement,

Page 1 of 3

license, security agreement, Contract, governmental license or permit, or other agreement or instrument to which CCA is a party or by which its properties are bound, or any order, rule, or regulation of any court or any regulatory body, administrative agency, or their governmental body applicable to CCA or any of its properties. except any such conflict, breach, or default which would not materially and adversely affect Contractor's ability to perform its obligations under this Incarceration Agreement and will not conflict with, or result in a breach of any of the terms and provisions of, or constitute a default under, the Articles of Incorporation (or other corresponding charter document) or Bylaws of CCA.

b. No Defaults under Agreements. CCA is not in default nor is there any event in existence which, with notice or the passage of time or both, would constitute a default by CCA under any indenture, mortgage, deed of trust. lease, loan agreement, license, security agreement, Contract, governmental license or permit, or other agreement or instrument to which it is a party or by which any of its properties are bound and which default would materially and adversely affect CCA's ability to perform its obligations under this Incarceration Agreement."

3. Insert the following as paragraph 25:

"Research Projects. CCA shall not publish or disseminate any findings based on data obtained from the operation of the Incarceration Agreement or engage in any research projects without the prior written consent of the Department."


4. Insert the following as paragraph 26:

"Financial Termination. The State may terminate the Incarceration Agreement without penalty to the State in the event CCA:
a. admits in writing its inability to pay its debts;
b. makes a general assignment for the benefit of creditors;
c. suffers a decree or order appointing a receiver or trustee for it or substantially all of its property to be entered and, if entered without its consent, not to be stayed or discharged within 60 days;
d. suffers proceedings under any law relating to bankruptcy, insolvency, or the reorganization or relief of debtors to be instituted by or against it and, if contested by Contractor, not to be dismissed or stayed within 60 days; or
e. suffers any judgment, unit of attachment or execution, or any similar process to be issued or levied against a substantial part of its property which is not released, stayed, bonded, or vacated within 60 days after issue or levy."

IN WITNESS WHEREOF, intending to be legally bound, the parties have caused their authorized representatives to execute this Amendment.

**TROUSDALE COUNTY:**

_____
Signature

_____
Printed Name

_____
Title

_____
Date

**CCA:**

_____
Signature

_____
Printed Name

_____
Title

_____
Date

New Window    Help    Customize Page    http

### Document Approval Status

| | | |
|---|---|---|
| **SetID:** | SHARE | **Contract ID:** |
| **Vendor:** | Hartsville Trousdale County Metro Govern | 0000000000000000000041701 |

Review/Edit Approvers



**Agency Approvals**

:Approved — View/Hide Comments

Agency Approvals

| Self Approved | Self Approved |
|---|---|
| Priscilla E Wainwright | Priscilla E Wainwright |
| Document Approval 1 | Document Approval 2 |
| 07/01/14 - 2:48 PM | 07/01/14 - 2:48 PM |

CPO Level 1 & 2 Approvals

| Approved | Approved |
|---|---|
| Lorraine M Rea | Andrew Kidd |
| Document Approval 3 | CPO Appr 2 Level > $5 Mill |
| 07/02/14 - 9:37 AM | 07/02/14 - 9:38 AM |

Comments
Comment History

**CPO Director & Chief Proc Offi**

:Approved — View/Hide Comments

CPO Director & Chief Proc Offi

| Approved | Approved |
|---|---|
| Shannon B Howell | Christopher Oliphant |
| CPO Approval - Director | CPO Appr - Chief Proc Officer |
| 07/02/14 - 1:23 PM | 07/02/14 - 2:28 PM |

Comments
Comment History

**Budget Office**

:Approved — View/Hide Comments

Budget Threshold Approv >100K

| Approved |
|---|
| Abby Requierme |
| Con - Budget Office Approval |
| 07/02/14 - 3:33 PM |

Comments
Comment History

**Comptroller Approvals**

:Approved — View/Hide Comments

Comptroller Approvals

| Approved |
|---|
| Donald J Ivancic |
| Document Approval - Comptrolle |
| 07/03/14 - 8:14 AM |

Comments

**Donald J Ivancic at 07/03/14 - 8:01 AM**
Approval of the DGS CPO approved procurement event is on behalf of the Comptroller pursuant to current signature authorization. Excluded from this approval is a verification of the data entry function to the Edison system. The accuracy of the data entry function and resulting documents remains with CPO -
Approval of the DGS CPO approved procurement event is on behalf of the Comptroller pursuant to current signature authorization and has been reviewed with the Comptroller for final determination. Excluded from this approval is a verification of the data entry function to the Edison system. The accuracy of the data entry function and resulting documents remains with CPO

Comment History

**CPO Final Contract Approval**

:Approved — View/Hide Comments

CPO Final Contract Approval

| Approved |
|---|
| Lorraine M Rea |
| Document Approval 3 |
| 07/03/14 - 8:36 AM |

Comments
Comment History

Return to Document Management

Case 3:22-cv-00093    Document 37-4    Filed 05/25/22    Page 86 of 86 PageID #: 1078