

EXHIBIT
Kelly Young 6-18-21
1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BOAZ PLEASANT-BEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:19-cv-00486 |
| ) | Judge Trauger |
| STATE OF TENNESSEE, et al. ) | |
| ) | JURY DEMAND |
| Defendants. ) | |

## RE-NOTICE OF DEPOSITION PURSUANT TO RULE 30(B)(6) AND DOCUMENT REQUESTS PURSUANT TO RULE 34 TO DEFENDANT TDOC

Please take notice that the Plaintiff, pursuant to Fed. R. Civ. P. 30(b)(6), will begin the deposition of the designee(s) of Defendant Tennessee Department of Corrections ("TDOC") on **June 18, 2021** at **9:00 a.m. CST** by way of Zoom and continuing day to day until complete. Under Rule 30(b)(6), TDOC shall designate one or more employees, agents, or representatives to testify as to the matters set forth in **Attachment A**. The deposition shall be recorded by video and stenographic means.

Pursuant to Fed. R. Civ. P. 34, TDOC shall produce all documents identified in **Attachment B**, for the purposes of inspection and/or photocopying at least seven (7) days prior to the deposition.

Dated: June 10, 2021                    Respectfully submitted,

*/s/ Tricia Herzfeld*
Tricia Herzfeld (BPR #26014)
**Branstetter, Stranch & Jennings, PLLC**
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Ph: 615-254-8801
Fax: 615-255-5419
triciah@bsjfirm.com
*Attorney for Plaintiff*

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 10, 2021 a true and correct copy of the foregoing document was served by way of electronic mail upon the following:

Thomas J. Aumann
Nikki N. Hashemian
Tennessee Attorney General's Office
P O Box 20207
Nashville, TN 37202-0207
(615) 532-2551
Fax: (615) 532-2541
Email: thomas.aumann@ag.tn.gov
Email: nikki.hashemian@ag.tn.gov

Erin Palmer Polly
Joseph F. Welborn, III
K&L Gates LLP (Nashville)
222 Second Avenue South
Suite 1700
Nashville, TN 37201
(615) 780-6733
Fax: (615) 780-6799
Email: Erin.Polly@klgates.com
Email: Joe.Welborn@butlersnow.com


Terrence M. McKelvey
Butler Snow LLP (Nashville)
The Pinnacle at Symphony Place
150 Third Avenue South
Suite 1600
Nashville, TN 37201
(615) 651-6700
Email: terrence.mckelvey@butlersnow.com

            */s/ Tricia Herzfeld*
            Tricia Herzfeld

# ATTACHMENT A

## Definitions

1. "CoreCivic" means the Defendant Corrections Corporation of America D/B/A CoreCivic including all officials, employees, agents, departments, divisions, counsel, and any other entity or person affiliated therewith.

2. "Cost Savings" refers to the difference between (1) what CoreCivic would have spent on employees if a facility was staffed with the number of employees required by regulation or contract, versus (2) what it actually spent on guards as a result of reduced staffing.

3. "TDOC" refers to the Tennessee Department of Corrections.

4. "Trousdale" means the Turner Trousdale Correctional Facility operated by CoreCivic.

5. Unless otherwise stated, the applicable time period for the Noticed Topics below is from 2016 to the present.

## Noticed Topics

1. The terms of TDOC-CoreCivic contract for Trousdale and the content of any operations plan related to that contract, including any alterations, amendments, modifications, revisions, or supplementations to said contract or operations plan.

2. TDOC's monitoring of CoreCivic's compliance with the terms of the TDOC-CoreCivic contract for Trousdale, including the following:

    a. The content and findings of all TDOC audits, monitoring reports, noncompliance reports or summaries, Risk Assessment Processes, Enterprise Risk Management processes, and Plans of Corrective Action concerning Trousdale or employees

4

and/or departments responsible for overseeing or monitoring conditions at Trousdale, as well as TDOC's response to those findings;

b. The contents of reports, communications, or other documentation concerning conditions at Trousdale created by the TDOC Contract Monitor or TDOC Compliance or Contract Monitor of Operations assigned to Trousdale; and

c. All reductions or restructuring concerning TDOC contract monitoring staff and any allegation or finding that TDOC's level of contract monitoring staff might pose a harm to inmates in CoreCivic prisons.

3. Any finding that CoreCivic deviated from, failed to comply with, or violated any TDOC policies, contract requirements, or operations plan concerning Trousdale; any allegations that CoreCivic has breached its contract with TDOC concerning Trousdale by TDOC; and any fines imposed by TDOC on CoreCivic in connection with Trousdale, the basis for said fines, and the identity and contents of any documents generated in connection with said fines.

4. TDOC's oversight and monitoring of CoreCivic staffing issues at Trousdale, and TDOC's response to any alleged noncompliance or deficiency, including applicable TDOC policies and procedures, investigations, reporting inaccuracies or discrepancies, and communications with CoreCivic concerning staffing levels and issues. This Topic is intended to encompass TDOC's review of and decision to approve or deny any CoreCivic staffing changes at Trousdale, TDOC's review and evaluation of CoreCivic's staffing budget for Trousdale, and communications between CoreCivic and TDOC regarding said budget.

5. All deficiencies or findings identified with respect to Trousdale identified in any report issued by the office of the Tennessee Comptroller, and all actions taken by TDOC and/or CoreCivic in connection with those deficiencies or findings.

6. The content of TDOC's policies, practices, and procedures concerning inmate grievances; CoreCivic's compliance with said policies, practices, and procedures; and TDOC's oversight and monitoring of CoreCivic's handling of inmate grievances. This Topic includes any findings that CoreCivic has failed to implement, comply with, or follow TDOC inmate policies, practices, and procedures.

7. TDOC's documentation and/or reporting of violent incidents, as well as activity leading to or related to violence, at Trousdale, including TDOC's policies, procedures, and practices concerning reporting; the accuracy of TDOC reporting concerning violence at Trousdale; and any findings of errors, discrepancies, or misrepresentations in TDOC reporting.

8. TDOC's oversight and monitoring of CoreCivic's handling of violence at Trousdale, including errors, discrepancies, or misrepresentations found in CoreCivic's reporting; investigations into CoreCivic's handling or reporting of violence; employee or inmate complaints concerning violence at Trousdale; and communications or meetings with CoreCivic concerning violence at Trousdale.

9. The content of TDOC's policies, practices, and procedures concerning religious programs and/or accommodations; TDOC's oversight and monitoring of CoreCivic's adherence to TDOC's policies, practices, and procedures concerning religious programs and/or accommodations; and any instances in which CoreCivic has been found to have violated its own or TDOC's policies, practices, or procedures concerning religious programs and/or accommodation at Trousdale.

10. TDOC's decision concerning any (a) Inmate Inquiry Information Request, (b) Request for Group Accommodations, or (c) other request, including discretionary requests sent via email, concerning a Religious Activity, Religious Exercise, Religious Literature, Religious Diet,

6

Case 3:22-cv-00093 Document 37-8 Filed 05/25/22 Page 6 of 8 PageID #: 3555

Religious Objects, or Group Worship and Study received by the TDOC Director of Religious Services and/or the TDOC Religious Activities Committee concerning a Muslim or Christian Faith Group at Trousdale. All terminology used herein shall be given the meaning stated in TDOC Policy No. 118.01.

11. TDOC's knowledge of, investigations concerning, and response to complaints, grievances, and other alleged deficiencies, failures, or noncompliance by CoreCivic employees responsible for addressing religious programs and accommodations pursuant to TDOC Policy No. 118.01.

12. Any TDOC policy or procedure that would justify CoreCivic's refusing to Trousdale inmates from purchasing Halal prayer oil from an Islamic vendor and preventing Trousdale inmates from purchasing, wearing, and/or owning Khufain prayer socks, Kifiya, and Agal.

## ATTACHMENT B

All documents deponent has consulted, reviewed, or plans to consult in preparation for his or her deposition and has relied upon or will rely upon for testimony on the above deposition topics.