# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| G. MARIE NEWBY, individually, and as Administratrix of THE ESTATE OF TERRY CHILDRESS, <br><br> *Plaintiffs,* <br><br> v. <br><br> CORECIVIC OF TENNESSEE, LLC, as owner and operator of TROUSDALE TURNER CORRECTIONAL CENTER, DAMON HININGER, STEVE CONRY, RAYMOND BYRD, and SHAWNA CURTIS, <br><br> *Defendants.* | Case 3:22-cv-00093 <br><br> JURY DEMANDED |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH [DOC. 42]

### I. INTRODUCTION

The Defendants have filed a *Motion to Quash Subpoenas Duces Tecum* to prevent production associated with two[1] subpoenas *duces tecum*. *See* Doc. 42. The Defendants represent that the subpoena should be quashed because it seeks "irrelevant confidential documents that CoreCivic produced in a different lawsuit[.]" *See* Doc. 43. The motion should be denied for several reasons.

To begin, the Defendants lack standing to seek to quash a subpoena directed to a non-party based on a relevancy objection. The documents are also provably relevant to

---

[1] Because the Defendants have only initiated a discovery dispute and been invited by the Court to brief their objections regarding the subpoena duces tecum issued to Ms. Herzfeld, this Response is limited to the Herzfeld subpoena (Doc. 28).

-1-

the Plaintiffs' claims in this matter, notwithstanding the Defendants' persistently false claims to the contrary.

Moreover, the Defendants have utterly failed—in any respect—to demonstrate that the documents they seek to hide are <u>*actually confidential*</u>. It is also clear beyond dispute that although the Defendants <u>*designated*</u> the documents as confidential in the earlier litigation, the Defendants flagrantly abused confidentiality designations in an effort to limit access to public documents that expose their malfeasance. The Defendants also have a pattern of doing so. Further, aside from offering "conclusory" claims—unsupported by an affidavit, any specific claim of confidentiality, or other actual evidence—"asserting that the records are confidential, [Defendants] offer[] no argument, evidence or proof to support such a claim[,]" *cf. Hamm v. Cunningham*, No. 1:12CV124, 2012 WL 13027079, at *1 (N.D. Ohio May 16, 2012), which necessarily precludes them from satisfying the "'heavy burden'" required to justify quashing. *Id.*

Finally, even if the Defendants had made some effort to support their confidentiality claims with evidence (they did not), quashing—the relief the Defendants' motion seeks—would not be the appropriate remedy. Instead, the appropriate remedy would be to have the documents produced subject to a protective order. But the Defendants have not moved for a protective order. Accordingly, they have not so much as attempted to meet their burden of justifying one. *Cf. Proctor & Gamble Co. v. Banker's Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996) ("While District Courts have the discretion to issue protective orders, that discretion is limited by the careful dictates of Fed. R. Civ. P. 26 and 'is circumscribed by a long-established legal tradition' which values public access to court proceedings."). The reason appears to be that the documents—at least those that the Plaintiffs are aware of, because they are described in depositions—are not properly

-2-

Case 3:22-cv-00093   Document 47   Filed 06/24/22   Page 2 of 20 PageID #: 4184

subject to protection because they are not actually confidential. In any event, though, because the Defendants have not sought or attempted to meet their burden of justifying a protective order, this Court is not in a position to grant them one.

For all of these reasons, the Defendants' motion to quash should be **DENIED**.

## II. FACTS

In advance of issuing their subpoena duces tecum to Ms. Herzfeld, the Plaintiffs provided the Defendants pre-service notice of it in compliance with Local Rules. *See* Doc. 36-1, at 5. The Defendants did not raise any complaints at the time of its issuance or before service.

On April 13, 2022, after the relevant subpoena was served, the Defendants indicated by email that "[w]e take issue with this subpoena." *See id.* at 5. In response to inquiries about what that "issue" was, the Defendants persistently refused to disclose it. *See id.* at 1–5. The non-party to whom the subpoena was issued also did not object to the subpoena in any respect.

On April 28, 2022, the Defendants specified their objections to the non-party subpoena at issue. *See* Doc. 36-2, at 1. Their complaints were substantially premised upon objections that they lacked standing to assert. *See id.* The Defendants did, however, note that: "there was a protective order in that case wherein many of these items are marked confidential or confidential attorneys' eyes only." *See id.* To emphasize the point, however, the Defendants have a history of abusing such designations and asserting confidentiality claims that are not valid. *See, e.g., Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 487 n.2 (M.D. Tenn. 2019) ("CoreCivic has argued that its internal responses to BOP scrutiny should be kept under seal because their disclosure could harm CoreCivic in the marketplace. (Docket No. 155 at 6.) The court, however, discerns no serious threat of

-3-

unfair competition associated with disclosure of the relevant communications. None of the cited internal conversations reveal any confidential CoreCivic strategies, practices, or research and development. The conversations cited may be awkward or embarrassing for CoreCivic to see disclosed, but that, alone, is not enough to justify an unyielding seal in this case."). Accordingly, the mere fact that the Defendants designated the responsive documents confidential does not mean that they are. The Defendants also did not identify any fact-specific justifications for confidentiality, noting, instead, only that the documents were "marked" confidential in the litigation. *See* Doc. 43 at 14.

On May 25, 2022, the subpoenaed non-party produced documents responsive to the Plaintiffs' subpoena that had not been marked confidential. *See* Doc. 37. Contrary to the Defendants' previous representations that the responsive documents were not relevant to this litigation, they very much were. Indeed, some of the documents are <u>about this case</u>. *See, e.g.,* Doc. 37-1, at 55:1–9 (Q. "You mentioned another death. Does the name Terry Deshawn Childress sound right?" A. I don't know. I know who the – I believe I know who the suspect was." Q. "Was that around February 24th of 2021?" A. "Yes." Q. "What occurred with that incident?" A. "That was another restrictive housing incident with two cellmates."). Additional documents also revealed generally that the prison facility at issue in this litigation has never been in compliance with minimum contractual staffing requirements and, according to a former warden of the facility, it never will be. *See generally* Doc. 41 at 7–12 (collecting deposition testimony). They revealed that the facility has never been in compliance with grievance procedures, submitted false staffing records, and violated several other requirements, too. *See, e.g., id.* at 10.

The furnished documents revealed something else of note as well: That the Defendants—consistent with their history of similar misconduct— had egregiously abused

protective order designations. For instance, Exhibit #1 to the deposition of one of the TDOC's contract monitors is described as "two pages in [a] May 17th notice of breach and assessment of liquidated damages," in addition to "a number of" other liquidated damages assessments for what appear to be contract non-compliance and understaffing violations. *See* Doc. 37-1, at 26:2–9. The exhibit was not produced because it appears to have been marked confidential. Further, because it was notice of a liquidated damages penalty assessed by the TDOC, it also <u>*does not appear to be a document that belongs to CoreCivic.*</u> Instead, it appears to be a non-confidential <u>*public*</u> record that the Defendants illicitly marked confidential. The same appears to be true of Exhibit #2 to Mr. Brun's deposition, which is described as a TDOC "noncompliance report." *See id.* at 31:24–32:3.

These are nowhere near the only examples, though. For instance, pages 2–3 of the deposition of John Walton describe eleven exhibits to that deposition. *See* Doc. 37–2 at 3–4. Several of them—including Exhibit #5, described as "non-compliant reports starting with Bates 000291," *see id.* at 3—appear to have been marked confidential. Similarly, in Kelly Young's deposition, *see* Doc. 37-7, an exhibit described as a "privately operated facility notification of noncompliance, Tennessee Department of Correction" appears to have been marked confidential, *see id.* at 22:19–22, as was an exhibit described as a "six-month follow-up report to the comptroller's office related to the 2020 comptroller audit." *Id.* at 43:16–19.

The abuse gets worse. In the deposition of Vincent Finamore, for instance, Exhibit #3 to the deposition is described as the "November 2017 comptroller report." *See* Doc. 37-10, at 3. That is almost a quintessentially public record that is made available by the Tennessee Comptroller to anyone with an internet connection and also happens to be Exhibit #5 to the Plaintiff's Complaint in this case. *See*. Doc. 1-5. Even so, the Defendants

-5-

Case 3:22-cv-00093    Document 47    Filed 06/24/22    Page 5 of 20 PageID #: 4187

appear to have marked the document confidential. Further, and somehow even worse than that: Exhibit #20 to Mr. Finamore's deposition is described as "a collection of news articles[.]" *See* Doc. 37-10 at 87:15–17 ("I will submit to you that it is a collection of news articles that were in the production that were produced to us."). *See also id.* at 4 ("News articles beginning with TDOC 013562"). Even so, the Defendants appear to have marked ***<u>news articles</u>*** confidential.

With this context in mind: Given that the Defendants have moved to quash the Plaintiffs' subpoena based on the otherwise unsupported representation that the the subpoena seeks "CoreCivic's confidential documents," *see* Doc. 43 at 2; *see also id.* at 6 (referencing "CoreCivic's documents produced in the Pleasant-Bey Case"), this Court should be seriously skeptical. It is clear that at least a substantial number of the responsive documents are not, in fact, "CoreCivic's" documents; instead, they are <u>the Tennessee government's documents</u>, or news articles, or other non-party materials. *See id.* It is also clear that many of the responsive documents that CoreCivic seeks to suppress cannot honestly be characterized as "confidential" at all—even though CoreCivic has falsely represented that they are. As previously noted, such "blatant factual misrepresentations" by lawyers defending prisons are also frowned upon, and at some point, like the Defendants' categorical denials of understaffing allegations that it has become clear are true, they ought to result in "repercussions." *See, e.g., Friedmann v. Parker*, No. 3:21-CV-00721, 2021 WL 5494522, at *1 n.2 (M.D. Tenn. Nov. 23, 2021) ("In the Answer to the Complaint, Defendants deny that two cells are 'known or referred to as … "iron man" cells,' that 'Unit 1 has "iron man" cells,' and that Mr. Friedmann's 'cell is an "iron man" cell.' (Doc. No. 16 ¶¶ 18, 41). This is remarkable given Defendants' own exhibits contain a TDOC report *signed by multiple Defendants* that describes Mr. Friedmann's

-6-

cell as 'an iron man cell.' (Doc. No. 15-4 at 15). The Court resolves 'disputed' facts in Mr. Friedmann's favor where the record contradicts Defendants' denials. **The Court warns Defendants there may be repercussions for future blatant factual misrepresentations presented to it**." *See* Fed. R. Civ. P. 11.") (emphasis added).

### III. ARGUMENT

A.  **Absent a claim of privilege, the Defendants lack standing to quash a subpoena directed to a non-party.**

"[T]his court has previously explained that '[g]enerally speaking, only the party to whom the subpoena is directed has standing to oppose it. Accordingly, as a general rule**, a party has no standing to seek to quash a subpoena directed to a non-party.**'" *Hugueley v. Parker*, No. 3:19-CV-00598, 2020 WL 636579, at *1 (M.D. Tenn. Feb. 11, 2020) (emphasis added) (quoting *Carty v. Metro. Life Ins. Co.*, No. 3:15-cv-01186, 2018 WL 3861827, at *3 (M.D. Tenn. Aug. 14, 2018) (Trauger, J.) (internal punctuation and citations omitted)). This rule has also been affirmed and restated over, and over, and over again. *See id.* (citing *Whitaker v. ABF Freight System, Inc.*, No. 1:17-cv-206, 2019 WL 1966122, at *1 (W.D. Ky. Feb. 2, 2019) ("Typically, a party does not have standing to quash or object to a Rule 45 subpoena served on a non-party, unless the party claims a privilege or other personal right regarding the requested documents."); *In re Romani*, No. 18-cv-11375, 2019 WL 4877574, at *2 (E.D. Mich. Feb. 25, 2019) ("[S]everal courts within this district have held that a party does not typically have standing to quash a subpoena directed to a non-party.")). *See also Morrow v. Cmty. Health Sys. Inc.*, No. 3:16-01953, 2017 WL 2989374, at *2 (M.D. Tenn. Apr. 20, 2017) ("Ordinarily, a party does not have standing to move to quash a subpoena directed to a nonparty unless the party claims a privilege or personal right in the information sought by the subpoena."); *DASFortus*

*Techs., LLC v. Precision Prod. Mfg. Co., Ltd (Hong Kong)*, No. 3-07-0866, 2011 WL 13244104, at *4 (M.D. Tenn. Jan. 25, 2011) ("As a general rule, a party does not have standing to move to quash a subpoena issued to a third party, absent a claim of privilege."); *City of Ecorse v. U.S. Steel*, No. CIV.A. 07-CV-12131, 2007 WL 4239263, at *2 (E.D. Mich. Dec. 3, 2007) ("As a general rule, a party has no standing to seek to quash a subpoena directed to a non-party.").

Here, the non-party to whom the subpoena was directed has not objected to it. Accordingly, the Defendants' standing to contest the subpoena is limited to the exception that exists "where the party-movant can demonstrate a claim of privilege or personal right." *See Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:20-CV-01023, 2021 WL 5882653, at *1 (M.D. Tenn. Dec. 13, 2021). *Cf. Riding Films, Inc. v. John Does 129-193*, No. 2:13-CV-46, 2013 WL 3322221, at *6 (S.D. Ohio July 1, 2013) ("this Court and another district court in this circuit have previously concluded that only the entity responding to the subpoena has standing to challenge the subpoena on the basis of undue burden.").

Urging a contrary result unburdened by any case citation, the Defendants posit for the first time that:

> Federal Rule of Civil Procedure 45, however, explicitly permits the Court to quash (or modify) a subpoena "[t]o protect a person subject to *or affected by* a subpoena," without regard to which "person" files such motion. FED. R. CIV. P. 45(d)(3)(B) (emphasis added). Thus, the plain language of Rule 45 suggests that a party who is not subject to a subpoena has standing to move to quash when it is "affected by" the subpoena. CoreCivic undisputedly is affected by the subpoenas, as they seek the production of its confidential documents.

*See* Doc. 43, at 7–8.

There are two problems with this reasoning. To begin, CoreCivic is not "affected"

-8-

by a non-party's production in any way. CoreCivic need not do anything, produce anything, or take any other action in reference to the subpoena. The non-party subpoena accordingly imposes no obligations on CoreCivic whatsoever. *Cf.* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense **on a person subject to the subpoena**.") (emphasis added); *Info–Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 457 (6th Cir. 2008) ("'[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome **to produce**.'") (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)) (emphasis added).

Further, the Parties do not dispute that CoreCivic has standing to seek appropriate relief regarding the subpoena with respect to "its confidential documents" specifically. *See* Doc. 43 at 8. But the arguments that CoreCivic advances for quashing are not remotely—or even primarily—limited to claims of confidentiality. Instead, CoreCivic purports to raise objections that the documents "are not relevant and proportional to the needs of the case[.]" *See id.* at 4. *See also id.* at 7 (asserting a right to "challenge the subpoenas on relevance and proportionality grounds").

Under these circumstances, the proper resolution is easy. As another District Court held under materially similar circumstances:

> In his other pending Motions to Quash, Plaintiff asserts that the records sought contain his confidential information. But aside from a single conclusory line asserting that the records are confidential, Plaintiff offers no argument, evidence or proof to support such a claim. **Rather, his argument against such production goes to the relevance of the records sought and not the privileged nature of the records or his personal right not to have them produced. Therefore, the Court finds Plaintiff has not bourne his "heavy burden" of proof and Plaintiff's Motions to Quash are denied for lack of standing.**

-9-

*Hamm*, 2012 WL 13027079, at *1 (emphasis added).

Put another way: an objection regarding undue burden or relevance "is not [the Defendants'] argument to make. The law is clear that only [the third party], the entity responding to the subpoena, has standing to argue undue burden or relevance."[2] *Schaumleffel v. Muskingum Univ.*, No. 2:17-CV-463, 2019 WL 3071851, at *3 (S.D. Ohio July 15, 2019) (citing *S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, No. 3:15-CV-151-CRS, 2016 WL 11200224, at *3 (W.D. Ky. Jan. 13, 2016) (explaining that nonparty was "entirely capable ... to make such arguments by way of his own motion to quash"); *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 76.190.140.193*, No. 1:15 CV 1342, 2015 WL 6758219, at *2 (N.D. Ohio Nov. 5, 2015) (holding the same); *Griffiths v. Ohio Farmers Ins. Co.*, No. 1:09-CV-1011, 2010 WL 2639918, at *2 (N.D. Ohio June 29, 2010) (holding the same); *Hackmann v. Auto Owners Ins. Co.*, No. CIV.A. 2:05-CV-876, 2009 WL 330314, at *2 (S.D. Ohio Feb. 6, 2009) (finding that "whether or not [plaintiff's relevance arguments] are well-founded, [p]laintiff has no standing to move to quash" subpoena against nonparty)). *See also Davis v. C&D Sec. Mgmt., Inc.*, No. 1:20-MC-74, 2020 WL 6485104, at *3 (N.D. Ohio Nov. 4, 2020) ("as pointed out by Davis in opposition to Allied's motion, '[t]he law is clear that only ... the entity responding to the subpoena[ ] has

---

[2] There are also good reasons to seek the documents from a non-party instead. For one thing, by establishing that the documents were produced to a non-party, the Defendants will be able to demonstrate that CoreCivic was aware of their contents by at least the date when they were produced, notwithstanding their categorical denials of understaffing in this action months later. For another, CoreCivic is untrustworthy. *See, e.g.,* Doc. 1-4 at 141 ("At four of six correctional facilities, state and CoreCivic management did not properly retain, maintain, and destroy public records."); *id.* at 351 ("**Destroying Records Without Approved Certificates of Destruction**: Facilities destroyed public records throughout the year without creating certificates of destruction or notifying the department's Records Officer."). *See also* Brinley Hineman, *After Tennessee prison suicide, CoreCivic counselor fabricated health records of treatment: TDOC*, THE TENNESSEAN (Aug. 26, 2020), https://www.tennessean.com/story/news/crime/2020/08/26/after-tennessee-prisoners-suicide-corecivic-worker-faked-health-records/3404186001/ ("After Smith's death, it was discovered by a TDOC investigator that Lyons fabricated records saying they met.").

standing to argue undue burden or relevance.'") (quoting *Schaumleffel*, 2019 WL 3071851, at *3). The Defendants' motion to quash the subpoena on relevance or proportionality grounds fails accordingly.

**B.     The subpoenaed documents are relevant to this litigation.**

Even operating from the Plaintiffs' current restricted vantage point, it is also clear that documents responsive to the Plaintiffs' subpoena are very much relevant to this litigation. A close reading of the Defendants' motion also reveals that in one portion of their Motion, the Defendants admit as much. *See* Doc. 43 (arguing that "the vast majority" of the documents requested are irrelevant, not that all of them are). Elsewhere, though, the Defendants contend that the subpoena should be quashed in its entirety on the basis that it seeks "documents that are not relevant to the questions of whether Defendants were deliberately indifferent to Childress's safety and security." *See id*. at 14.

The Defendants are lying, and there is simply no other way to say it. As detailed above, it is clear from deposition testimony contained in documents that the Plaintiffs have already received—documents that the Defendants *also* attempted to suppress before the Plaintiffs received them—that the subpoenaed documents contain not only relevant evidence, but *powerfully* relevant evidence of the Defendants' chronic, pervasive, routine, and knowing violations of its contract requirements, including extensive reports of understaffing non-compliance and recurring liquidated damages penalties assessed by the Tennessee Department of Correction. *See supra* at 4–6. *See also* Doc. 41, at 7–12. Further, it is clear that even the documents bearing exclusively upon Mr. Pleasant-Bey's religious discrimination claim are directly relevant to this action, because they evidence CoreCivic's willingness to adopt obviously and flagrantly unconstitutional conditions in its prisons as a matter of official policy—such as banning inmates from purchasing copies

of the Quran and the Torah, but not the Bible. *See* Doc. 33-10, at 1 ("The following items cannot be ordered . . . Torah . . . The Qur'an Translation"). Further, whether an inmate complained of a religious discrimination issue or registered a grievance based on a claim of violence, the documents indicate that "CoreCivic has never been in compliance with the grievance procedure" required by its contract. *See* Doc. 37-2 at 49–50.

All such documents—not just the withheld documents demonstrating recurring liquidated damages penalties for understaffing violations—are relevant to the Plaintiffs' allegations in this action, which involve claims far broader than understaffing alone. *See, e.g.,* Doc. 1 at 26, ¶ 106 ("Defendant CoreCivic's actions additionally contravene Tenn. Const. art. I, § 32, which provides that: 'That the erection of safe prisons, the inspection of prisons, and the humane treatment of prisoners, shall be provided for.'"). *See also Riding Films, Inc.*, 2013 WL 3322221, at *3 ("Relevance for discovery purposes is extremely broad.") (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) ("The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.")). As noted above, several documents sought by the subpoena also go directly to the heart of the allegations in this case. That is hardly a surprise, either, given that the claims across the two cases overlap so much that Mr. Pleasant-Bey's counsel specifically deposed witnesses about Terry Childress's death. *See, e.g.,* Doc. 37-1, at 55:1–9 (Q. "You mentioned another death. Does the name Terry Deshawn Childress sound right?" A. I don't know. I know who the – I believe I know who the suspect was." Q. "Was that around February 24th of 2021?" A. "Yes." Q. "What occurred with that incident?" A. "That was another restrictive housing incident with two cellmates."). The Defendants' plainly false irrelevance claims—which they lack standing to assert anyhow—should be rejected accordingly.

-12-

Case 3:22-cv-00093   Document 47   Filed 06/24/22   Page 12 of 20 PageID #: 4194

**C. The Defendants have failed to meet their "heavy burden" of proving that the non-party subpoena should be quashed and have failed to support the confidentiality of even a single subpoenaed document.**

Even when a party has "a privilege or personal right in the information sought" by a non-party subpoena, the party seeking to quash a subpoena "bears a heavy burden of proof." *See Olivia Marie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. CIV.A. 11-12394, 2011 WL 6739400, at *2 (E.D. Mich. Dec. 22, 2011) (citing *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995)). *See also Sandlin v. Citibank, N.A.*, No. 15-2768-JTF-DKV, 2017 WL 9538516, at *1 (W.D. Tenn. Oct. 31, 2017) ("the party which seeks to quash the subpoena bears a heavy burden of proof.").

Further, a party's mere "conclusory" claims of confidentiality will not suffice to satisfy this heavy burden, which is a prerequisite to establishing a party's standing to contest a non-party subpoena in the first place. *See, e.g., Hamm*, 2012 WL 13027079, at *1 ("aside from a single conclusory line asserting that the records are confidential, Plaintiff offers no argument, evidence or proof to support such a claim. . . . Therefore, the Court finds Plaintiff has not bourne his 'heavy burden' of proof and Plaintiff's Motions to Quash are denied for lack of standing."). *See also Schaumleffel*, 2019 WL 3071851, at *2 ("To meet that heavy burden, the movant must make more than 'conclusory' assertions of an interest or privilege."); *TCYK, LLC v. Does 1-47*, No. 2:13-CV-539, 2013 WL 4805022, at *5 (S.D. Ohio Sept. 9, 2013) ("The moving defendant's conclusory argument does not, however, explain how disclosure of his or her name, address, telephone number, e-mail address, and MAC address would harm the moving defendant or otherwise invade his or her privacy.") (citing *Breaking Glass Pictures v. Does 1–283*, No. 3:13–cv–75, 2013 U.S. Dist. LEXIS 83225, at *5 (E.D. Tenn. June 13, 2013); *Sojo Prods., Inc. v. Does 1–67*, Nos. 3:12–cv–599, 3:12–cv600; 3:12–cv–601, 3:12–cv–602, 3:12–cv–603, 2013 U.S. Dist.

LEXIS 58602, at *5–6 (E.D. Tenn. Apr. 24, 2013)); *Leblanc v. Texas Brine Co., LLC*, No. CIV-16-1026-D, 2017 WL 913801, at *5 (W.D. Okla. Mar. 7, 2017) ("Texas Brine's conclusory, blanket assertions of privilege are insufficient to quash the subpoena duces tecum."); *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 CIV. 1654 RA HBP, 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014) ("In order for a party to have standing to challenge a subpoena served on a non-party, there must be more than 'a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive.'") (quoting *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590 LTS HBP, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013)).

Here, the Court will scrutinize the Defendants' Motion to Quash in vain for any evidence that even a single responsive document is genuinely confidential. While the Defendants certainly assert that they "marked" the documents confidential, *see* Doc. 43 at 14, the Defendants' Motion offers no hint of what specific confidentiality concerns the documents implicate. Thus, the Court is simply left to wonder what, specifically, the Defendants claim is confidential. For instance, are the Defendants seeking to restrict access to marketing strategies? Security plans? Are they seeking to protect the STD statuses of the inmates they allowed to be raped while being chronically understaffed and then withholding five months' worth of PREA reports? *See* Doc. 33-3, at 16:18–23 ("So it seems like the PREA inspection reports are the ones that were not sent for a period of five months?" A. "Yes."). The Defendants' motion does not say—indeed, it does not even hint—and being unsupported by an affidavit or other evidentiary material supporting a genuine claim of confidentiality, the Court and the Plaintiffs are left to guess.

Thus, instead of specificity or evidence, all the Defendants advance in support of their claim of confidentiality are repeated claims that they "marked" a massive number of

-14-

documents confidential. *See* Doc. 43 at 2 ("the overwhelming majority . . . were marked confidential or confidential attorneys' eyes only when they were produced in the Pleasant-Bey Case"); *id*. at 4 ("many of the documents produced in the Pleasant-Bey Case and requested through the subpoena were marked confidential or confidential attorneys' eyes only"); *id*. at 14 ("CoreCivic produced more than 55,000 pages of documents in the Pleasant-Bey Case, the vast majority of which were marked confidential or confidential attorneys' eyes only."). But CoreCivic's untested, unsupported say-so that the documents are genuinely confidential is not sufficient, and it cannot carry the day. That is true not only because CoreCivic has a history of abusing confidentiality designations strictly to protect itself from embarrassment. *See, e.g., Grae*, 330 F.R.D. at 487 n.2 ("CoreCivic has argued that its internal responses to BOP scrutiny should be kept under seal because their disclosure could harm CoreCivic in the marketplace. (Docket No. 155 at 6.) The court, however, discerns no serious threat of unfair competition associated with disclosure of the relevant communications. None of the cited internal conversations reveal any confidential CoreCivic strategies, practices, or research and development. The conversations cited may be awkward or embarrassing for CoreCivic to see disclosed, but that, alone, is not enough to justify an unyielding seal in this case."). It is also because the Plaintiffs can prove beyond any serious doubt that confidentiality designations were repeatedly abused when it comes to the specific documents to be produced by the Plaintiffs' subpoena.

As demonstrated above, *see infra* at 5–6, the documents responsive to the Plaintiffs' non-party subpoena that CoreCivic (or, perhaps, some other party) designated as "confidential" or "confidential attorney's eyes only" include—at minimum:

- "[T]wo pages in [a] May 17th notice of breach and assessment of liquidated

damages" and "a number of" other liquidated damages assessments for contract non-compliance and understaffing violations. *See* Doc. 37-1, at 26:2–9.

- A TDOC "noncompliance report." *See id.* at 31:24–32:3.

- "[N]on-compliant reports" issued by the TDOC. Doc. 37–2 at 3.

- An exhibit described as a "privately operated facility notification of noncompliance, Tennessee Department of Correction[.]" *See* Doc. 37-7 at 22:19–22.

- A "six-month follow-up report to the comptroller's office related to the 2020 comptroller audit." *Id.* at 43:16–19.

- The "November 2017 comptroller report." *See* Doc. 37-10, at 3. And:

- "[A] collection of news articles[.]" *See id.* at 87:15–17. *See also id.* at 4 ("News articles beginning with TDOC 013562").

These documents are transparently non-confidential, the apparent fact that they were marked confidential notwithstanding. Indeed, most are properly characterized as public records. They also are not "CoreCivic's" documents, notwithstanding the Defendants' multiple representations in its motion that the subpoena seeks the production of confidential documents that CoreCivic created and produced. *See* Doc. 43 at 2 (referencing "CoreCivic's confidential documents"); *id.* at 6 (referencing "CoreCivic's documents produced in the Pleasant-Bey Case").

In summary: CoreCivic's motion fails to identify, support, or establish—with the requisite (or any) specificity—the confidentiality of *even a single document* responsive to the Plaintiffs' non-party subpoena. Mere conclusory allegations also do not suffice. Further, even based on the limited production that the Plaintiffs have already, the Plaintiffs can demonstrate that confidentiality designations attached to responsive documents were routinely abused.

-16-

Case 3:22-cv-00093   Document 47   Filed 06/24/22   Page 16 of 20 PageID #: 4198

Individually—and certainly in combination—those deficiencies preclude the Defendants from being able to satisfy the "heavy burden or proof" necessary to support quashing. *See Sandlin*, 2017 WL 9538516, at *1 ("the party which seeks to quash the subpoena bears a heavy burden of proof."). The Defendants' Motion to Quash should be denied accordingly.

### D. Quashing is an improper remedy, and the Defendants do not seek a protective order.

Finally, even if the Defendants had attempted to support their confidentiality claims with evidence, quashing the Plaintiffs' subpoena—the specific relief that the Defendants' motion seeks—would not be the appropriate remedy. Instead, where—as here—subpoenaed documents are powerfully relevant to the Plaintiffs' claims, and where (unlike here) a party established a need to maintain them confidentially, the appropriate remedy would be to have the documents produced to the Court *in camera* for review (something the Plaintiffs have invited, *see* Doc. 36, but which the Defendants have rejected),[3] or else, subject to a protective order—something the Defendants once sought by agreement (*see* Doc. 36-2, at 1 ("A proposed protective order is attached.")), but which they never attempted to justify.

Here, though, the Defendants have not moved for a protective order. Thus, they have not attempted to meet their burden of justifying one. That burden would also be the Defendants', because in all cases, "[t]he burden of establishing good cause for a protective

---

[3] The Defendants appear to believe—and they perceive this Court as having said—that actually requiring them to justify their claims of confidentiality and then tasking the Court with the role of adjudicating the merits of those claims is somehow unreasonable. *See* Doc. 43 at 9, n.4. They are wrong. It is the Defendants' job to establish their claimed need for such protection, and it is the Court's job to adjudicate any resulting dispute regarding it. That expected sequence of events does not even resemble "requir[ing] CoreCivic and the Court to essentially perform Newby's discovery for her," *id.*, nor is it "a waste of the Court's time and resources" to require a poorly-performing governmental contractor that is in the public business of incarceration to substantiate its claimed need for secrecy.

-17-

order rests with the movant." *See Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001) (citing *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir.1973)). *See also In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 549 (E.D. Tenn. 2013) ("To show good cause, a movant for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements."). That burden would also be a "heavy" one, because the "entry of a protective order is contrary to the basic policy in favor of broad discovery," and accordingly, "the party that seeks a protective order has a heavy burden to show substantial justification for withholding information from the public." *See Anderson v. City of Fulton, Kentucky*, No. 518CV00032TBRLLK, 2019 WL 729986, at *1 (W.D. Ky. Feb. 20, 2019) (citing *Williams v. Baptist Healthcare Sys., Inc.*, No. 3:16-CV-00236-CRS, 2018 WL 989546, at *2 (W.D. Ky. Feb. 20, 2018); *Proctor & Gamble Co.*, 78 F.3d at 227 ("While District Courts have the discretion to issue protective orders, that discretion is limited by the careful dictates of Fed. R. Civ. P. 26 and is circumscribed by a long-established tradition which values public access to court proceedings."); *Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir. 1987) ("As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying public access to the proceedings.")).

In any event, because the Defendants have not applied for—let alone met their burden of justifying—a protective order, this Court is not in a position to grant them one. The Supreme Court has narrowly cabined the circumstances in which federal courts may "depart from the principle of party presentation" and rule on claims that the parties fail to raise for themselves. *See Wood v. Milyard*, 566 U.S. 463, 472 (2012) (citing *Greenlaw v. United States*, 554 U.S. 237, 243–244, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008)).

-18-

Case 3:22-cv-00093   Document 47   Filed 06/24/22   Page 18 of 20 PageID #: 4200

Instead, courts must rely on parties to frame the issues for decision. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation. As this Court stated in *Greenlaw v. United States*, 554 U.S. 237 (2008), 'in both civil and criminal cases, in the first instance and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'"). Thus, this Court is not empowered to order documents that are properly subject to production via a subpoena duces tecum produced pursuant to a protective order that the Defendants have not bothered to seek. Put another way: This Court should not adjudicate claims that the Defendants did not bother or think it necessary to raise themselves, and because quashing is not an appropriate remedy, the Court should simply deny the Defendants' motion without adjudicating any other matter.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Quash should be denied.

Respectfully submitted,

/s/ Daniel A. Horwitz
Daniel A. Horwitz, BPR #032176
Lindsay E. Smith, BPR #035937
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
(615) 739-2888

Brice M. Timmons #29582
Craig A. Edgington #38205
DONATI LAW, PLLC
1545 Union Ave.
Memphis, Tennessee 38104
(901) 278-1004 – Telephone
(901) 278-3111 – Facsimile
brice@donatilaw.com
craig@donatilaw.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2022, a copy of the foregoing and all exhibits and attachments were sent via CM/ECF to:

Joe Welborn
Erin Palmer Polly
Terrence M. McKelvey
222 Second Avenue, South
Suite 1700
Nashville, Tennessee 37201
Joe.Welborn@klgates.com
Erin.Polly@klgates.com
terrence.mckelvey@klgates.com

*Counsel for Defendants*

By:    /s Daniel A. Horwitz