IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| G. MARIE NEWBY, individually and as Administratrix of THE ESTATE OF TERRY CHILDRESS, <br> *Plaintiffs,* <br> and, <br> CHRISTOPHER ADAMS, <br> *Plaintiff-Intervenor,* <br><br> v. <br><br> CORECIVIC OF TENNESSEE, LLC, as owner and operator of TROUSDALE TURNER CORRECTIONAL CENTER, DAMON HININGER, STEVE CONRY, RAYMOND BYRD, and SHAWNA CURTIS, <br> *Defendants.* | Case No.: 3:22-cv-00093 <br><br> JURY DEMANDED <br><br> Chief Judge Waverly D. Crenshaw Jr. <br><br> Magistrate Judge Jeffery S. Frensley |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF INTERVENOR CHRISTOPHER ADAMS' MOTION TO INTERVENE

Plaintiff Intervenor Christopher Adams (Intervenor Adams) respectfully submits this Memorandum of Law in support of his Motion to Intervene in this action filed by Plaintiff G. Marie Newby (Ms. Newby) against CoreCivic *et al.* as captioned above. Intervenor Adams moves the Court pursuant to Federal Rules of Civil Procedure (FRCP) 24 to intervene as of right, or alternatively, by permission, to assert claims against CoreCivic under 42 U.S.C. § 1983 that share the same questions already properly before the Court in the case *sub judice*.

### PRELIMINARY STATEMENT

Ms. Marie Newby (Ms. Newby) is the mother and Administratrix of the estate of decedent Terry Childress (Mr. Childress). Mr. Childress was an inmate at the notorious Trousdale Turner Correctional Center (TTCC), which is owned and operated by CoreCivic of Tennessee (formerly Corrections Corporation of America) who, *inter alia*, knowingly under-staffs the facility at the expense of providing "reasonable safety" to inmates for the sake of profit. Because of CoreCivic's profit motivated business tactics Ms. Newby lost her son. Mr. Childress was murdered in his cell the day after having a parole hearing. His cellmate had been misclassified by CoreCivic officials and should not have been at the

TTCC. Had Defendants adequately staffed the TTCC, and officials been properly making their required security checks, Mr. Childress' death may have been prevented [officials are supposed to do security checks/walk-thrus at thirty minute intervals].

Despite Defendants' knowledge of the aforementioned the same severe understaffing continues to this day as observed by Intervenor Adams. Officials exacerbate the problem by allowing inmates to freely move from buildings where they are assigned to buildings they do not live in (some of whom have higher security level designations), and from pod to pod within the same buildings contrary to reasonable and accepted standards of safety established by TDOC policies. Intervenor Adams lives in the 512 man Whiskey Unit in the Delta pod at the TTCC. The Whiskey Unit has four pods that are open bay barracks style accommodations where inmates sleep and move around without the restriction of locked cell doors, some of the inmates are designated medium security. The Whiskey Unit is always severely understaffed; frequently only having one or two correction officers (c/o) on post. Based on Intervenor Adams' experience through almost nineteen years of incarceration this is extremely dangerous. There should be a minimum of five correction officers assigned to the Whiskey Unit at all times. There should be one correction officer inside each unit and one in the central rotunda area. The TTCC has never posted a c/o inside the pod since Intervenor Adams has been there. Intervenor Adams spent almost eighteen years at TDOC facilities where there was always an officer assigned to each pod. CoreCivic cannot plead ignorance of accepted penalogical standards because they have been operating prisons in the state of Tennessee for decades. [*See e.g.*, Complaint in Intervention (Comp Int.) attached to Motion to Intervene]

Over the Fourth of July weekend 2022, the TTCC had one c/o working both the Whiskey and Delta Unit's, and one c/o working both the Charlie and Fox Unit's on the night shift. Making matters worse, these c/o's assisted one another in counting their respective posts throughout the night together, thus, leaving three units without a c/o at all while so doing. Severe understaffing is a routine practice in the Whiskey Unit, and Intervenor Adams is aware that all TTCC units are understaffed as well. Intervenor Adams fears for his safety due to CoreCivic's severe understaffing practice/custom. [*See e.g.*, *Id.*]

Accordingly, the same profit motivated deliberate indifference by Defendants set forth in Ms.

2

Newby's complaint continues to thrive to this day despite their knowledge of these conditions; thereby putting Intervenor Adams' safety at risk in violation of his legal right to have reasonable safety provided by Defendants. Intervenor Adams has an interest in the unlawful profits generated by CoreCivic at the expense of providing him with reasonable safety, which are at issue in the present action and should be disgorged as punitive damages for punishment and deterrence of practices of like nature by Defendants in the future. *See e.g.*, *Newby* Comp., page 27 at ¶¶ 2-3. Additionally, Adams has an interest in seeing a judgment rendered in accordance with the Court's application of the Eighth Amendment of the United States Constitution, Tennessee Constitution Article I § 32, and Tenn. Code Ann. § 1-3-121 ordering declaratory and injunctive relief compelling CoreCivic to adequately staff and operate the TTCC in accordance with accepted penalogical standards, or, *inter alia*, ordering the reduction of the TTCC's inmate population to a level commensurate to the number of c/o's available to fill critical posts. In the alternative, the Court should compel the TDOC to take over the TTCC through a provision in their contract for such, or, outright enjoin CoreCivic from continuing to operate the TTCC. *Id.*

## **FACTUAL BACKGROUND**

On February 11, 2022, Ms. Newby brought this action as a result of the senseless, needless, and preventable murder of her son Terry Childress at the notorious and severely understaffed TTCC. The Defendants in the case *sub judice* knew, or had to have known, of the unconstitutional conditions at the prison because there have been a multitude of reports in relation thereto in the media, and there have been reports issued from the Comptroller's office relating thereto. [*See e.g.*, *Newby v. CoreCivic of Tennessee et al.*, 3:22-cv-0093, Complaint (Comp.), Document 1]

The TTCC is "severely understaffed" and Defendants are "willfully disregarding inmate safety there." [*Id*. at ¶¶ 1-2] This Court is well aware of "CoreCivic's chronic, profit-motivated deliberate indifference to inmate safety." [*Id*. 3] As a result of CoreCivic's greed "Tennessee inmates who are housed at CoreCivic facilities are approximately twice as likely to die and more than four times as likely to be murdered". [*Id*. 4] Audit's performed by the Tennessee Comptroller of the Treasury continue to highlight

the TTCC's deficiencies in their contractual obligations established by the TDOC to provide inmates with reasonable safety, adequate medical care, and various other services. [*Id*. 5-6] The TTCC has been found "unlawfully failing to collect -and in many instances destroying- records and evidence bearing upon its potential liability." [*Id*. 7] The Comptroller even expressed doubt as to the veracity of CoreCivic's record keeping. [*Id*. 8] Even with CoreCivic's flawed record keeping they still had the "highest number of [serious] Class A incidents". [*Id*. 9] State regulators have been unable to correct CoreCivic's continued unlawful operation of the TTCC, yet, the County of Trousdale renewed a contract with them to continue operating the TTCC. [*Id*. 10] This Court "has [also] been unable to remedy CoreCivic's operation of [the] chronically unsafe . . . [TTCC] where inmates in CoreCivic's care die or incur serious bodily injury with enraging frequency." [*Id*. 11] The lack of "meaningful regulatory action" gives CoreCivic the sense of impunity whereby they "continue to act with deliberate indifference toward inmate safety and allow inmates to die needlessly in [their] care without fear of experiencing meaningful legal consequences." [*Id*.12] "The Complaint-filed by the mother of decedent Terry Childress" seeks various forms of relief, [some of which Plaintiff Intervenor Christopher Adams has an interest in due to his incarceration at CoreCivic's unconstitutionally operated TTCC]. [*Id*. 13]

## ARGUMENT

### A. Intervenor Adams should be permitted to intervene as of right.

Federal Rules of Civil Procedure 24(a)(2) provides in pertinent part that a court must permit intervention on timely application by anyone who: (1) "claims an interest relating to the property or transaction that is the subject of the action," and (2) whose interest may be "impair[ed] or impede[d]" by disposition of the action "unless existing parties adequately represent that interest." FRCP 24(a)(2). This rule is "broadly construed in favor of potential intervenors," who must be permitted to intervene if: "1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately represent the applicant's interest." *Ohio State Conference of NAACP v. Husted*, 588 F. App'x 488, 490 (6th Cir. 2014) (citation omitted); *see Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir.

1999) (same). Intervenor Adams meets each of these requirements for intervention as of right.

**a. Intervenor Adams' Motion is Timely.**

The timeliness of an application for intervention is evaluated "in the context of all relevant circumstances," including:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990); *see, United States v. City of Detroit*, 712 F.3d 925, 930-31 (6th Cir. 2013) (same).

Intervenor Adams just learned of this action in June of 2022 and began investigating and researching whether his claims were related to the subject matter of Ms. Newby's civil action against Defendants. He received a docket sheet in relation hereto to ascertain what stage the litigation is in around 6/27/2022 and within thirty (30) days Intervenor Adams has filed his motion to intervene, complaint in intervention, and memorandum of law in relation to this action. Intervenor Adams' claims present the same essential questions which are already properly before the Court so he is seeking leave to intervene in this action to, *inter alia*, protect his interest in the enforcement of the applicable laws and for the sake of judicial economy in avoiding duplicate lawsuits on the same essential subject matter. FRCP 24 *Advisory Committee Notes: 1966 Amendment*. In expounding upon the intentions of the *1966 Amendment of FRCP 24*, the *Advisory Committee Notes* state that "[t]he amendment provides that an applicant is entitled to intervene in an action when his position is comparable to that of a person under Rule 19 (a)(2)(i) . . .". The *1966 Amendment to* Rule 19 establishes that "[t]he interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter." *Id. Advisory Committee Notes: 1966 Amendment*. As such, the avoidance of a second lawsuit presenting the same claims are in the interest of the public and judicial economy.

The present action is in the earliest stages of litigation. As of the date that Intervenor Adams

received a docket sheet in relation to this action there has not been a dispositive motion filed with regards to Ms. Newby's complaint. In fact, the parties are still in hot dispute over discovery requests. In addition, the fact that Adams is currently housed at the TTCC and is daily living and observing the unconstitutional conditions there, and, the fact that he has been in the TDOC's custody since 2004, giving him extensive experience with the operation of Tennessee's prison system are circumstances that militates in favor of intervention.

### b. Intervenor Adams has a substantial interest in the subject matter of this case.

The Sixth Circuit subscribes to a "rather expansive notion of the interest sufficient to invoke intervention of right." *Grutter,* 188 F.3d at 398 (citation omitted); *see also Bradley v. Milliken,* 828 F.2d 1186, 1192 (6th Cir. 1987) ("'[I]nterest' is to be construed liberally."). No specific legal or equitable interest is required for such. *Grutter,* 188 F.3d at 398. Even "close cases" should be "resolved in favor of recognizing an interest under Rule 24(a)." *Mich. State AFL-CIO v. Miller,* 103 F.3d 1240,1247 (6th Cir. 1997).

The case at bar directly implicates Adams's interest in the enforcement of Constitutional Amendment Eight, Tennessee Constitution Article I § 32, and Tenn. Code Ann. § 1-31-121 because he is currently incarcerated at the TTCC under the egregious and barbaric conditions there. These are the very conditions that resulted in the death of Mr. Childress and Intervenor Adams has no interest whatsoever in dying at this early stage of his life just so that CoreCivic may generate more profit for its shareholders at the expense of providing "reasonable safety" to him.

### c. Intervention in this case is necessary to protect the interest of Intervenor Adams.

Under the third prong a "would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied." *Miller,* 103 F3d at 1247 (emphasis added). "This burden is minimal," and can be satisfied if a determination in the action may result in, *inter alia*, "potential stare decisis effects." *Id.; see also Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F3d 893, 900 (9th Cir. 2011) ("[I]ntervention of right does not require an absolute certainty that a party's interest will be impaired.").

Intervenor Adams has an interest in ensuring that the applicable laws are enforced and an early settlement is not entered into thereby permitting CoreCivic to resume its business as usual tactics. A disposition in this case impacts Intervenor Adams' interest in eradicating the unconstitutionally severe understaffing of CoreCivic facilities. This is an area of great importance to Intervenor Adams because he and others must daily endure the egregious and barbaric conditions created by CoreCivic's profit-motivated deliberate indifference to inmate safety. Thus far state regulators and this Court have been unable to control CoreCivic's unconstitutional operation of the TTCC. *See e.g., Pleasant-Bey v. State of Tennessee, et al.,* Case No.: 3:19-cv-486 (M.D. Tenn. December 21, 2020); *Grae v. Corrections Corporation of America*, Case No.: 3:16-cv-02267 (M.D. Tenn. March 26, 2019). It is Intervenor Adams's belief that when it looks like an impending failure is coming CoreCivic's way they will race to settle this lawsuit and avoid a judgment being entered against them. Thus, leaving Intervenor Adams in the very unconstitutional conditions that resulted in the death of Ms. Newby's son Mr. Childress.

### d. The existing parties cannot protect the interest of Intervenor Adams.

Intervenor Adams carries a minimal burden to show that the existing parties to this action inadequately represent his interests. *Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir.2000). A potential intervenor "need not prove that the [existing parties'] representation will in fact be inadequate, but only that it *'may be'* inadequate." *Id*. (citations omitted and emphasis in original); *see also Davis v. Lifetime Capital, Inc.,* 560 F. App'x 477, 495 (6th Cir. 2014) ("The proposed intervenor need show only that there is a *potential* for inadequate representation.") (citation omitted and emphasis in original). Intervenor Adams satisfies this burden.

*First*, it is axiomatic that *CoreCivic et al.* does not have Intervenor Adams' best interest in mind; they're concerned with profits. If Defendants had Intervenor Adams' interests in mind he would not be seeking leave to intervene in the case *sub judice,* nor would this Court continue to be asked to adjudicate case after case after case brought against CoreCivic. In fact, it is self-evident that if CoreCivic is not compelled to cease and desist their profit-motivated unconstitutional operation of the TTCC they will continue the egregious and barbaric custom of understaffing their facilities at the expense of human

beings. In the wake of this action being brought they are still, *inter alia*, understaffing the TTCC. If Defendants were truly trying to achieve reasonable safety for the inmates in their care, CoreCivic would stop accepting new inmates and reduce their inmate population to a level commensurate to the number of correction officers they have to fill critical posts. However, the TTCC continues to this day to fill vacant beds with new victims because empty ones do not generate profits. Hence, their continued deliberate indifference to inmate safety even after Ms. Newby's action was brought. *See, Farmer v. Brennan*, 511 U.S. 825 (1994) (holding "indifference should be determined in the light of the prison authorities' attitudes and conduct at the time suit is brought and ***persisting thereafter***) (emphasis added). [*See e.g.*, Comp. Int. ¶ 41 attached to Motion to Intervene]

Ms. Newby *may* adequately represent Intervenor Adams' interests now, but a plush monetary settlement may persuade her to resolve this action. Adams is interested in seeing a judgment entered against Defendants. He has heard horror stories about CoreCivic facilities over his almost nineteen years in the TDOC's custody. Now that he has experienced it first-hand he is of the mindset that CoreCivic's profits generated at the expense of providing reasonable safety to human beings must be stopped. So, if Ms. Newby is persuaded to settle the case at bar we will be right back to square one. Whether by intervention, or a separate action, Intervenor Adams is going to bring claims against Defendants to ensure they are held to account for their sins against humanity. Having lived, witnessed, and unfortunately experienced the TTCC first-hand Intervenor Adams will be able to make arguments that the existing parties cannot, which militates in favor of allowing him to intervene. *See e.g., Orrand v. Hunt Const. Grp., Inc.*, 2014 WL3895555 at *5 (S.D. Ohio August 8, 2014) (Intervenor Adams' almost nineteen years of incarceration will "provide the court with legal arguments and authorities which might not be forthcoming in the parties' briefs"); *Wilkinson v. Daniels*, 2012 WL6015884 at *4 (S.D. Ohio December 3, 2012) (potential intervenor's interests were inadequately represented; the state defendants "represent the general public as a whole," while the potential intervenor "has more specialized goals in mind").

*Second*, the interest of Intervenor Adams extends to himself, current, and future prisoners who may be subject to the unsafe and life-threatening conditions imposed on inmates whose welfare is

8

entrusted to Defendants by the TDOC. Courts have allowed a single plaintiff to proceed in an action and obtain injunctive relief to end unlawful actions of Defendants for all inmates. *See e.g.*, *Clement v. California Dep't of Corrections*, 364 F.3d 1148, 1152-53 (9th Cir. 2004) (single inmate obtained statewide injunction); *Ashker v. California Dep't of Corrections*, 350 F.3d 917, 924 (9th Cir. 2003) (statewide injunction issued based on claim by one inmate); *Jordan v. Pugh*, 2007 WL2908931 at *4 (D. Colo. October 4, 2007) (holding a nationwide injunction appropriate where a rule was found facially over broad under the First Amendment); *Riley v. Brown*, 2006 WL1722622 at *14 (D.N.J. June 21, 2006) (injunction to protect all prisoners).

Intervenor Adams and others have a primordial instinct based on self-preservation to survive. Based on Defendants' past and present conduct it is axiomatic that they could care less about the survival of Adams and others because they will just have an inmate clean up the blood as in the case of Mr. Childress and then depend on the TDOC to fill the vacated bed with another victim. This profit-motivated deliberate indifference is inhumane and does not serve any "legitimate penological objective". *Hudson v. Palmer*, 468 U.S. 517, 548 (1984). Nor is it compatible with "evolving standards of decency". *Estelle v. Gamble*, 429 U.S 97, 102 (1976). In fact, based on Intervenor Adams' vast experience ***within*** Tennessee's correctional system the TTCC is a threat to public safety. It is training some criminals instead of rehabilitating them. As such, intervention is necessary to protect the interests of Intervenor Adams to ensure the eradication of Defendants profit-motivated deliberate indifference to inmate safety.

### B. Alternatively, Intervenor Adams should be allowed to intervene by permission.

Intervenor Adams may also be granted leave to intervene by permission. FRCP 24 (b)(1)(B) permits intervention by anyone who has "a claim or defense that shares with the main action a common question of law or fact." "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP 24 (b)(3). The same substantial interests that give Intervenor Adams a right to intervene in this case under FRCP 24 (a)(2) support permissive intervention under FRCP 24 (b).

*First*, for the reasons set forth in section A(a) *supra*, Intervenor Adams' Motion to Intervene is

timely. *Second*, if required to file a separate action to protect his interests Intervenor Adams will assert that CoreCivic *et al.*, *inter alia*, does not adequately staff the Trousdale Turner Correctional Center thereby resulting in a failure to provide reasonable safety to him and other TDOC inmates, and he will for the most part present the same exact documentary evidence that Ms. Newby is presenting to the Court. Defendants have a legal duty to provide Intervenor Adams with reasonable safety. The severe understaffing of the TTCC is in direct contravention of U.S. Constitutional Amendment Eight and Tennessee Constitution Article I § 32. *Third*, as set forth in section A(b) *supra*, Intervenor Adams has an interest in the enforcement of the constitutional provisions to avoid a preventable and early demise such as befell Mr. Childress because of CoreCivic's greed. *Fourth*, because the case *sub judice* is at an early stage of the litigation (no dispositive motion has been filed). Intervenor Adams' intervention will not delay or prejudice the adjudication of any party's rights. Although a *pro se* litigant, Adams is fairly well learned in civil litigation, therefore, his *pro se* status will not hinder the parties. By the grace and wisdom of God Intervenor Adams won his first trial. At the end of the first day of trial U.S. District Court Judge Travis R. McDonough asked Intervenor Adams if he had studied law. *See, Adams v. Baker*, 2019 WL3845382 (E.D. Tenn. Aug. 15, 2019), Case No.: 1:16-cv-335. Intervenor Adams has continued to expand his knowledge of civil law. The case is not set for trial until December 12, 2023 and the current parties are still in hot dispute over discovery subpoena's. Intervenor Adams contends that his intervention will not hinder the progress of discovery. Plaintiff Newby's counsel already has sufficient documentary evidence on record to support Intervenor Adams' claims (once again almost the same exact documentary evidence that Intervenor Adams will introduce in a separate action if required to do so). Moreover, at a minimum, Intervenor Adams would merely interject his personal knowledge and penal expertise into the case, thus giving the Court a more intimate and thorough picture of the operations *inside* of a CoreCivic prison, in particular, the notorious Trousdale Turner Correctional Center, in contrast to those experienced by Intervenor Adams in TDOC operated facilities from January of 2004 until October of 2021.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Intervenor Adams respectfully requests that the Court

GRANT his Motion to Intervene.

Dated: _July 23, 2022_                    /s/ _Chris Adams_
                                              Christopher Adams
                                              328180 TTCC WD 218
                                              140 Macon Way
                                              Hartsville, TN 37074

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was placed in the U.S. Mail first-class postage prepaid on this the **23rd** day of **July**, **2022**, to the following:

Brice M. Timmons
Donati Law Firm, LLC
1545 Union Avenue
Memphis, TN 38104

and

Erin Palmer Polly
K&L Gates, LLC
501 Commerce Street, Suite 1500
Nashville, TN 37203

                                              /s/ _Chris Adams_
                                              Christopher Adams

11